# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

URIEL PHARMACY HEALTH AND
WELFARE PLAN; URIEL PHARMACY, INC.;
HOMETOWN PHARMACY; and
HOMETOWN PHARMACY HEALTH AND
WELFARE BENEFITS PLAN, on their own
behalf and on behalf of all others similarly
situated,

                Plaintiffs,

     vs.

ADVOCATE AURORA HEALTH, INC. AND
AURORA HEALTH CARE, INC.,

               Defendants.

Case No. 2:22-cv-00610

---

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

Date: October 31, 2022

Daniel E. Conley
Nathan J. Oesch
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
Telephone: 414.277.5000
Fax: 414.271.3552
daniel.conley@quarles.com
nathan.oesch@quarles.com

Matthew Splitek
QUARLES & BRADY LLP
33 E Main St, Suite 900
Madison, WI 53703
Telephone: 608.251.5000
Fax: 608.251.9166
matthew.splitek@quarles.com

Jane E. Willis
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: 617.951.7000
Fax: 617.951.7050
jane.willis@ropesgray.com

Anne Johnson Palmer
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111
Telephone: 415.315.6300
Fax: 415.315.6350
anne.johnsonpalmer@ropesgray.com

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ...................................................................................................................... 4

LEGAL STANDARD ............................................................................................................... 6

ARGUMENT ......................................................................................................................... 6

    I.      PLAINTIFFS LACK ANTITRUST STANDING, WHICH IS REQUIRED FOR THIS ACTION TO PROCEED ................................................. 6

    II.     COUNT I FAILS TO PLAUSIBLY ALLEGE THAT AAH'S CONTRACTS WITH NETWORK VENDORS VIOLATE SECTION 1 OF THE SHERMAN ACT ....................................................................................... 9

         A.     Plaintiffs Do Not Plausibly Allege that AAH Imposed Unlawful Contractual Provisions on All, or Nearly All, Its Network Vendors ....... 10

         B.     Plaintiffs Do Not Plausibly Allege Any Substantial Foreclosure of Competition ..................................................................................... 14

    III.    COUNT II FAILS TO PLAUSIBLY ALLEGE ANY VIOLATION OF SECTION 2 OF THE SHERMAN ACT ............................................................. 16

         A.     Plaintiffs Fail to Adequately Allege Relevant Geographic Markets ........ 17

         B.     Plaintiffs Do Not Allege that AAH Unlawfully Acquired or Maintained Its Monopoly Power, Nor Do Their "Monopoly Leveraging" Allegations State a Claim ....................................................... 19

    IV.    COUNT III DOES NOT PLAUSIBLY ALLEGE ANY CLAIM FOR ATTEMPTED MONOPOLIZATION UNDER SECTION 2 OF THE SHERMAN ACT ............................................................................................. 21

    V.      PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED ...................... 23

    VI.    PLAINTIFFS' ALLEGATIONS RELATING TO CONDUCT BEYOND THE STATUTE OF LIMITATIONS SHOULD BE REJECTED ...................... 24

    VII.   COUNT VII SHOULD BE DISMISSED ........................................................... 25

CONCLUSION ...................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abcor Corp. v. AM Int'l, Inc.*,
916 F.2d 924 (4th Cir. 1990) ................................................19

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
683 F.3d 328 (7th Cir. 2012) ................................................9

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
948 F.2d 536 (9th Cir. 1991) ................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................6

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983)................................................7, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................6, 13

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ................................................17

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984) ................................................14

*Cargill, Inc. v. Monfort of Colo. Inc.*,
479 U.S. 104 (1986)................................................22

*Cascade Health Sols. v. Peacehealth*,
515 F.3d 883 (9th Cir. 2008) ................................................16

*Century Hardware Corp. v. Powernail Co.*,
282 F. Supp. 223 (E.D. Wis. 1968)................................................25

*Chicago Studio Rental Inc. v. Ill. Dep't of Com. & Econ. Opportunity*,
No. 15 C 4099, 2017 WL 1208424 (N.D. Ill. Apr. 3, 2017), *aff'd sub nom.*
*Chi. Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d 971 (7th Cir. 2019)................................26

*Davis v. HCA Healthcare, Inc.*,
No. 21-cv-3276, 2022 WL 4354142 (N.C. Super. Ct. Sept. 19, 2022) ................................18

*Endsley v. City of Chicago*,
230 F.3d 276 (7th Cir. 2000) ................................................16

*Federal Trade Comm'n v. Tenet Health Care Corp.*,
    186 F.3d 1045 (8th Cir. 1999) ................................................................16

*Fisher v. Aurora Health Care, Inc.*,
    558 F. App'x 653 (7th Cir. 2014) ......................................................7, 8

*Fisher v. Aurora Health Care, Inc.*,
    No. 13-C-152, 2013 WL 12099866 (E.D. Wis. July 16, 2013), *aff'd*, 558 F.
    App'x 653 (7th Cir. 2014) ................................................................13

*G. Heileman Brewing Co. v. Anheuser-Busch Inc.*,
    676 F. Supp. 1436 (E.D. Wis. 1987), *aff'd*, 873 F.2d 985 (7th Cir. 1989) ..............23

*Goldwasser v. Ameritech Corp.*,
    222 F.3d 390 (7th Cir. 2000) ..............................................................20

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*,
    998 F.2d 391 (7th Cir. 1993) ...............................................................8

*Hennessy Indus. Inc. v. FMC Corp.*,
    779 F.2d 402 (7th Cir. 1985) ..............................................................23

*Indiana Grocery, Inc. v. Super Valu Stores, Inc.*,
    864 F.2d 1409 (7th Cir. 1989) .............................................................23

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .............................................................25

*Knutson v. Vill. of Lakemoor*,
    932 F.3d 572 (7th Cir. 2019) ..............................................................25

*Labor One, Inc. v. Staff Mgmt. Sols., LLC*,
    No. 17 C 7580, 2018 WL 4110676 (N.D. Ill. Aug. 28, 2018).............................6

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007)........................................................................14

*Lerma v. Univision Commc'ns, Inc.*,
    52 F. Supp. 2d 1011 (E.D. Wis. 1999)...................................19, 20, 23, 24

*Logan v. Wilkins*,
    644 F.3d 577 (7th Cir. 2011) ..............................................................25

*Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*,
    29 F.4th 337 (7th Cir. 2022) ................................................................7

*Marion HealthCare, LLC v. S. Ill. Hosp. Servs.*,
    41 F.4th 787 (7th Cir. 2022) ...............................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)...................................................................................9

*McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*,
  937 F.3d 1056 (7th Cir. 2019) ................................................................6, 9

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ......................................................11

*Mercatus Grp., LLC v. Lake Forest Hosp.*,
  641 F.3d 834 (7th Cir. 2011) ......................................................................21

*Methodist Health Servs. Corp. v. OSF HealthCare Sys.*,
  859 F.3d 408 (7th Cir. 2017) ......................................................................16

*Methodist Health Servs. Corp., v. OSF Healthcare Sys.*,
  No. 1:13–cv–01054–SLD, 2016 WL 5817176 (C.D. Ill. Sept. 30, 2016) ..............15

*Mullis v. Arco Petroleum Corp.*,
  502 F.2d 290 (7th Cir. 1974) ......................................................................18

*Nucap Indus., Inc. v. Robert Bosch LLC*,
  273 F. Supp. 3d 986 (N.D. Ill. 2017) ..........................................................18

*O'Neill v. Coca-Cola Co.*,
  669 F. Supp. 217 (N.D. Ill. 1987) ................................................................2

*Oliver v. SD-3C LLC*,
  751 F.3d 1081 (9th Cir. 2014) ....................................................................24

*Pac. Bell Tel. Co. v. Linkline Commc'ns*,
  555 U.S. 438 (2009)......................................................................................3

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
  381 F.3d 717 (7th Cir. 2004) ..................................................................2, 14

*Roumann Consulting Inc. v. Symbiont Constr., Inc.*,
  No. 18-C-1551, 2019 WL 3501527 (E.D. Wis. Aug. 1, 2019)......................23, 24

*Schor v. Abbott Lab'ys*,
  457 F.3d 608 (7th Cir. 2006) ......................................................................21

*Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*,
  950 F.3d 911 (7th Cir. 2020) ............................................................9, 17, 18

*Simon & Simon, PC v. Align Tech., Inc.*,
  No. 19-506, 2020 WL 1975139 (D. Del. Apr. 24, 2020)................................20

iv

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993) ............................................................................22

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    988 F.3d 690 (4th Cir. 2021) ............................................................24

*Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*,
    309 F.3d 836 (5th Cir. 2002) ......................................................17, 18

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ............................................................11

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ........................................................6, 13

*Unigestion Holding, S.A. v. UPM Tech., Inc.*,
    305 F. Supp. 3d 1134 (D. Or. 2018) .................................................21

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ............................................................19

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) .....................................................................14, 21

*Western Fuels-Ill., Inc. v. Interstate Com. Comm'n*,
    878 F.2d 1025 (7th Cir. 1989) ..........................................................20

*Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*,
    810 F.2d 243 (D.C. Cir. 1987) .......................................................2, 14

## Statutes and Other Authorities

15 U.S.C. § 1 ................................................................................ *passim*

15 U.S.C. § 2 ................................................................................ *passim*

15 U.S.C. § 15b ....................................................................................24

Wis. Stat. § 133.03 ..............................................................................23

Wis. Stat. § 133.18 ..............................................................................24

## PRELIMINARY STATEMENT

Plaintiffs Uriel Pharmacy, Inc., Uriel Pharmacy Health and Welfare Plan, Hometown Pharmacy, and Hometown Pharmacy Health and Welfare Benefits Plan are pursuing this action alleging various antitrust claims against Advocate Aurora Health, Inc. and Aurora Health Care, Inc. (together, "AAH"). Plaintiffs' latest effort to state a claim—their First Amended Class Action Complaint (the "Amended Complaint" or "AC," ECF No. 21), filed after AAH moved to dismiss their initial pleading—adds little new and remains premised on the defective theory that "big is bad." Plaintiffs insist that because AAH is a large health system that (allegedly) charges high prices, that "must" be the result of some violation of the federal and Wisconsin antitrust laws. The Amended Complaint, however, remains long on mischaracterizations of AAH's business practices and short on well-pled facts. Plaintiffs continue to advance little more than a hodgepodge of stale, out-of-context media reports and vague assertions based on unattributed sources—spaghetti thrown against the wall with the hope it somehow sticks. The Amended Complaint should be dismissed with prejudice for the following reasons:

*First*, Plaintiffs lack antitrust standing to bring any of their claims. *See* Section I, *infra* at 6–9. The Amended Complaint centers around the assertion that AAH's contracts with "Network Vendors"—that is, insurers and other third parties that assemble networks of health care providers and make those networks available to employers like Plaintiffs that self-fund health plans— allegedly contain several types of provisions that Plaintiffs cast as unlawful.[1] But the Amended

---

[1] The term Network Vendor is not commonly used in the health care industry. Health insurers such as United Healthcare, Anthem, Cigna, Aetna, and others are more commonly referred to as private payors. These private payors offer health plans to employers and individuals, and, with respect to employers, such health plans can be fully-insured, partially-insured, or self-funded. In this Motion, AAH nevertheless uses the term "Network Vendor" to be consistent with the Amended Complaint.

Complaint does not allege facts showing that ***Plaintiffs*** were affected by those supposed provisions or, if so, how. Plaintiffs allege that they have been using two Network Vendors, Cigna and Trilogy, but only since 2021. *See* AC ¶¶ 224, 229. The Amended Complaint does not plausibly allege that Cigna or Trilogy are subject to any unlawful restraints. Plaintiffs, moreover, do not allege how the harm they claim—high prices—resulted from any allegedly unlawful restraints. *Id.* ¶ 229. Instead, Plaintiffs seek to proceed based on their say-so that AAH's contracts "typically" contained unlawful provisions, such that Plaintiffs "must" have been impacted by those provisions as a result. *Id.* ¶ 241. This chain of speculative inferences is easily rejected at the Rule 12 stage. *See O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217, 224 (N.D. Ill. 1987) ("Pure speculation, or vaguely defined links are not sufficient to establish a chain of causation that demonstrates a threat of antitrust injury.").

***Second***, the Sherman Act Section 1 claim (Count I) fails because Plaintiffs do not allege any facts plausibly suggesting that the allegedly unlawful contractual provisions ***substantially foreclosed*** competition from rival health care providers. *See* Section II, *infra* at 9–16. The Amended Complaint repeatedly resorts to deficient "information and belief" pleading about the actual content of the provisions, again coupled with assertions that AAH charges "high" or "supracompetitive" prices. The law is well-settled that charging "high" prices "is not, in and of itself, an anticompetitive act." *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 252 (D.C. Cir. 1987). Rather, to allege that a vertical contract is an unreasonable restraint of trade in violation of Section 1 (as Plaintiffs attempt here), the Amended Complaint must plausibly allege that the contractual provisions "foreclose competition in a substantial share of the line of commerce at issue." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 737–38 (7th Cir. 2004). Plaintiffs do not claim that rival health systems or providers were unable to compete or

provide services in the alleged markets. Nor do Plaintiffs allege any facts showing that there are potential competitors that decided not to enter or expand services. Without any plausible factual allegations that AAH foreclosed rival providers from serving a substantial volume of patients in the alleged markets, the Amended Complaint fails to allege a cognizable harm to competition. Count I should accordingly be dismissed.

*Third*, Plaintiffs similarly fail to plead any violation of Sherman Act Section 2 in Counts II and III, for monopolization and attempted monopolization, respectively. *See* Sections III and IV, *infra* at 16–23. Plaintiffs rely on the same defective allegations as in Count I, and additionally assert that AAH possesses monopoly power in certain rural hospital services markets. But "[s]imply possessing monopoly power and charging monopoly prices does not violate § 2." *Pac. Bell Tel. Co. v. Linkline Commc'ns*, 555 U.S. 438, 447–48 (2009). Nowhere do Plaintiffs allege the required anticompetitive conduct to sustain a Section 2 claim. To the contrary, Plaintiffs remarkably go so far as to allege that AAH's opening of a new hospital—which *expanded* output and *increased* competition—is somehow unlawful. AC ¶ 151.

*Fourth*, Plaintiffs' Wisconsin law claims fail for the same reasons as the federal claims, because the Wisconsin Antitrust Act is construed "in conformity" with the federal Sherman Act. *See* Section V, *infra* at 23–24. *Fifth*, all the claims should be barred insofar as a substantial portion of the Amended Complaint rests on a jumble of allegations that occurred well before the applicable statutes of limitation. *See* Section VI, *infra* at 24–25. For example, Plaintiffs point to acquisitions from 2000 and 2013, the construction of a hospital in 2010, and lawsuits from 2007 and 2013. *Id.* ¶¶ 138, 161, 164, 173–74. None of that supposed conduct is remotely within the four-year Sherman Act statute of limitations, or the six-year limitations period for the Wisconsin law counts.

Plaintiffs' failure to separate the allegations that are timely from the old spaghetti thrown against the wall is yet another basis to dismiss the Amended Complaint.[2]

## BACKGROUND

AAH is a non-profit health system that provides inpatient and outpatient hospital services throughout Wisconsin.[3]  *See* AC ¶¶ 26, 70–85.  Plaintiffs seek to represent a putative class that includes "[a]ll businesses, unions, local governments, or other entities with self-funded health plans that are considered citizens of Illinois, Michigan, and/or Wisconsin" that paid AAH for "general acute care hospital services or ancillary products at an AAH facility" in certain alleged geographic markets.  *Id.*  ¶ 230.

According to the Amended Complaint, self-funded health plans like Plaintiffs rely on Network Vendors—which are typically large, well-known insurance companies—to negotiate with health care providers to assemble networks of facilities and physicians, and those Network Vendors allow self-funded health plans to use the networks they assemble at the prices they have negotiated.  *Id.* ¶¶ 31, 36.  After a self-funded plan's employee receives health care services from one of these "in network" providers and the claim is processed, the employer plan pays the "allowed amounts" (less any amounts paid out-of-pocket by the employee).  *Id.* ¶¶ 31, 33, 39.  Self-funded plans also pay certain fees to the Network Vendors and third-party administrators ("TPAs") for their services.  *Id.*  ¶ 43.

Uriel Pharmacy operates a self-funded Uriel Pharmacy Health and Welfare Plan (together, "Uriel").  *Id.* ¶ 227.  Yet it was only in 2021 that Uriel alleges it began using a Network Vendor

---

[2] In addition, the count for injunctive relief (Count VII) should be dismissed because it seeks remedies for Plaintiffs' underlying claims, which fail for the reasons otherwise set forth in this Motion.

[3] For the purposes of this Motion only, AAH has summarized the allegations in the Amended Complaint but does not admit that any of those allegations are true.

(Cigna).[4]  *Id.* ¶ 229.  Hometown Pharmacy likewise operates a self-funded Hometown Pharmacy Health and Welfare Benefits Plan (together, "Hometown").  *Id.* ¶ 221.  Similar to Uriel, Hometown alleges it did not begin using a Network Vendor (Trilogy) until 2021.  *Id.* ¶ 224.

Plaintiffs attempt to state a claim based on allegedly unlawful vertical restraints contained in contracts between AAH and (i) Network Vendors or (ii) physicians.  *Id.* ¶¶ 239–43, 248, 256.  These alleged restraints include five types of contractual provisions that Plaintiffs claim are included in AAH's contracts with Network Vendors: (i) "all-or-nothing" clauses; (ii) "all-plans" provisions; (iii) "anti-tiering" provisions; (iv) "anti-steering" provisions; and (v) "gag clauses."  Plaintiffs also assert that AAH allegedly has two types of offending contractual provisions with physicians: (i) "non-compete agreements" and (ii) "referral restrictions."

Plaintiffs further contend that AAH has held a monopoly in eight purported geographic markets and has attempted to monopolize a ninth region, the Oconomowoc Hospital Service Area ("HSA").  *See id.* ¶¶ 69–80, 169, 255.  Plaintiffs claim that AAH has been able to leverage its power in those "markets" to charge high prices in other "geographic markets" in which it operates, such as Milwaukee and Green Bay, even though it faces substantial competition in those areas.  *See id.* ¶¶ 83, 250.

Uriel commenced this action on May 24, 2022.  AAH responded by moving to dismiss the initial complaint on July 29, 2022.  Rather than oppose AAH's motion to dismiss, Plaintiffs filed the Amended Complaint on September 15, 2022, which added Hometown as a new plaintiff.  The Amended Complaint is the subject of this Motion.

---

[4] Prior to 2021, Plaintiffs allegedly paid providers through "reference based pricing," rather than at rates negotiated by Network Vendors.  *See* AC ¶¶ 228–29.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead sufficient facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Tamburo v. Dworkin*, 601 F.3d 693, 699 (7th Cir. 2010) (dismissal appropriate where antitrust claims were "pleaded in a wholly conclusory fashion"); *Lab. One, Inc. v. Staff Mgmt. Sols., LLC*, No. 17 C 7580, 2018 WL 4110676, at *1 (N.D. Ill. Aug. 28, 2018) (antitrust allegations "will require more detail, both to give the opposing party notice of what the case is all about and to show how . . . the dots should be connected"). It is especially appropriate for a court "to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed" in an antitrust case, where the costs of discovery are often "enormous." *Twombly*, 550 U.S. at 558–59 (quotation marks omitted).[5]

## ARGUMENT

### I.     PLAINTIFFS LACK ANTITRUST STANDING, WHICH IS REQUIRED FOR THIS ACTION TO PROCEED

The Amended Complaint should be dismissed at the threshold because it fails to allege "antitrust standing," which requires Plaintiffs to sufficiently allege facts demonstrating (i) a sufficient connection between the alleged conduct and Plaintiffs' purported injury; (ii) antitrust injury (the connection between Plaintiffs' purported injury and the alleged antitrust harms); and (iii) that Plaintiffs are "among those who can most efficiently vindicate the purposes of the antitrust laws." *See McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*, 937 F.3d 1056, 1065 (7th Cir.

---

[5] Throughout this Motion, all internal citations and quotations have been omitted, and all emphasis has been added, unless otherwise indicated.

2019); *see also Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 545 (1983) (finding that the "tenuous and speculative character of the relationship between the alleged antitrust violation and the [plaintiff's] alleged injury . . . weigh[ed] heavily against judicial enforcement of the [plaintiff's] antitrust claim"); *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 347–48 (7th Cir. 2022) (affirming dismissal because plaintiffs were "not the proper parties to bring suit"). The Amended Complaint fails to plead the requirements for antitrust standing for three reasons.

**First,** the central contention in the Amended Complaint is that AAH employs certain contractual provisions that allegedly constitute unlawful restraints of trade, and these provisions have resulted in Plaintiffs supposedly paying higher prices to AAH. AC ¶¶ 240, 244. Plaintiffs fail, however, to supply a plausible "causal connection" between the supposedly anticompetitive contractual provisions and their alleged injury of paying supra-competitive prices for health care services. *Fisher v. Aurora Health Care, Inc.*, 558 F. App'x 653, 656 (7th Cir. 2014) (dismissing claim of anticompetitive conduct where "connection between his alleged injury and the alleged antitrust violation is tenuous at best"). In particular, Plaintiffs do not plausibly allege the existence of the allegedly unlawful provisions in AAH's contracts with their respective Network Vendors. Uriel and Hometown each allege they only began using Network Vendors recently in 2021—Cigna and Trilogy, respectively.[6] AC ¶¶ 224, 229. The Amended Complaint declares that Cigna and

---

[6] Before Plaintiffs began using Network Vendors in 2021, the Amended Complaint alleges that they used third-party administrators and made payments directly to providers using "reference based pricing." AC ¶¶ 221–24, 227–29. Plaintiffs' antitrust claims are predicated on contractual provisions alleged to exist in AAH's contracts with Network Vendors (or physicians), not on payments that Plaintiffs offered or made apart from their use of any Network Vendor. Such vague, speculative allegations do not suffice to establish antitrust standing. *See Associated Gen. Contractors*, 459 U.S. at 545 (antitrust standing requires a non-speculative injury directly caused by the complained-of conduct).

Trilogy supposedly have "entered agreements with AAH *typical* of those described previously between Network Vendors and AAH." *Id*. In their attempt to support this assertion, Plaintiffs offer allegations relating to a different Network Vendor, Wisconsin Physician Services ("WPS"), from a lawsuit that was settled *in 2007*,[7] along with an allegation that "all plans" language was included in two of AAH's contracts with other, *unidentified* Network Vendors. *Id.* ¶¶ 105, 124 126. Plaintiffs also speculate that because other Network Vendors (including WPS) supposedly were subject to anti-tiering restrictions, those same provisions allegedly exist with respect to Cigna and Trilogy as well. *Id.* ¶ 122. None of these allegations addresses the actual content of AAH's agreements with Cigna or Trilogy in any respect. Plaintiffs therefore fail to plausibly allege that they were impacted by any allegedly anticompetitive provisions.

 *Second*, the Amended Complaint does not make any attempt to allege how Cigna's or Trilogy's agreements with AAH harmed Plaintiffs in any manner, let alone caused harm of the type that the antitrust laws are intended to prevent. Although Plaintiffs complain about high prices for health care services, they do not explain how those high prices are linked to any foreclosure or other harm to the competitive process caused by Cigna's or Trilogy's agreements with AAH. The Amended Complaint should be dismissed because it fails to supply any "direct link" between the purportedly anticompetitive contractual provisions and Plaintiffs' alleged injury. *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir. 1993).

 *Third*, a separate requirement for establishing antitrust standing is that the plaintiff is among those "who can most efficiently vindicate the purposes of the antitrust laws." *Fisher*, 558 F. App'x at 655. The Amended Complaint nowhere connects Plaintiffs to the allegedly unlawful

---

[7] As addressed below, these allegations are from 15 years ago and therefore outside the limitations period. They should be disregarded as a result. *See* Section VI, *infra* at 24–25.

contractual provisions. Plaintiffs instead identify, by name, several market participants who could more efficiently enforce the antitrust laws if there were reason to do so, including several Network Vendors who are believed to contract with AAH, *see* AC ¶¶ 120–21 (Anthem and UnitedHealthcare), and health systems that compete with AAH, *see id.* ¶ 85 (Froedtert and Ascension). Because Plaintiffs are not situated like others to efficiently enforce the antitrust laws, *see McGarry*, 937 F.3d at 1065, their claims should be dismissed for lack of antitrust standing.

## II. COUNT I FAILS TO PLAUSIBLY ALLEGE THAT AAH'S CONTRACTS WITH NETWORK VENDORS VIOLATE SECTION 1 OF THE SHERMAN ACT

Count I of the Amended Complaint claims that AAH "compel[s]" Network Vendors to accept "anticompetitive terms" that amount to unlawful vertical restraints in violation of Section 1 of the Sherman Act.[8] AC ¶¶ 239–43. A violation of Section 1 requires: (1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in a relevant market; and (3) an accompanying injury. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012); *cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Count I should be dismissed because the Amended Complaint fails to plausibly allege: (i) the contents of the allegedly unlawful contractual provisions that AAH imposed in its contracts with Network Vendors; and (ii) that those alleged provisions harmed competition by foreclosing competitors.

---

[8] For the purposes of this Motion only, AAH refers to the geographic and product markets as posited in the Amended Complaint. AAH does not concede that the markets are properly defined, or that Plaintiffs' allegations suffice to show that AAH possesses the requisite market power or has foreclosed competition in any relevant market. As addressed in Section III.A, *infra* at 16–19, Plaintiffs' failure to plead a plausible relevant market warrants dismissal of both their Section 1 and Section 2 claims. *See Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 916 (7th Cir. 2020) (affirming dismissal of both Section 1 and Section 2 claims for failure to define a relevant geographic market or product market).

**A.** **Plaintiffs Do Not Plausibly Allege that AAH Imposed Unlawful Contractual Provisions on All, or Nearly All, Its Network Vendors**

The alleged vertical restraints underlying the Section 1 claim rest on innuendo and speculation drawn from outdated media reports and unattributed sources. The Amended Complaint does not plausibly allege that AAH imposed unlawful contractual provisions in its agreements with Network Vendors, or even Cigna and Trilogy, Plaintiffs' own Network Vendors. Plaintiffs instead invoke isolated instances of alleged conduct to declare that "all or nearly all" Network Vendors are subject to allegedly unlawful provisions in their agreements with AAH (AC ¶ 241), although Plaintiffs alternatively allege only that "most" Network Vendors are subject to these provisions. AC ¶¶ 103, 118. Assessing each type of alleged contractual provision in turn, it is apparent that the Amended Complaint does not supply the factual matter necessary to support Plaintiffs' sweeping, generalized assertions.

***"All or Nothing" and "All Plans" Allegations.*** Two provisions that Plaintiffs feature in the Amended Complaint are the "all-or-nothing" and "all plans" clauses. These are alleged to be unlawful provisions in AAH's agreements with Network Vendors that, according to Plaintiffs, require those vendors to include all of AAH's facilities in all of their provider networks. Plaintiffs call out one small Network Vendor, WPS, based on its allegations in a lawsuit that was resolved in 2007, ***fifteen years ago***, AC ¶¶ 102–05, 109, 123, and thus should be disregarded. *See* Section VI, *infra* at 24–25. Relying on this litigation with WPS, the Amended Complaint then alleges "on information and belief" that "AAH continues to use similar contract language and has used such language in contracts with most Network Vendors" during the alleged class period. AC ¶¶ 102–03.[9]

---

[9] Plaintiffs also point to WPS's dated allegations that AAH included all-plans provisions in its agreements with "United Health Group, Inc., WellPoint Health Networks, Inc., Humana, Inc.,

The Amended Complaint does not supply any meaningful factual enhancement to support this assertion. Plaintiffs otherwise offer: (i) passing references to an unidentified consultant who claims that AAH drew a hard line in negotiating its agreements, *id.* ¶ 106, and (ii) newspaper reports, including an article from 2006, *id.* ¶ 107. These allegations do not address **which** Network Vendors the allegedly unlawful provisions have been imposed upon, **how** those vendors allegedly have been affected, and **whether and when** any such impact occurred during the alleged class period. *See, e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000) ("Conclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel.").

Plaintiffs also reference two unspecified "analyses" in support of their "all plans" allegations. The Amended Complaint suggests that an August 2022 analysis of AAH's insurance coverage materials indicates that AAH "appears" to have an all-plans requirement for Network Vendors; Plaintiffs also claim another "analysis of several major network vendors" purportedly shows that Network Vendors either include all AAH facilities in all networks or none in any. AC ¶ 107. The Amended Complaint does not identify who conducted these analyses or how they were conducted. Nor do Plaintiffs allege the basis on which the analyses supposedly concluded that the mere inclusion of all AAH facilities is caused by alleged unlawful restraint, rather than resulting from consumer demand. Such threadbare allegations are insufficient. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together.").

---

Aetna, Inc., **and others**," with the Amended Complaint baldly asserting that "others" must refer to a group of Network Vendors that includes Cigna and Trilogy. AC ¶ 105.

*Anti-Tiering/Anti-Steering Allegations.* Plaintiffs' allegations regarding the other alleged contractual provisions are no different. As to the alleged "anti-tiering" clauses, Plaintiffs allege that two unidentified TPAs (not Network Vendors) are required to identify AAH providers as "Participating Preferred Providers" or as "Tier 1" providers. AC ¶ 126. Plaintiffs offer hearsay that two Network Vendors (Anthem and UnitedHealthcare) told an unidentified self-funded health plan that they "w[ere] barred by AAH" from offering "tiered health plans," *id*. ¶¶ 120–21. And Plaintiffs simply state that Trilogy, Cigna, and WPS do not *offer* tiered networks in AAH service areas. *Id.* ¶ 128. These allegations do not address the content or effect of any "anti-tiering" provision, or suggest that any such alleged restraint applies to all Network Vendors.

Similarly with respect to "anti-steering," Plaintiffs allege that at some point "in the past" AAH prevented *one* unidentified Network Vendor from accessing any of AAH's facilities because the Network Vendor wanted to direct patients to non-AAH radiology centers. AC ¶ 127. This allegation does not even suggest that a contractual provision exists in any contract, let alone its content or effect.

*Confidentiality Provisions.* The Amended Complaint's "gag clause" allegations, AC ¶ 144, are also threadbare, with Plaintiffs pointing only to (i) an unidentified *Wall Street Journal* article supposedly identifying "AAH as among several hospital systems in the United States that use 'secret contract terms,'" *id*. ¶ 145, and (ii) hearsay from an unidentified Network Vendor that AAH's negotiated rates are "a closely guarded secret" and "subject to confidentiality restrictions," *id.* ¶ 147. Plaintiffs do not include any specific allegations about whether any Network Vendor's contracts with AAH include such terms. And at an even more basic level, Plaintiffs do not assert that the alleged provisions are anything but ordinary confidentiality provisions. Nor do Plaintiffs

12

allege that such clauses were introduced by AAH, rather than the Network Vendor, or that any Network Vendor sought to reject a confidentiality provision.

***Non-Compete and Referral Restriction Allegations.*** The Amended Complaint's allegations with respect to AAH's physician agreements are similarly devoid of supporting facts. With respect to purported non-competes, Plaintiffs cite two purported examples: one in which AAH was admittedly ***unsuccessful*** in enforcing the agreement, AC ¶¶ 132–33, and another where AAH never actually entered into non-compete agreements following an "***abandoned effort*** to purchase a hospital chain in Michigan," *id*. ¶ 135. Plaintiffs' examples of "referral restrictions" are likewise threadbare. The Amended Complaint cites a 2018 settlement involving two physicians; a passing reference to an acquisition of an outpatient practice that allegedly involved an exclusive referral provision; and a Wisconsin reporter writing about Aurora Health Care buying physician practices and directing referrals to its hospitals. *Id.* ¶¶ 141–42, 171. Nothing in these allegations plausibly suggests that such provisions are common or that they harm competition.

This patchwork of scattershot allegations does not supply the "specificity in pleading" that *Twombly* mandates before allowing a "potentially massive factual controversy" of the sort Plaintiffs attempt here. 550 U.S. at 558; *see also, e.g.*, *Tamburo*, 601 F.3d at 699 (affirming dismissal of antitrust claims that were "pleaded in a wholly conclusory fashion" so as to "sweep in the entire gamut of federal antitrust violations").[10] The Court should therefore dismiss the Section 1 claim.

---

[10] Plaintiffs also reference "other tactics to suppress competition," pointing solely to an alleged AAH policy requiring 24/7 continuous call coverage. *Id.* ¶ 138. The allegations appear to refer to a case that was dismissed at the pleading stage in 2013 because of the plaintiff's failure to allege an antitrust injury or violation. *See Fisher v. Aurora Health Care, Inc.*, No. 13-C-152, 2013 WL 12099866, at *5 (E.D. Wis. July 16, 2013), *aff'd*, 558 F. App'x 653 (7th Cir. 2014).

**B.      Plaintiffs Do Not Plausibly Allege Any Substantial Foreclosure of Competition**

Count I's Section 1 claim also fails because Plaintiffs do not plausibly allege that any of the purported contractual provisions have caused competitive harm in the alleged relevant product markets for inpatient hospital services and outpatient hospital services. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[It is a] fundamental requirement . . . [to] sufficient[ly] alleg[e] . . . anticompetitive effects that would result or have resulted from the defendants' actions; the absence of such allegations is ordinarily fatal to the existence of a cause of action.").

Here, the Amended Complaint's allegations consist of generalized assertions that the allegedly unlawful contractual provisions were prevalent in contracts with Network Vendors and that AAH charges supposedly high prices compared to national averages. *Id.* ¶¶ 6–7, 59, 192, 196, 198–204, 207–08, 211–14. It is well-settled, however, that high prices do not suffice to establish anticompetitive conduct. *See, e.g.*, *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 896–97 (2007) (reasoning that "[m]any decisions a [company] makes and carries out through concerted action can lead to higher prices . . . [y]et no one would think these actions violate the Sherman Act because they lead to higher prices").[11] The antitrust laws only prohibit "high" prices ***resulting from*** vertical restraints that "foreclose competition in a substantial share of the line of commerce at issue." *See Republic Tobacco Co.*, 381 F.3d at 737–38.

Plaintiffs fail to plausibly allege any foreclosure from conduct claimed to be anticompetitive. Notably absent from the Amended Complaint are any factual allegations

---

[11] *See also Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) ("The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system."); *Williamsburg Wax Museum*, 810 F.2d at 252 ("[I]mposition of a high price is not, in and of itself, an anticompetitive act.").

addressing *how* any rivals have been affected by the alleged contractual provisions. Plaintiffs do not suggest that competing hospitals or health systems are excluded from the networks offered by Network Vendors.[12] Plaintiffs also do not plausibly allege facts showing that there are potential competitors who decided not to enter, not to expand, or not to compete as a result of the alleged unlawful restraints. And, importantly, there are no facts pled suggesting that a Network Vendor sought to introduce some different type of network but AAH's contractual provisions prevented them from doing so.[13]

Given Plaintiffs' failure to plead any such facts, the Amended Complaint does not plausibly allege that AAH's allegedly anticompetitive contractual provisions have caused foreclosure. In this regard, the Amended Complaint suggests, without basis, that AAH's contractual restraints exist in agreements with Network Vendors that allegedly account for the majority of commercially insured patients in the state. *See* AC ¶¶ 123–24. This is not enough to state a claim. As just addressed, Plaintiffs do not plead any facts suggesting that the allegedly unlawful contractual provisions have inhibited competition by rival healthcare providers. *See Methodist Health Servs. Corp., v. OSF Healthcare Sys.*, No. 1:13–cv–01054–SLD, 2016 WL 5817176, at *11 (C.D. Ill. Sept. 30, 2016) (if a provider can continue competing for a group of patients, those patients "[are] not foreclosed to [that provider], no matter how foreclosure is defined"). The lack of well-pled facts is a particularly critical omission here because the Seventh Circuit has recognized that

---

[12] Plaintiffs declare that, but for "AAH's all-plans requirement, Network Vendors would develop plans that did not include AAH (or at least did not include all of its facilities) in-network." AC ¶ 104. Notably, the Amended Complaint does not (and cannot) allege that Network Vendors fail to offer (i) health plans that include multiple other health systems in-network and (ii) health plans that exclude AAH.

[13] Plaintiffs merely suggest that policy and economics commentators have observed that contractual provisions of the *type* they allege may limit competition by removing incentives for new or rival providers to compete on cost and quality of care. *Id.* ¶¶ 57, 154. This cannot substitute for well-pled facts showing that the agreements they challenge actually limit competition.

negotiations between health care providers and insurers based on volume of purchases or bundles of services can provide procompetitive benefits. *See Marion HealthCare, LLC v. S. Ill. Hosp. Servs.*, 41 F.4th 787, 791 (7th Cir. 2022) (affirming summary judgment for hospital where no allegation of "any historical link" between an agreement that insurer would not "strike a preferred-provider deal" with nearby hospitals and "either prices or output"); *see also Methodist Health Servs. Corp. v. OSF HealthCare Sys.*, 859 F.3d 408, 410 (7th Cir. 2017) (contracts that "limit the network of providers from which [insureds] obtain . . . health care" are "common[] and legal"; such agreements give payors "better rates from a hospital in exchange for agreeing" to the contract).[14]

## III.    COUNT II FAILS TO PLAUSIBLY ALLEGE ANY VIOLATION OF SECTION 2 OF THE SHERMAN ACT

Plaintiffs' Count II alleges a violation of Section 2 of the Sherman Act, which prohibits unlawful monopolization. This claim relies on the same failed vertical allegations as Count I and thus fails to state a viable antitrust claim for the same reasons addressed above.

In Count II, however, Plaintiffs also allege that AAH has monopoly power in eight purported geographic markets in rural Wisconsin counties, and that AAH uses the same vertical contractual provisions to maintain its monopoly power in those eight rural markets, and to leverage its monopoly power into other geographic markets where it faces substantial competition, such as Milwaukee, to charge higher rates. AC ¶¶ 248–50. But Plaintiffs fail to plausibly allege any relevant geographic market, or that AAH unlawfully acquired or maintained its monopoly power,

---

[14] *See also, e.g., Cascade Health Sols. v. Peacehealth*, 515 F.3d 883, 895 (9th Cir. 2008) (all-or-nothing provisions can yield cost savings and buyers get discounts that allow them to "get more for less"); *see also FTC v. Tenet Health Care Corp.*, 186 F.3d 1045, 1049 (8th Cir. 1999) ("Hospitals are willing to discount their stated rates to managed care payers in order to entice the managed care entity to send its enrollees to that hospital.").

both of which are requisite elements. *See Endsley v. City of Chicago*, 230 F.3d 276, 282 (7th Cir. 2000) (monopolization claim requires "the possession of monopoly power in the relevant market," as well as "the willful acquisition or maintenance of that power"). Nor do Plaintiffs allege that AAH's "leveraging" has resulted in AAH obtaining monopoly power in the supposedly "leveraged" markets. For these additional reasons, the Amended Complaint's monopolization claim should be dismissed.

A.    **Plaintiffs Fail to Adequately Allege Relevant Geographic Markets**

A plaintiff claiming monopolization must first define the relevant geographic market. *Sharif Pharmacy*, 950 F.3d at 916. The Amended Complaint invokes hospital service areas drawn from *The Dartmouth Atlas of Healthcare* (the "Dartmouth HSAs"), a third-party source. AC ¶ 68. The Dartmouth HSAs are "a collection of ZIP codes whose residents receive most of their hospitalizations from the hospitals in that area."[15] The HSAs are "defined by assigning ZIP codes to the hospital area where the greatest proportion of their Medicare residents were hospitalized." *Id*.

The Dartmouth HSAs are not plausible antitrust geographic markets. Referencing the ZIP codes where local residents *receive* most of their hospitalizations does not account for whether or where patients *could turn* for acute inpatient hospital services. *Sharif Pharmacy*, 950 F.3d at 917 ("The [geographic] market must correspond to the commercial realities of the industry."). As other courts have recognized, a hospital's "trade area is not necessarily the relevant geographic market for purposes of antitrust analysis because geographic market evidence must take into account

---

[15] FAQ, Dartmouth Atlas Project, https://www.dartmouthatlas.org/research-methods (last visited Oct. 30, 2022). The contents of the *Dartmouth Atlas* website are properly before the Court on this Motion because they are incorporated by reference in the Amended Complaint, which relies on the website's definition of HSAs. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (addressing the incorporation-by-reference doctrine).

17

where consumers could practically go, not on where they actually go." *Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 309 F.3d 836, 840 (5th Cir. 2002). Zip codes and other arbitrary boundaries cannot define the relevant market without some indication that "there are any legal or economic barriers to competition from areas immediately adjacent" to them. *Mullis v. Arco Petroleum Corp.*, 502 F.2d 290, 296 (7th Cir. 1974). Plaintiffs' failure to define a relevant geographic market with reference to the competitive options or substitutes that exist to which consumers can reasonably turn requires dismissal. *See, e.g.*, *Sharif Pharmacy*, 950 F.3d at 916–17, 919 (dismissing complaint where plaintiff's proposed relevant market was not "comprised of the commodities reasonably interchangeable by consumers for the same purposes"); *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1012 (N.D. Ill. 2017) (same).

Plaintiffs' market definition allegations should be rejected for an additional reason. Their HSA share allegations are based on Medicare admissions. AC ¶ 70 n.2. The Amended Complaint, however, ***excludes Medicare (and Medicaid) services from the alleged class definition***. *Id.* ¶ 61. Plaintiffs accordingly fail to provide any market share allegations for the private commercial insurance markets they attempt to define in the Amended Complaint. Courts have rejected attempts to use Medicare data as a proxy in this manner, and another court recently dismissed a monopolization claim brought by Plaintiffs' own counsel on the basis of this mismatch. *See Davis v. HCA Healthcare, Inc.*, No. 21-cv-3276, 2022 WL 4354142, ¶¶ 87–92 (N.C. Super. Ct. Sept. 19, 2022) (dismissing monopoly leveraging claim for failure to define market and collecting cases where "courts have acknowledged the fundamental differences between government payers and private insurers in antitrust cases"). The Court should reach the same conclusion here and dismiss Count II.

**B.      Plaintiffs Do Not Allege that AAH Unlawfully Acquired or Maintained Its Monopoly Power, Nor Do Their "Monopoly Leveraging" Allegations State a Claim**

The Section 2 claim should also be dismissed because Plaintiffs fail to allege that AAH acquired or maintained its monopoly power "through anticompetitive or exclusionary means." *Lerma v. Univision Commc'ns, Inc.*, 52 F. Supp. 2d 1011, 1018 (E.D. Wis. 1999). Only actual "anticompetitive" behavior can satisfy this element of a Section 2 claim. *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001); *compare with Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 927 (4th Cir. 1990) ("A desire to increase market share or even to drive a competitor out of business through vigorous competition on the merits is not sufficient."). Here, Plaintiffs fail to plead any anticompetitive conduct, for multiple reasons.

*First*, the Amended Complaint's allegations that AAH's prices are "higher" or "too high" or "supracompetitive" as compared to rivals do not, as a matter of law, constitute anticompetitive conduct. The law is clear that "setting a high price . . . is not in itself anti-competitive" within the meaning of Section 2 of the Sherman Act. *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 549 (9th Cir. 1991); s*ee also Lerma*, 52 F. Supp. 2d at 1020 (allegations that plaintiff will pay higher prices does not "equal anticompetitive conduct").[16]

---

[16] Plaintiffs' assertion that AAH charges high prices, in any event, is not borne out by the Amended Complaint either. Plaintiffs allege high rates for certain *procedures* that are cherry picked based on amounts allegedly paid by an unnamed "major commercial network" and a "common commercial health plan." AC ¶¶ 198, 202. These allegations are entirely untethered from Plaintiffs' purported product market, which instead consists of a *bundle* of a "broad group of medical and surgical diagnostic and treatment services" that Network Vendors contract for together. *Id.* ¶¶ 62–63. Plaintiffs attempt to remedy this failure by adding allegations comparing the "weighted average" prices for "an inpatient service" at two AAH facilities and two nearby competitors, but the Amended Complaint provides no details about the types of services included in these calculations. *Id.* ¶¶ 212, 214.

**Second**, Plaintiffs unsuccessfully attempt to bolster their claim with allegations of other supposed "anticompetitive conduct," *e.g.*, charging a high price for a specialty service, building a new hospital to compete with an existing hospital in an area, acquiring the only existing hospital in a rural area, and encouraging intra-system referrals. AC ¶¶ 86, 97–99, 156–57, 162. These allegations get Plaintiffs no closer to alleging a viable Section 2 claim, as they merely cite several examples of conduct that is lawful on its face. *See, e.g., Lerma*, 52 F. Supp. 2d at 1018 ("The Supreme Court has indicated that neither growth or development as a consequence of a superior product, nor business acumen, nor historic accident can be considered illegal.").[17] Because Plaintiffs fail to allege that AAH's prices are the result of anything other than ordinary competitive dynamics and otherwise lawful conduct, the Section 2 claim should be dismissed. *See Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 397 (7th Cir. 2000) ("[E]ven a monopolist is entitled to compete; it need not lie down and play dead . . . . Part of competing like everyone else is the ability to make decisions about with whom and on what terms one will deal.").

**Third**, Plaintiffs' assertion that AAH "leverages" its market power over the eight defined inpatient markets in rural regions in order to charge "supracompetitive" prices in other markets where it faces substantial competition, such as Milwaukee and Green Bay, is not only illogical, but it fails to state a claim. AC ¶¶ 85, 201, 250. "Monopoly leveraging" is "not a standalone theory of liability under Section 2." *Simon & Simon, PC v. Align Tech., Inc.*, No. 19-506, 2020 WL 1975139, at *9 (D. Del. Apr. 24, 2020). Instead, Plaintiffs must plausibly allege that AAH

---

[17] Similarly, confidentiality provisions, which Plaintiffs pejoratively label as "gag clauses," protect competitively sensitive information from competitors, such as prices and negotiation tactics. As such, these provisions actually *enhance* competition and decrease the likelihood that competitors can coordinate on prices. *See, e.g., W. Fuels-Ill., Inc. v. Interstate Com. Comm'n*, 878 F.2d 1025, 1030 (7th Cir. 1989) (recognizing "the possible collusive effects of the disclosure of contract price terms").

attained (or, for an attempt claim as discussed next, had a dangerous probability of attaining) a monopoly position in a second market through anticompetitive conduct. *See Unigestion Holding, S.A. v. UPM Tech., Inc.*, 305 F. Supp. 3d 1134, 1150 (D. Or. 2018); *see also Verizon Commc'ns Inc.*, 540 U.S. at 415 n.4; *Schor v. Abbott Lab'ys*, 457 F.3d 608, 613 (7th Cir. 2006) ("As long as rivals continue to sell, and no second monopoly is in prospect, the search for the rare situation in which that second monopoly just might allow the firm to gain a profit by injuring consumers is not worth the candle."). Such allegations are wholly absent from the Amended Complaint and, if anything, Plaintiffs' own averments are at odds with any such theory. Plaintiffs themselves allege that AAH confronts a "healthy level of competition" in Milwaukee from other major health systems, AC ¶ 191, such as Froedtert, Ascension, and ProHealth, that AAH faces "ostensible competition from three other non-AAH hospitals" in Green Bay, *id.* ¶ 206, and that AAH faces "some competition" in the remaining markets, *id.* ¶ 83. Plaintiffs' half-baked monopoly leveraging theory is easily rejected.

## IV. COUNT III DOES NOT PLAUSIBLY ALLEGE ANY CLAIM FOR ATTEMPTED MONOPOLIZATION UNDER SECTION 2 OF THE SHERMAN ACT

Count III alleges that AAH has "attempted" to monopolize the market for acute inpatient hospital care in the Oconomowoc HSA by imposing vertical contractual restraints in its contracts with Network Vendors. AC ¶¶ 255–56. For purposes of this Section 2 claim, Plaintiffs must allege "(1) . . . specific intent to achieve monopoly power in a relevant market; (2) predatory or anticompetitive conduct directed to accomplishing this purpose; and (3) a dangerous probability that the attempt at monopolization will succeed." *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 854 (7th Cir. 2011).

Count III fails for several obvious reasons. ***First***, Plaintiffs lack antitrust standing to assert this claim because they do not allege that they participated in the Oconomowoc HSA, AC ¶ 214,

the only purported geographic market relevant to Count III, *id.* ¶ 256.  It is well-settled that a plaintiff lacks antitrust standing unless they are a consumer or competitor in the market in which the plaintiff claims competitive injury.  *See, e.g.*, *Associated Gen. Contractors*, 459 U.S. at 539. Count III should be dismissed for that reason alone.

**Second**, although Plaintiffs assert that Count III arises from the same purported contractual provisions that form the basis of Counts I and II, Plaintiffs' actual allegations center on the opening of AAH Summit in 2010 in the Oconomowoc HSA.  *See* AC ¶¶ 164–69.  Such conduct cannot form the basis of an antitrust claim because the facility was opened **twelve years ago**—well beyond the statute of limitations.  *See* Section VI, *infra* at 24–25.  And, of course, opening a new hospital **increases** competition, and is precisely the type of conduct that antitrust law seeks to protect.  *See Cargill, Inc. v. Monfort of Colo. Inc.*, 479 U.S. 104, 116 (1986) ("[C]ompetition for increased market share, is not activity forbidden by the antitrust laws.  It is simply . . . vigorous competition.").

**Third**, Plaintiffs do not sufficiently allege the elements of a claim for attempted monopolization.  Plaintiffs fail to adequately allege that the Oconomowoc HSA is a properly defined relevant geographic market for the same reasons discussed in Section III.A, *supra* at 16–19.  Moreover, opening a new facility—increasing output—is procompetitive conduct that fails to meet the anticompetitive conduct element as a matter of law.  *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993).  Nor do Plaintiffs allege plausible facts that would show AAH had a "specific intent" to monopolize the Oconomowoc HSA.  The Amended Complaint offers nothing more than a rote legal conclusion, that by "imposing [the alleged vertical restraints]," AAH allegedly somehow has demonstrated "its intent to monopolize the market for acute hospital care in the Oconomowoc HSA."  AC ¶ 257.  This conclusory assertion does not

suffice to allege that AAH intended to "destroy competition [or] build monopoly." *G. Heileman Brewing Co. v. Anheuser-Busch Inc.*, 676 F. Supp. 1436, 1473 (E.D. Wis. 1987), *aff'd*, 873 F.2d 985 (7th Cir. 1989).

*Finally*, Plaintiffs do not adequately allege AAH has a "dangerous probability" of obtaining monopoly power in Oconomowoc. *See Ind. Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413 (7th Cir. 1989) (plaintiff must allege sufficient market power to threaten actual monopolization). According to Plaintiffs, AAH's allegedly anticompetitive contractual provisions have been in effect since AAH first built a new hospital in the Oconomowoc HSA in 2010. Plaintiffs aver that AAH's rival, Oconomowoc Memorial, has "lower prices" but "very thin margins," and may close or downsize as a result. *See* AC ¶ 168. But Plaintiffs do not allege how the purported contractual provisions or AAH's other alleged conduct has caused Oconomowoc Memorial's supposed financial distress. Indeed, the Amended Complaint offers no reason why Oconomowoc Memorial cannot raise its prices. Plaintiffs accordingly fail to allege any facts that would plausibly suggest AAH has developed sufficient market power to create a monopoly. *See Hennessy Indus. Inc. v. FMC Corp.*, 779 F.2d 402, 405 (7th Cir. 1985).

## V.    PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED

Plaintiffs assert in Counts IV, V, and VI that AAH violated the Wisconsin Antitrust Act, Wis. Stat. § 133.03(1) and (2), based on the same meager allegations underpinning their federal claims. The Wisconsin Antitrust Act was intended to be a state-level analog of the Sherman Act. *Lerma*, 52 F. Supp. 2d at 1015–16. The analysis of Plaintiffs' claims for restraint of trade, monopolization, and attempted monopolization under the Wisconsin statute thus tracks the analysis of Plaintiffs' claims under federal law. *See Roumann Consulting Inc. v. Symbiont Constr., Inc.*, No. 18-C-1551, 2019 WL 3501527, at *11 (E.D. Wis. Aug. 1, 2019) ("Wis. Stat. § 133.03(1) . . . [is construed] in conformity with federal cases decided under the Sherman Act").

Because the analyses are the same in all material respects, Counts IV, V, and VI of the Amended Complaint should be dismissed for the same reasons discussed in Sections II–IV, *supra* at 9–23. *See id.* (dismissing Wisconsin law claim for failure to plead anticompetitive conduct); *Lerma*, 52 F. Supp. 2d at 1015–16 (same).

## VI. PLAINTIFFS' ALLEGATIONS RELATING TO CONDUCT BEYOND THE STATUTE OF LIMITATIONS SHOULD BE REJECTED

Lastly, the Amended Complaint runs afoul of the statute of limitations by invoking alleged conduct that took place well outside the relevant limitations period. The relevant statute of limitations is four years under federal law, and six years under state law.[18] *See* 15 U.S.C. § 15b; Wis. Stat. § 133.18(2). Yet Plaintiffs assert a variety of allegations concerning AAH's conduct that fall well outside the limitations periods, in some cases by decades.

For example, each and every count of the Amended Complaint relies on the theory that AAH's contracts include allegedly unlawful provisions. That assertion relies, in turn, on alleged conduct or events that in most instances occurred well beyond the relevant limitations period, *see, e.g.*:

- **2013**: lawsuit related to call coverage policy filed, AC ¶ 138;
- **2008**: AAH allegedly pressured a Network Vendor to cease doing business with a TPA, *id*. ¶ 115;
- **Pre-2008**: AAH allegedly pressured a network that did not include AAH facilities, *id*. ¶ 116;
- **2007**: AAH settled lawsuit with WPS related to "all-plans" provisions, *id*. ¶¶ 72, 74, 102–03, 105, 109, 123;
- **2006**: *Milwaukee Journal Sentine*l reported on "all-plans" language in AAH contracts, *id*. ¶ 107.

---

[18] These same time periods are applicable to Plaintiffs' request for injunctive relief even though the doctrine of laches applies, rather than the statute of limitations. *See Oliver v. SD-3C LLC*, 751 F.3d 1081, 1085–86 (9th Cir. 2014) ("four-year statute of limitation" serves as the "guideline" for "computing the laches period."); *see also Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 717 n.13 (4th Cir. 2021) (same).

Similarly, Plaintiffs attempt to bolster their claims for monopolization and attempted monopolization by citing to acquisitions of facilities or affiliations that occurred nearly a decade or more ago. *See, e.g.*, *id*. ¶¶ 160, 161, 164, 173, 174.

All of this alleged conduct is outside the statute of limitations period under both federal and state law. The Court should bar Plaintiffs from pursuing their claims insofar as they are based on conduct from outside the relevant limitations periods. *See Logan v. Wilkins*, 644 F.3d 577, 582–83 (7th Cir. 2011) (affirming district court's dismissal of claim as time-barred, noting that when "allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"); *Century Hardware Corp. v. Powernail Co.*, 282 F. Supp. 223, 225 (E.D. Wis. 1968) (dismissing antitrust complaint where "the action would be barred by limitations" based on "the facts stated in the complaint").

## VII. COUNT VII SHOULD BE DISMISSED

The Amended Complaint's final count, Count VII, seeks injunctive, equitable, and/or declaratory relief. The Court should dismiss this count because it is not a standalone claim, but rather an attempt to obtain remedies on Plaintiffs' underlying causes of action, which fail for all of the reasons addressed above. *See* Sections I–V, *supra* at 6–24; *Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 n.4 (7th Cir. 2019) ("[I]njunctive relief . . . is a remedy, not a cause of action, and thus should not be pleaded as a separate count."); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) (Clayton Act's provision allowing private antitrust plaintiffs to seek injunctive relief "does not furnish an independent cause of action . . . . [r]ather, it allows the court to fashion relief upon a showing of a separate violation of the antitrust laws").

<u>CONCLUSION</u>

Plaintiffs fail to plausibly allege that they are the proper parties to bring this case or that they were injured by allegedly unlawful provisions in contracts between AAH and Network

25

Vendors or physicians, let alone that their injury is of the type that the antitrust laws are intended to prevent or that such conduct foreclosed competition in any market in which AAH participates. Because Plaintiffs have failed to plead any of the basic facts that would sustain their antitrust theories, even after already availing themselves of the opportunity to amend, the Amended Complaint should be dismissed in its entirety with prejudice. *See Chi. Studio Rental Inc. v. Ill. Dep't of Com. & Econ. Opportunity*, No. 15 C 4099, 2017 WL 1208424, at *4 (N.D. Ill. Apr. 3, 2017), *aff'd sub nom. Chi. Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d 971 (7th Cir. 2019) (dismissing antitrust claims with prejudice for failure to allege antitrust injury where plaintiff was "given . . . an opportunity to cure this deficiency and it failed to do so").

Date: October 31, 2022

/s/ *Daniel E. Conley*
Daniel E. Conley
Nathan J. Oesch
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
Telephone: 414.277.5000
Fax: 414.271.3552
daniel.conley@quarles.com
nathan.oesch@quarles.com

Matthew Splitek, SBN 1045592
QUARLES & BRADY LLP
33 E Main St, Suite 900
Madison, WI 53703
Telephone: 608.251.5000
Fax: 608.251.9166
matthew.splitek@quarles.com

Jane E. Willis
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: 617.951.7000
Fax: 617.951.7050
jane.willis@ropesgray.com

Anne Johnson Palmer
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111
Telephone: 415.315.6300
Fax: 415.315.6350
anne.johnsonpalmer@ropesgray.com

27