# Exhibit A

| STATE OF WISCONSIN | CIRCUIT COURT<br>Civil Division | MILWAUKEE COUNTY<br>05CV011279 |
|---|---|---|

AURORA HEALTH CARE, INC.,
3000 West Montana Street
Milwaukee, Wisconsin 53215

               Plaintiff,     Case No.

          vs.              Case Type:  Other Contract
                                Case Code:  30303

WISCONSIN PHYSICIANS SERVICE
INSURANCE CORPORATION,
1717 West Broadway
Madison, Wisconsin 53708-8190,

                            HON. JOSEPH DONALD, BR.

               Defendant.            CIVIL C

## SUMMONS

THE STATE OF WISCONSIN, TO EACH PERSON NAMED ABOVE AS A DEFENDANT:

    You are hereby notified that the plaintiff, Aurora Health Care, Inc., has filed a

lawsuit or other legal action against you. The Complaint, which is attached, states the nature and

basis of the legal action.

                                                      DEC 2 8 2005

    Within 45 days of receiving this summons, you must respond with a written

answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint. The

Court may reject or disregard an answer that does not follow the requirements of the statutes.

The answer must be sent or delivered to the Milwaukee County Courthouse, whose address is

901 N. Ninth Street, Room 104, Milwaukee, WI 53233, and to Brian W. McGrath of Foley &

Lardner LLP, plaintiff's attorney, whose address is 777 East Wisconsin Avenue, Milwaukee, WI

53202. You may have an attorney help or represent you.

    If you do not provide a proper answer within 45 days, the Court may grant

judgment against you for the award of money or other legal action requested in the Complaint,

Case 2:22-cv-00610-LA   Filed 12/30/22   Page 2 of 29   Document 27-1

and you may lose your right to object to anything that is or may be provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this 28th day of December 2005.

BRIAN W. McGRATH (WBN 1016840)
CAROLINE P. LAVELLE (WBN 1052415)

By: _____

Attorneys for Plaintiffs Aurora Health Care, Inc.

FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
414.297.5508 (BWM)
414.297.5628 (CPL)
414.297.4900 Facsimile

2

STATE OF WISCONSIN          CIRCUIT COURT          MILWAUKEE COUNTY

05CV011279

AURORA HEALTH CARE, INC.,
3000 West Montana Street
Milwaukee, Wisconsin 53215

                        Plaintiff,     Case No.

                vs.                  Case Type:   Other Contract
                                     Case Code:   30303

WISCONSIN PHYSICIANS SERVICE
INSURANCE CORPORATION,
1717 West Broadway
Madison, Wisconsin 53708-8190,

                    Defendant.

## COMPLAINT

       The Plaintiff, Aurora Health Care, Inc. ("Aurora") by and through its undersigned attorneys, Foley & Lardner LLP, for its complaint, alleges as follows:

       1.    Aurora is a Wisconsin corporation with its offices and principal place of business located at 3000 West Montana, Milwaukee, Wisconsin 53215. Aurora is an integrated health care system comprised of participating physicians, hospitals and other health care providers and facilities properly qualified, licensed or certified to practice in accordance with the provisions of all applicable laws and regulations in the State of Wisconsin.

DEC 28 2005

JOHN BARRETT
Clerk of Circuit Court

       2.    Upon information and belief, Defendant, Wisconsin Physicians Service Insurance Corporation ("WPS"), is a Wisconsin corporation with its principal place of business located at 1717 West Broadway, Madison, Wisconsin 53713. WPS is a health insurance company that sells individual and group health insurance products to employers, associations and individuals and also administers plans that are self-insured by certain employers (generally large employers) and other entities.

MILW_1907424.2

3.      The insured or administered Plans offered by WPS have many different names including: health maintenance organizations (HMOs); preferred provider plans or organizations (PPOs); point of service plans (POSs); consumer directed plans; limited service health organizations (LSHOs); high deductible plans; Medicare wrap or supplemental plans, and many others. The distinguishing factors are that some of these Plans constitute insurance provided by WPS and others are just administered by WPS (and self-funded by employers). Some Plans offer defined networks for which there are lower co-payments and deductibles when in-network providers are used. Some Plans charge per member per month fees, others charge set premiums, and others may be indemnity plans.

4.      On December 11, 2001, Aurora and WPS entered into a written agreement effective July 1, 2001, pursuant to which WPS agreed that Aurora providers would be in "all WPS Plans" (the "Agreement") of WPS and all of its subsidiaries and affiliates. A true and correct copy of the Agreement is attached hereto as Exhibit A.  Specifically, pursuant to Section III B(1) of the Agreement, all Aurora providers (including all Aurora hospitals, physicians and other providers) were to be identified as contracted providers (defined in the Agreement as "Preferred Providers") in "all WPS Plans" in Aurora's service area of Eastern Wisconsin for a contract term of 15 years.  WPS further agreed to encourage all of the Covered Members in all WPS Plans to utilize Aurora providers.

5.      The term "Plan" is broadly defined in the Agreement to include all individual health insurance policies and group health insurance certificates issued by WPS and to include self insured plans administered by WPS.  WPS is defined to include "its subsidiaries and affiliates," so "all WPS Plans" expressly includes "all Plans" of WPS as well as any subsidiary or affiliate of WPS.

2

MILW_1907424.2

6.     WPS has materially breached the Agreement by offering, operating and administering Plans in the Aurora service area, in which WPS has refused to identify Aurora Providers as "Preferred Providers" (defined in the Agreement as under contract with WPS). In these plans, Aurora Providers are not listed in the provider directory and Covered Members cannot access Aurora Providers for health care services as required under the Agreement without a financial penalty. Thus, WPS failed to encourage or even allow use of Aurora Providers in certain Plans.

7.     In addition, despite WPS' express agreement to include Aurora Providers in all WPS Plans, including those of its subsidiaries and affiliates, at least one WPS subsidiary, WPS Health Plan (doing business as WPS Prevea Health Plan), has marketed and sold health care plans that specifically exclude Aurora Providers.

8.     Aurora has brought these and other material breaches of the Agreement to WPS' attention. On or about October 11, 2004, in a face to face meeting, Aurora made WPS aware that its failure to include Aurora Providers in all WPS Plans was and is a material breach of the Agreement.

9.     Since that time, Aurora representatives have met with representatives of WPS to discuss the breaches and to try to resolve them. Despite Aurora's consistent effort to work with WPS to find a resolution, WPS has repeatedly refused to allow Aurora Providers to participate in certain plans and has refused to identify or include Aurora Providers as contracted providers in all WPS Plans.

10.     On or about June 24, 2005, Aurora provided WPS with a formal notice of breach and provided WPS with 30 days to cure.

3

MILW_1907424.2

11.     On or about July 18, 2005, Aurora sent further notice of breach to WPS by letter stating that "There is no question and your letter acknowledges that you are selling and operating WPS plans in which Aurora providers are not included. That is a breach." A true and correct copy of this letter is attached hereto as Exhibit B.

12.     On October 17, 2005, Aurora met with WPS to mediate their dispute. The mediation was conducted by The Honorable Michael Barron (Ret.). The mediation failed and WPS continues to be in breach of the Agreement.

13.     WPS' breach of the Agreement has caused damages to Aurora in an amount to be determined by the trier of fact.

4

WHEREFORE, Aurora requests relief as follows:

      A.     For a declaration that WPS materially breached the Agreement by refusing to identify Aurora Providers as contracted providers in all WPS Plans and to encourage utilization of Aurora Providers;

      B.     For damages incurred by Aurora and caused by WPS' breach of the Agreement; and

      C.     For such other and further relief as the Court may deem just and equitable.

Dated this 28th day of December, 2005.

                      BRIAN W. McGRATH (WBN 1016840)
                      CAROLINE P. LAVELLE (WBN 1052415)

By: _____

                      Attorneys for Plaintiffs Aurora Health
                      Care, Inc.

FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
414.297.5508 (BWM)
414.297.5628 (CPL)
414.297.4900 Facsimile

5

## PREFERRED PROVIDER AGREEMENT

### I. PARTIES

THIS AGREEMENT is entered into and supersedes all previous Agreements in force as of the 1st day of July, 2001, between AURORA HEALTHCARE, INC. (Hereinafter "AURORA"), with a principal business office located at 3000 West Montana Street, Milwaukee, Wisconsin, 53215, and WISCONSIN PHYSICIANS SERVICE INSURANCE CORPORATION, a Wisconsin corporation, and its subsidiaries and affiliates including WPS, The EPIC Life Insurance Company, InsurTec and North Central Health Protection Plan(Hereinafter collectively "WPS"), with principal business offices located at 1717 West Broadway, Madison, Wisconsin, 53713, with an alternate mailing address of P.O. Box 8190, Madison, Wisconsin, 53708-8190.

### II. RECITALS

WPS is a licensed insurance corporation and a Benefits administrator in the State of Wisconsin and provides health care insurance coverage and/or administrative services to self-funded or fully insured health care purchasers; and

AURORA is comprised of participating Physicians, Hospitals and other health care providers and facilities properly qualified, licensed or certified to practice in accordance with the provisions of all applicable laws and regulations in the State of Wisconsin; and

AURORA desires to provide services to Covered Members of Plans insured or administered by WPS.

WPS and AURORA share the common goals of establishing a health care delivery system committed to the advancement of quality patient care, and developing innovative approaches to the delivery of quality medical services in a cost effective manner.

Therefore, the parties agree to the terms and conditions set forth below.

### III. PROVISION OF SERVICES

A. AURORA shall, during the term of this Agreement:

1. Permit designation by WPS to current and prospective Covered Members that all AURORA providers are Participating Providers and are Preferred Providers.

-2-



EXHIBIT
A

2. Accept and care for Covered Members as patients in a manner consistent with the acceptance and care of other patients. Furthermore, AURORA agrees and shall require its Participating Providers to agree:

   a. Not to discriminate in the treatment of Covered Members or in the quality of services delivered to Covered Members on the basis of race, sex, age, religion, place of residence, health status, disability, or source of payment; and

   b. To observe, protect and promote the rights of Covered Members as patients.

3. Provide Medically Necessary services to Covered Members within the normal scope of practice of Participating Providers and in compliance with generally accepted medical/surgical practice standards.

4. Except in Emergency situations, admit Covered Members to only Preferred Hospitals for inpatient services, or with prior approval of WPS, to non-Preferred Hospitals.

5. AURORA agrees to respond in a timely manner to concerns raised from time to time by WPS with respect to the quality and cost-effectiveness of AURORA's Participating Providers and agrees to take such actions as are necessary and appropriate to maintain the integrity of its program.

B. WPS shall, during the term of this Agreement:

1. Identify all AURORA Participating Providers as Participating Preferred Providers in all WPS Plans within Aurora's defined service area of Eastern Wisconsin (service area map attached as Exhibit 2).

2. Establish Benefit designs in Plans that encourage Covered Members to utilize Preferred Providers.

3. Provide Participating Providers with a timely and accurate list of Preferred Providers upon request.

4. Provide to each Covered Member an identification card which shall be presented for the purpose of assisting Participating Providers in verifying Covered Member's eligibility. In addition, Participating Providers may verify eligibility by contacting WPS. Such verification shall not be considered a guarantee of Benefits.

- 3 -

## IV. UTILIZATION MANAGEMENT AND QUALITY MANAGEMENT

A. AURORA agrees to cooperate with WPS to implement and/or utilize high-quality cost-effective Utilization Management and Quality Management arrangements and techniques, including Disease Management programs, and both parties agree to take such actions as are necessary and appropriate to maintain the integrity of the cost and quality of such arrangements and/or techniques.

B. AURORA agrees that Participating Providers will at all times during the term of this Agreement cooperate with WPS' Utilization Management and Quality Management (UM/QM) policies and procedures, including WPS' determination of Medical Necessity, such that reimbursement will not be pursued for services WPS finds not Medically Necessary subject to the appeal and dispute resolution processes described herein. In the event such a service is deemed to be not medically necessary and such determination is upheld after the exhaustion of the resolution and appeal processes, reimbursement for such service will not be pursued against WPS for services WPS determines are not medically necessary and therefore are not Benefits.

C. AURORA agrees that Participating Providers will provide medical information needed by WPS to perform UM/QM activity either by telephone, fax or on-site as the case may be in accordance with the AURORA Participating Providers policy on external UM/QM.

D. WPS will provide Participating Providers with all applicable UM/QM policies and procedures prior to the implementation of those policies and procedures upon request. These policies and procedures or changes thereof will be communicated in writing forty-five (45) days prior to their implementation. If such policies or procedures or changes thereof are not communicated in writing or are contradictory to the terms of this agreement, reimbursement to AURORA shall not be withheld due to lack of AURORA's cooperation and AURORA shall not be subject to such policies or procedures.

E. WPS will seek AURORA's involvement in resolving any UM/QM concerns involving the Participating Providers.

F. The parties understand and agree that claim payment decisions made by WPS pursuant to its UM/QM policies are for the purpose of Benefit determination only. Both parties acknowledge that nothing in this Agreement shall limit or otherwise restrict Participating Provider's medical or professional judgement with respect to Participating Provider's ultimate responsibility for patient care in the provision of services to the Covered Member.

G. Upon request, Participating Providers shall provide, at AURORA's usual and customary costs for medical record reproduction and distribution, access to or copies of Covered Members' health records (including medical records) for the purpose of WPS' UM/QM review and Benefit determination. In addition, Participating Providers shall provide, at no charge, access to or copies of Covered Members' health records to state and federal

-4-

authorities involved in assessing quality of care or investigating Member grievances or complaints.

## V. COMPENSATION

A. Participating Providers agree to submit complete claim information for services rendered by utilizing standard claim forms and coding systems such as UB-92; HCFA 1500; HCPCS; CPT and ICD-9 codes. Upon reasonable request, Participating Providers agree to submit such additional information as is reasonably necessary for WPS to properly adjudicate such claims, although it is agreed that the majority of information will be present on the applicable claim forms as described above. Any audits or reviews of claims shall be conducted within six (6) months of the date of adjudication and in accordance with AURORA's policy and only subsequent to WPS compensating the Participating Provider its full contractual obligation pursuant to this Agreement.

B. AURORA agrees to accept WPS' payment pursuant to Exhibit I, as payment in full for Covered Services rendered to a Covered Member except that AURORA may collect applicable co-payments, coinsurance, deductibles, and charges for non-Covered Services including services deemed not medically necessary (provided that the terms of Section IV.B. are adhered to) directly from the Covered Member. This provision shall survive the termination of this Agreement regardless of the reason for the termination.

C. Participating Providers may charge, bill, and collect from a Covered Member WPS' usual and customary charges for services which are not Covered Services if the Covered Member has signed AURORA's standard waiver acknowledging that any services that are not Covered Services and were not authorized for reimbursement by WPS, and that the Covered Member will pay such charges.

D. Participating Providers will use best efforts to submit to WPS all claims for services rendered to Covered Members within thirty (30) calendar days of the date of those services. Failure to submit claims on a timely basis will not result in nonpayment; however, claims must be submitted within one (1) year of the date of service to be payable in accordance with the terms of this Agreement. AURORA agrees that the Covered Member is not responsible for charges/claims resulting in nonpayment specifically due to untimely submission to WPS by Participating Providers.

E. WPS will adjudicate claims consistent with WPS' claims adjudication guidelines which shall be consistent with industry standards.

F. WPS will process all undisputed, complete claims for Covered Services within thirty (30) calendar days of the date of receipt.

G. For claims submitted electronically, WPS will process all complete and undisputed claims for Covered Members within fifteen (15) calendar days of the date of receipt.

-5-

H. Total compensation to Participating Providers from WPS and Covered Member for Covered Services rendered will not exceed the amounts contained in Exhibit 1 or its Amendment(s) thereof.

I. When WPS is a secondary payor, WPS agrees to pay only those amounts which when added to the amounts due or received by Participating Providers from any other sources, including copayments, equals one-hundred percent (100%) of the amount to which Participating Providers are entitled pursuant to Exhibit 1 or its Amendment(s) thereof.

## VI. LIABILITY AND INDEMNIFICATION

A. AURORA agrees that at all times during the term of this Agreement that all Participating Providers will have professional liability insurance coverage in effect in the amounts required by Chapter 655 of the Wisconsin Statutes.

B. AURORA agrees to indemnify WPS, its officers, directors. employees. or agents from and against any and all liability. losses. damages. claims, grievances and causes of action and expenses connected therewith (including reasonable attorney's fees and costs), resulting from an injury or death of person(s), damage to property, or other form of injury, arising from the real or alleged malpractice, negligence, neglect, antitrust activity or violation, breach of contract, unfair trade practice, or other act of chance or omission of any act or responsibility of AURORA under this Agreement.

C. WPS agrees to indemnify AURORA, its officers, directors, employees, or agents from and against any and all liability. losses, damages. claims, grievances and causes of action and expenses connected therewith (including reasonable attorney's fees and costs), resulting from an injury or death of person(s), damage to property, or other form of injury, arising from the real or alleged malpractice, negligence, neglect, antitrust activity or violation, breach of contract. unfair trade practice, or other act of AURORA or its employees, representatives or agents. relating in any way to the performance or omission of any act or responsibility of WPS under this Agreement.

## VII. LICENSURE, ACCREDITATION AND CERTIFICATION

A. AURORA represents that its Hospitals are licensed by the Department of Health and Social Services of the State of Wisconsin to operate a Hospital, are qualified providers under the Medicare program, and are accredited by the Joint Commission on the Accreditation of Healthcare Organizations (JCAHO), however, any new Hospital shall be included as of its opening date with the understanding that AURORA shall have a reasonable time after Hospital's opening to apply for and obtain appropriate governmental and third party accreditation. AURORA shall furnish to WPS such evidence of Hospital licensure, Medicare qualification and accreditation when obtained. AURORA shall maintain in good standing such license

· 6 ·

and accreditation and shall notify WPS immediately should action against an AURORA Hospital result in:

1. The suspension or loss of such license;

2. The suspension or loss of such accreditation: or

3. The imposition of any sanctions against any Hospital under the Medicare or Medicaid programs.

B. AURORA shall certify that its Participating Providers are duly licensed or certified in Wisconsin and that they maintain good professional standing at all times. AURORA agrees to give notice to WPS in the event AURORA is reasonably aware that a Participating Provider's license/certification and/or Hospital privileges is/are in jeopardy of suspension or revocation, or of any proceedings that result in the suspension or revocation of such license, certification and/or privileges, AURORA shall submit a copy of its credentialling procedures upon request by WPS, and provide on-site access to credentialling files upon request. AURORA shall also certify that Participating Physicians maintain admitting privileges at one (1) or more Preferred Hospital(s).

C. AURORA shall use best efforts to provide WPS with prior notice of all changes to, additions to, or deletions from the Participating Providers panel. Upon request by WPS, AURORA will provide monthly to WPS a roster of the names, addresses, phone numbers, specialties, social security numbers, license numbers, tax identification numbers, board certification status, effective dates and termination dates for all Participating Providers. AURORA will make this information available in a format that is mutually agreeable to the parties.

## VIII. TERM AND TERMINATION

A. EFFECTIVE DATE AND INITIAL TERM. The initial term of this Agreement shall be effective July 1, 2001, and shall extend for an initial period of fifteen (15) years to expire on June 30, 2016. Unless earlier terminated as set forth below this Agreement and shall automatically be renewed on an annual basis after the initial term subject to the terms and conditions contained outlined in this section.

B. TERMINATION ON DEFAULT. This Agreement may be terminated upon written notice to the other party if there is any material breach in the performance of any of the terms and conditions of this Agreement, and such default has not been cured by the defaulting party within thirty (30) days following written notice of such breach from the non-defaulting party.

C. TERMINATION IN THE EVENT OF INSOLVENCY OR BANKRUPTCY. This Agreement may be terminated immediately at the option of a party, exercisable by written notice to the

.7.

other, in the event the other party becomes insolvent, becomes the subject of voluntary or involuntary bankruptcy or other like proceeding which is not dismissed within thirty (30) days of commencement thereof, makes an assignment for the benefit of creditors, or consents to the appointment of a trustee, a receiver, or other fiduciary for all or a substantial part of its assets.

D. TERMINATION BY OPERATION OF LAW. This Agreement may be terminated immediately at the option of a party, exercisable by written notice to the other, if any federal or state statute or regulation, indicates in the opinion of the party's legal counsel, that any term or condition of this Agreement may violate any such statute or regulation, provided that the parties are unable to agree within thirty (30) days upon modifications to this Agreement as may be necessary to comply with said statute or regulation.

E. TERMINATION UPON MISREPRESENTATION   This Agreement may be terminated immediately at the option of a party, exercisable by written notice to the other of a material omission or misrepresentation by the other party related to that party's performance under this Agreement.

F. TERMINATION BY ADVERSE BUSINESS CIRCUMSTANCES. This Agreement may be terminated with one hundred eighty (180) days advance written notice by a party in the event that the other party's continued participation under this Agreement will materially adversely affect the health, safety or welfare of Covered Members.

G. EFFECT OF TERMINATION. This Agreement's termination shall have no effect upon the rights and obligations of AURORA or WPS which arise from any treatment or other transaction by or between a Participating Provider and a Covered Member occurring prior to the effective date of such termination.

H. AVAILABILITY OF PARTICIPATING PROVIDERS TO PROVIDE COVERED SERVICES AFTER TERMINATION. In the event of termination of this Agreement, unless otherwise directed by WPS, AURORA shall continue and shall arrange for each Participating Provider to continue to arrange for the provision of Covered Services to Covered Members in accordance with the terms of the payment schedule in Exhibit 1 in effect upon termination of this Agreement, as well as the terms and conditions of this Agreement as they apply, including, but not limited to, the Utilization Review Program for the lesser of:

1. The date on which WPS notifies AURORA that alternative coverage arrangements have been made, with respect to the Covered Members for whom such arrangements have been made; or

2. The termination date of the Covered Members' coverage as may be prescribed by applicable federal or state statute or regulation.

I. WPS' RIGHT TO TERMINATE. Nothing herein will be construed as limiting the right of WPS to terminate this Agreement immediately upon delivery of written notice to AURORA if:

- 8 -

1. AURORA is unable to secure and maintain any necessary governmental licenses required for the performance of any of its duties and obligations; or

2. AURORA is unable to secure and maintain the required medical liability insurance; or

3. Ownership of AURORA is transferred to another legal entity; or

J.  **AURORA'S RIGHT TO TERMINATE.** Nothing herein will be construed as limiting the right of AURORA to terminate this Agreement immediately upon delivery of written notice to WPS if:

1. WPS is unable to secure and maintain any necessary governmental licenses required for the performance of any of its duties and obligations; or

2. Ownership of WPS is transferred to another legal entity.

## X. NOTICE REQUIREMENTS

Any notice required to be given pursuant to the terms and provisions of this Agreement shall be in writing and may either be personally delivered or sent by registered or certified mail through the United States Postal Service, return receipt requested, postage prepaid, addressed to each party at the addresses which follow. The notice shall be deemed given on the date of delivery if personally delivered, or on the date indicated on the return receipt if the notice is mailed.

Wisconsin Physicians Service                     Aurora Health Care, Inc.
Insurance Corporation                            3000 West Montana Street
P.O. Box 8190                                    Milwaukee, Wisconsin 53215
1717 West Broadway
Madison, WI 53708
Attn: Senior Vice President

## XI. MISCELLANEOUS

A.  **ADVERTISING.** Except as provided in this paragraph, neither WPS nor AURORA shall use the other's name, symbols, trademarks or service marks in advertising or promotional material or otherwise. WPS shall have the right to use the name of AURORA for purposes of marketing, informing Covered Members of the identity of AURORA and otherwise to carry out the terms of this Agreement. Both AURORA and WPS shall have the right to use the other's name in informational or promotional materials with prior written approval, which approval shall not be unreasonably withheld.

- 9 -

B. AMENDMENTS. This Agreement may not be amended, modified or terminated orally, and no amendment, modification, termination or attempted waiver shall be valid unless in writing and signed by the party against whom the same is sought to be enforced.

C. ASSIGNMENT. This Agreement may not be assigned by either party without the prior written consent of the other party. Such consent shall not be withheld unreasonably.

D. BINDING AGREEMENT. The terms, conditions of this Agreement and obligations arising hereunder shall extend to and be binding upon and inure to the benefit of the executors, administrators, successors, and assigns of each of the parties hereto.

E. CONFIDENTIALITY. Each party agrees that materials and information supplied by one party to the other in performing its duties and obligations under this Agreement shall be confidential, unless specifically noted otherwise in writing by the other party, and may not be distributed to non-parties; provided, however, that reports prepared for WPS in connection with the Utilization Management Program may be disseminated to policyholders or sponsors, or their designated representatives, to the extent permitted by law. The parties also agree to comply with all state and federal laws related to confidentiality of medical records.

F. COUNTERPARTS. This Agreement may be executed in any number of counterparts, each of which shall be an original, and each such counterpart shall together constitute but one (1) and the same Agreement.

G. EFFECT OF INVALIDITY. Should any part of this Agreement be declared invalid, for any reason, such decision shall not affect the validity of any remaining portion, which remaining portion shall remain in force and effect only to the extent it substantially reflects the Agreement as contemplated by the parties, as if this Agreement had been executed with the invalid portion thereof eliminated.

H. ENTIRE AGREEMENT. This Agreement, including Definitions (Appendix A) and all Exhibits, constitutes the sole and only Agreement of the parties hereto with respect to providing services to Covered Members of Plans insured or administered by WPS and correctly sets forth the rights, duties and obligations of each to the other as of its date. Any and all prior Agreements, promises, proposals, negotiations or representations, whether written or oral, which are not expressly set forth in this Agreement are hereby superseded and are of no force or effect.

I. GOVERNING LAW. This Agreement shall be governed by and construed in accordance with the laws of the State of Wisconsin.

J. HEADINGS. The headings to the various paragraphs of this Agreement have been inserted for convenience reference only and shall not modify, define, limit or expand the expressed provision of this Agreement.

- 10 -

K. **INDEPENDENT CONTRACTORS.** The parties to this Agreement are independent contractors. Nothing herein shall be deemed to create a separate corporation, or a merger or partnership of the parties, nor shall anything be deemed to imply or create any master-servant or employer-employee relationship between the parties. Neither of the parties to this Agreement, nor any of their respective officers, directors, employees or agents shall be construed to be the agent, employee or representative of the other except as specifically provided in this Agreement. Neither party is authorized to speak on behalf of the other for any purpose whatsoever without the prior consent of the other.

L. **LICENSES.** The parties warrant that each is licensed or otherwise properly qualified under applicable local, state and federal law to carry out the duties and obligations required by this Agreement.

M. **RESOLUTION OF DISPUTES.** Either party may request arbitration to resolve any disputes, claims or counterclaims arising under or relating to this Agreement. If the other party agrees to arbitration, the dispute shall be resolved by binding arbitration under the rules of conciliation and arbitration of the American Arbitration Association. Each party shall appoint an arbitrator, and the two arbitrators thus selected shall designate a third. If either party fails to appoint its arbitrator within thirty (30) calendar days after receipt of notice of the appointment by the other party of its arbitrator, if the arbitrators selected by the parties fail to appoint the third within thirty (30) calendar days after both have been appointed, then the American Arbitration Association shall have the power, on the request of either party, to make the appointments which have not been made as contemplated above. In the event a party declines arbitration the terms of Section XI. N. shall apply.

N. **RESOLUTION OF DISPUTES AND GRIEVANCES.** WPS and AURORA agree to negotiate in good faith to resolve any grievances, disputes, claims or counterclaims arising under or relating to this Agreement or concerning services received under this Agreement. Each party agrees to notify the other as soon as reasonably possible after any dispute, including disputes with any third person or entity, that is relevant to any rights, obligations, or other responsibilities or duties provided for under this Agreement.

O. **STATE AND FEDERAL REGULATION.** AURORA acknowledges and agrees that WPS, a Wisconsin insurance corporation, and its health insurance policies are subject to various state and federal laws and regulations which may affect the Plan's Benefits offered under the Plans and, consequently, the provision of services by AURORA under this Agreement.

P. **THIRD-PARTY BENEFICIARY.** This Agreement is entered into by and between the parties signing it and it is for their benefit. There is no intent by either party to create or establish third-party beneficiary status or rights or their equivalent in any Covered Member, subcontractor or other third-party which may be affected by the operation of this Agreement, and no such third party shall have any right to enforce any right or enjoy any benefit created or established under this Agreement.

Q. **WAIVER.** Waiver by either party of the performance of any obligation on any occasion shall not constitute waiver of the same or any other obligation thereafter.

Case 2:22-cv-00610-LA   Filed 12/30/22   Page 18 of 29   Document 27-1

IN WITNESS WHEREOF, the parties have caused this instrument to be duly executed by their authorized representatives this __11th__ day of ___December___ 2001.

WISCONSIN   PHYSICIANS   SERVICE
INSURANCE CORPORATION
1717 W. Broadway
P.O. Box 8190
Madison, Wisconsin 53708-8190

AURORA HEALTHCARE, INC.
3000 West Montana Street
Milwaukee, Wisconsin, 53215

BY: _____

Jeffrey J. Nohl

Senior Vice President

DATE: ___12/11/01___

BY: _____

___Donald J Nestor___
(Printed Name)
___Executive Vice President & Chief___
___Financial Officer___
(Printed Title)

DATE: ___5-3 ??___

- 12 -

# EXHIBIT 1

## COMPENSATION AGREEMENT

### Effective Date: *July 1, 2001*

1. It is agreed and understood that AURORA Providers shall accept the reimbursement for Covered Services as payment in full, excluding applicable coinsurance, deductible, copayment(s) and non-Covered Service amounts, at the discounted billed charges as shown in Tables A and B. AURORA agrees to collect from the Covered Member such coinsurance, deductible, copayment(s) and non-Covered Service amounts.

2. AURORA warrants and represents that it is the legal representative of Providers affiliated with Aurora Health Care. In such capacity, AURORA warrants that its Providers shall comply with all rates and terms contained herein. Notwithstanding the above, in the event that the relationship between AURORA and an Aurora Health Care Provider dissolves, the rates and terms of this Agreement are not transferable and will terminate on the effective date that the relationship between AURORA and the Aurora Health Care Provider ceases to exist.

   Notwithstanding the above, AURORA acknowledges that WPS has entered into this Agreement based upon AURORA'S representation that the reimbursement rates contained herein are, on an aggregate basis (Hospital and Physician), in accordance with AURORA'S current pricing strategy ("Pricing Strategy"). The Pricing Strategy ensures substantially similar pricing for similarly situated Managed Care Organizations ("Similar MCO") including any such plans owned by Aurora. For purposes of this Agreement, the terms "Similar MCO's" shall mean managed care organizations which (a) market similar products and has a similar mix of membership in such products, (b) have similar overall membership in AURORA's service area (eastern Wisconsin), (c) provide a similar volume of business by product to AURORA, (d) provide similar steerage to AURORA providers, and (e) has a similar network of providers in the MCO's service area. In the event that the Pricing Strategy is altered whereby AURORA enters into an Agreement with a Similar MCO with reimbursement rates substantially less than the rates contained in this Agreement, AURORA shall immediately notify WPS of such execution of such Agreement and WPS, in its sole discretion, shall have the right to:

   (a) Accept such alteration of strategy or rates contained in such Agreement; or

   (b) Have the Agreement continue in full force and effect.

   The sole remedy of a breach of this Section shall be termination of this Agreement with no damages, upon thirty (30) days prior written notice.

   WPS, no more than once annually, shall have the right, based on reasonable, objective evidence of non-compliance with the terms in this Paragraph 2 of Exhibit 1, as specified by payor, to provide Aurora with such evidence and request from Aurora written certification of compliance. Such written certification shall be made within thirty (30) days from WPS' request. In the event such written certification is not provided within thirty (30) days, or if after receipt and review of

- 13 -

such written certification WPS maintains its assertion of Aurora's non-compliance, the parties shall mutually agree to an independent third party who shall review pertinent documents and other information related to WPS' assertion of non-compliance. Both parties shall cooperate with the independent third party's review (e.g., timely provision of documents).

If the independent third party review determines Aurora to be non-compliant, Aurora shall have thirty (30) days to remedy its non-compliance. Such remedy shall prospectively afford WPS the more favorable ("substantially less") terms for a period commensurate with the remaining time period for which Aurora affords such more favorable terms to the specific payor and would have therefore been non-compliant. If Aurora does not remedy its non-compliance within thirty (30) days of the independent review, WPS shall have the option to terminate this Agreement for material breach and as its sole remedy seek enforcement of the above-described contractual remedy.

- 14 -

WISCONSIN PHYSICIANS SERVICE
INSURANCE CORPORATION
1717 W. Broadway
P.O. Box 8190
Madison, Wisconsin 53708-8190

BY: _____
Jeffrey J. Nohl

Senior Vice President

DATE: 12/11/01

AURORA HEALTHCARE, INC.
3000 West Montana Street
Milwaukee, Wisconsin, 53215

BY: _____
Donald J. Nestor
Executive Vice President & Chief
Financial Officer

DATE: 9-28-01

- 14 -

## APPENDIX A

### DEFINITIONS

A. "BENEFITS" shall mean the charges payable for a Covered Service after application of copayments, deductibles, and coinsurance under the Plan, subject to all of the terms, conditions, and provisions of such Plan.

B. "COVERED MEMBER/MEMBER" shall mean an employee, retiree, dependent or any other person who is eligible to receive Benefits under a Plan. Covered Members shall include enrollees in commercial and Medicare Risk products.

C. "COVERED SERVICES" shall mean those Medically Necessary health care and related services and products covered by the Plan.

D. "EMERGENCY" shall mean the sudden and unexpected onset of one or more acute conditions calling for medical services which the Covered Member receives right after the onset of such condition(s) or as soon as possible after the Covered Member experiences such condition(s). For example, such an emergency includes heart attack, cardiovascular accident, poisoning, loss of consciousness or loss of breathing. These and other acute conditions are medical emergencies when all of the following are met, as determined by WPS:

    1. The Covered Member requires immediate medical care; and

    2. The onset of the severe symptom(s) of the acute condition(s) is sudden and unexpected. The symptom(s) must be severe enough to cause a reasonably prudent person to seek medical care right away, no matter what time of day it is; and

    3. Immediate medical care must be obtained (if it is not, it's not a medical emergency); and

    4. A Provider's diagnosis of the symptom(s) indicates the condition(s) required immediate medical care.

E. "EMERGENCY MEDICAL CARE" shall mean those medical services directly provided by a health care Provider to treat a Covered Member's Emergency.

F. "HOSPITAL" shall mean an institution providing 24-hour continuous service to confined patients. Its chief function must be to provide diagnostic and therapeutic facilities for the surgical and medical diagnosis, treatment and care of injured or sick persons. A professional staff of licensed Physicians and surgeons must provide or supervise its services. It must provide general hospital and major surgical facilities and services. A Hospital also includes a specialty hospital approved by WPS and licensed and accepted by the appropriate state or regulatory agency to provide diagnosis and short term treatment for patients who have specified medical conditions. A hospital does not include, as determined by WPS:

- 15 -

1. A convalescent or extended care facility unit within or affiliated with the hospital;

2. A clinic;

3. A nursing, rest or convalescent home or extended care facility;

4. An institution operated mainly for care of the aged or for the mental disease, drug addiction or alcoholism;

5. A sub-acute care center;

6. A health resort, spa or sanitarium

G. "MEDICALLY NECESSARY/MEDICAL NECESSITY" shall mean a service, treatment, procedure, equipment, drug, device or supply provided by a Preferred Provider or other health care Provider that is required to identify or treat a Covered Member's illness or injury and which is, (as determined by WPS):

1. Consistent with the symptom(s) or diagnosis and treatment of the Covered Member's illness or injury;

2. Appropriate under the standards of acceptable medical practice to treat that illness or injury;

3. Not solely for the convenience of the Covered Member, Preferred Provider, or other health care provider; and

4. The most appropriate service, treatment, procedure, equipment, drug, device or supply which can be safely provided to the Covered Member and accomplishes the desired end result in the most economical manner.

H "PARTICIPATING PROVIDERS " shall mean any Provider which is licensed to provide health care services, and which is owned or employed by AURORA and is able to provide Covered Services under the terms of this Agreement, including all Exhibits, Attachments and Appendices attached hereto.

I. "PHYSICIAN" shall mean a person who received a degree in medicine and is a medical doctor or surgeon licensed by the state in which he/she is located and provides services while he/she is acting within the lawful scope of his/her license. Where reference is made in this Agreement to "Physician", the reference shall be deemed to include a sole practitioner, a service corporation or association or a partnership.

J. "PLAN" shall include individual health insurance policies, group health insurance certificates issued by WPS and self-insured plans administered by WPS.

- 16 -

K. **"PREFERRED HOSPITAL"** shall mean any Hospital which contracts with WPS to provide services to Covered Members.

L. **"PREFERRED PROVIDER"** shall mean a Physician, Preferred Hospital, or any other duly licensed or certified allied health professional participating in a Plan and under contract to provide professional services to Covered Members.

M. **"PROVIDER"** shall mean any person, institution or other entity licensed by the state in which he/she or it is located to provide covered health care services to Covered Members, within the lawful scope of his/her or its license. Where reference is made in this Agreement to "Provider", the reference shall be deemed to include any duly licensed or certified allied health professional employed by or practicing at a clinic or hospital and participating in a Plan and under contract to provide professional services to Covered Members.

- 17 -

| PROVIDER | TIN | Broad & Limited Network PPO | Exclusive Network PPO | Indemnity |
|---|---|---|---|---|
| **HOSPITALS** | | | | |
| Hartford Memorial Hospital | 39-1150165 | 85% | N/A | 99% |
| Lakeland Medical Center | 39-0806347 | 85% | N/A | 99% |
| Memorial Hospital Burlington | 39-0806347 | 85% | N/A | 99% |
| Milwaukee Psychiatric Hospital | 39-0872192 | 85% | N/A | 99% |
| Sheboygan Memorial Medical Center | 39-0930748 | 85% | 75% | 99% |
| Sinai Samaritan Medical Center | 39-1597102 | 85% | N/A | 99% |
| St. Luke's Medical Center | 39-0806181 | 85% | N/A | 99% |
| St. Luke's South Shore | 39-0806181 | 85% | N/A | 99% |
| Aurora Medical Center- Manitowoc County | 39-1211629 | 85% | 80% | 99% |
| Valley View Medical Center | 39-0930748 | 85% | 75% | 99% |
| Aurora Medical Center - Kenosha | 39-0806347 | 85% | 80% | 99% |
| West Allis Memorial Hospital | 39-1022464 | 85% | N/A | 99% |
| Aurora BayCare Medical Center - Green Bay | 39-1947472 | 85% | 80% | 99% |

| SURGERY CENTERS | | | | |
|---|---|---|---|---|
| Aurora Medical Group, Inc. Waukesha, Oshkosh, Racine & Fond du lac Surgery Centers | 39-1678306 | 85% | N/A | 99% |
| BayCare Aurora , LLC - Surgery Centers East & West | 39-1947472 | 85% | N/A | 99% |

| PHYSICIANS | | | | |
|---|---|---|---|---|
| Aurora Medical Group, Inc (Metro, South, Central (non-Sheboygan)) | 39-1678306 | 89% | N/A | 99% |
| Aurora Medical Group, Inc (Sheboygan) | 39-1678306 | 89% | 75% | 99% |
| Aurora Medical Group, Inc (North) | 39-1678306 | 89% | 80% | 99% |
| Sinai Samaritan Medical Center | 39-1597102 | 89% | N/A | 99% |
| Memorial Hospital Burlington | 39-0806347 | 89% | N/A | 99% |
| West Allis Memorial Hospital | 39-1022464 | 89% | N/A. | 99% |
| St. Luke's Medical Center | 39-0806181 | 89% | N/A | 99% |
| Lakeland Medical Center | 39-0806347 | 89% | N/A | 99% |
| Hartford Memorial Hospital | 39-1150165 | 89% | N/A | 99% |
| Milwaukee Psychiatric Hospital | 39-0872192 | 89% | N/A | 99% |
| Lakeshore Medical Clinic, Ltd. | 39-1696443 | 89% | N/A | 99% |
| University of Wisconsin Medical Faculty-Milwaukee | 39-1824445 | 89% | N/A | 99% |
| BayCare Clinic, LLP | 39-1943214 | 89% | 80% | 99% |
| Plymouth Family Practice | 39-1979612 | 89% | 75% | 99% |

| BEHAVIORAL HEALTH | | | | |
|---|---|---|---|---|
| Family Service of Milwaukee | 39-0806174 | 89% | N/A | 99% |

| DME | | | | |
|---|---|---|---|---|
| Aurora Home Medical Services (DME) | 39-1595302 | 95% | 90% | 99% |

| HOME HEALTH & HOSPICE | | | | |
|---|---|---|---|---|
| Visiting Nurse Association of Wisconsin | 39-0806180 | 95% | 90% | 99% |

| INFUSION & RESPIRATORY THERAPY | | | | |
|---|---|---|---|---|
| Aurora Home Medical | 39-1595302 | 95% | 90% | 99% |

**REFERENCE LAB**

| PROVIDER | TIN | Broad & Limited Network PPO | Exclusive Network PPO | Indemnity |
|---|---|---|---|---|
| ACL, Inc. | 39-1480198 | 89% | 89% | 99% |

**DIAGNOSTICS**

| | | | | |
|---|---|---|---|---|
| Aurora Health Centers | 39-1678306 | 89% | 89% | 99% |

**THERAPY**

All Hospital Sites included under the Facility
All Physician Sites included under the Physician

**SNF**

| | | | | |
|---|---|---|---|---|
| Friendship Village | 39-1136738 | 95% | 95% | 99% |
| Hamilton Home | 39-1211629 | 95% | 95% | 99% |
| Kewaunee Health Center | 39-1211629 | 95% | 95% | 99% |
| Valley Manor | 39-0930748 | 95% | 95% | 99%. |

**Aurora Health Care**

3000 West Montana Street
P.O. Box 343910
Milwaukee, WI 53234-3910

T (414) 647-3000
www.AuroraHealthCare.org

July 18, 2005

William T. Bathke
Executive Vice President and
    Chief Operating Officer
Wisconsin Physicians Service
    Insurance Corporation
1717 West Broadway
P.O. Box 8190
Madison, WI 53708-8190

Dear Mr. Bathke,

We received your letter dated July 8, 2005 and are responding to it.

We remain confused by your position. When you came to Milwaukee to meet with us you initially said that you were there to discuss potential resolutions. When we asked you at the meeting for a proposal or suggestion, you changed your position to indicate that you were just there to gather facts, but that you would respond with a proposal after considering the facts.

Now we receive your July 8, 2005 letter, in which you do not make any proposal but merely deny there is any issue from WPS' standpoint. That is not a way to find a solution.

As we consistently have told you, we believe our agreement gives all Aurora providers the right to participate as preferred providers of all "WPS" plans. "WPS" is defined to include all of its subsidiaries. There is no question and your letter acknowledges that you are selling and operating WPS plans in which the Aurora providers are not included. That is a breach. For example, while you bought the assets and certain liabilities of Prevea, you operate it as a subsidiary.

As we indicated, we have been prepared to discuss potential solutions and have hoped that you would present something more than a denial of any problem. If you are prepared to make a proposed resolution, we would agree to further discussions and mediation. A flat denial is not good faith negotiation and suggests little would be served by further discussion.

You are correct, we will not agree to binding arbitration, as we feel arbitration is not appropriate for matters of contract interpretation.

EXHIBIT
B

Your uncompromising position and continued operating and marketing of plans without Aurora providers in violation of our agreement, leaves us little choice but to consider other options.

Sincerely,

AURORA HEALTH CARE

Donald J. Nestor

Donald J. Nestor.
Executive Vice President & CFO.

**2**