| | |
|---|---|
| URIEL PHARMACY HEALTH AND WELFARE PLAN; URIEL PHARMACY, INC.; HOMETOWN PHARMACY; and HOMETOWN PHARMACY HEALTH AND WELFARE BENEFITS PLAN, on their own behalf and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>  vs.<br><br>ADVOCATE AURORA HEALTH, INC. and AURORA HEALTH CARE, INC.,<br><br>       Defendants. | Case No. 2:22-cv-00610 |

## DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

Date: February 10, 2023

Daniel E. Conley
Nathan J. Oesch
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
Telephone: 414.277.5000
Fax: 414.271.3552
daniel.conley@quarles.com
nathan.oesch@quarles.com

Matthew Splitek
QUARLES & BRADY LLP
33 E Main St, Suite 900
Madison, WI 53703
Telephone: 608.251.5000
Fax: 608.251.9166
matthew.splitek@quarles.com

Jane E. Willis
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: 617.951.7000
Fax: 617.951.7050
jane.willis@ropesgray.com

Anne Johnson Palmer
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111
Telephone: 415.315.6300
Fax: 415.315.6350
anne.johnsonpalmer@ropesgray.com

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.     PLAINTIFFS LACK STANDING BECAUSE THEY DO NOT ALLEGE ANY CAUSAL CONNECTION BETWEEN THE CHALLENGED CONTRACTUAL PROVISIONS AND ANY ANTITRUST HARM ................... 2

    II.    COUNT I FAILS TO PLAUSIBLY ALLEGE THAT AAH'S CONTRACTS WITH NETWORK VENDORS VIOLATE SECTION 1 OF THE SHERMAN ACT, AS A TYING SCHEME OR OTHERWISE ............. 4

         A.     Plaintiffs Do Not Allege Any Coercion ........................................................ 4

         B.     Plaintiffs Do Not Sufficiently Allege Substantial Foreclosure .................. 6

    III.   COUNT II FAILS TO PLAUSIBLY ALLEGE ANY VIOLATION OF SECTION 2 OF THE SHERMAN ACT ................................................................... 9

    IV.   COUNT III DOES NOT PLAUSIBLY ALLEGE ANY CLAIM FOR ATTEMPTED MONOPOLIZATION UNDER SECTION 2 OF THE SHERMAN ACT ..................................................................................................... 11

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ..................................................................................................... 11

*Chi. Studio Rental Inc. v. Ill. Dep't of Com. & Econ. Opportunity*,
   No. 15 C 4099, 2017 WL 1208424 (N.D. Ill. Apr. 3, 2017), *aff'd sub nom.*
   *Chi. Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d 971 (7th Cir. 2019) ........................ 13

*Davis v. HCA Healthcare, Inc.*,
   No. 21-cv-3276, 2022 WL 4354142 (N.C. Super. Ct. Sept. 19, 2022) ............................. 9, 10

*E & L Consulting, Ltd. v. Doman Indus.*,
   472 F.3d 23 (2d Cir. 2006) ................................................................................................. 6

*Fisher v. Aurora Health Care, Inc.*,
   558 F. App'x 653 (7th Cir. 2014) ....................................................................................... 4

*FTC v. Sanford Health*,
   No. 1:17-cv-133, 2017 WL 10810016 (D.N.D. Dec. 15, 2017) ........................................ 10

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*,
   998 F.2d 391 (7th Cir. 1993) .............................................................................................. 3

*Hennessy Indus. v. FMC Corp.*,
   779 F.2d 402 (7th Cir. 1985) ............................................................................................ 13

*Ind. Grocery, Inc. v. Super Valu Stores, Inc.*,
   864 F.2d 1409 (7th Cir. 1989) ......................................................................................... 12

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984) ............................................................................................................... 7

*Marion HealthCare, LLC v. South Illinois Hospital Services*,
   41 F.4th 787 (7th Cir. 2022) ........................................................................................... 8, 9

*McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*,
   937 F.3d 1056 (7th Cir. 2019) ...................................................................................... 3, 11

*McWane, Inc. v. FTC*,
   783 F.3d 814 (11th Cir. 2015) ............................................................................................ 7

*Methodist Health Servs. Corp., v. OSF Healthcare Sys.*,
   No. 1:13–cv–01054–SLD, 2016 WL 5817176 (C.D. Ill. Sept. 30, 2016), *aff'd,*
   859 F.3d 408 (7th Cir. 2017) ........................................................................................... 8, 9

*Narayan Rao v. Abbott Lab'ys*,
  No. 12 C 8014, 2013 WL 1768697 (N.D. Ill. Apr. 24, 2013) ................................................... 12

*O'Neill v. Coca-Cola Co.*,
  669 F. Supp. 217 (N.D. Ill. 1987) ................................................................................................ 4

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018) ................................................................................................................. 7

*Reifert v. S. Cent. Wisconsin MLS Corp.*,
  450 F.3d 312 (7th Cir. 2006) .................................................................................................. 5, 7

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
  381 F.3d 717 (7th Cir. 2004) ...................................................................................................... 7

*Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*,
  28 F.3d 1379 (5th Cir. 1994) ...................................................................................................... 8

*Sheridan v. Marathon Petroleum Co.*,
  530 F.3d 590 (7th Cir. 2008) ...................................................................................................... 6

*Sidibe v. Sutter Health*,
  51 F. Supp. 3d 870 (N.D. Cal. 2014) ........................................................................................ 10

*Siva v. Am. Bd. of Radiology*,
  38 F.4th 569 (7th Cir. 2022) ....................................................................................................... 5

*Steward Health Care Sys., LLC v. Blue Cross & Blue Shield*,
  997 F. Supp. 2d. 142 (D.R.I. 2014) .......................................................................................... 10

*Yeftich v. Navistar, Inc.*,
  722 F.3d 911 (7th Cir. 2013) ...................................................................................................... 6

**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust
  Principles and Their Applications, ¶ 1700i (5th ed. 2022) ......................................................... 5

# PRELIMINARY STATEMENT

Plaintiffs' Opposition ("Opposition" or "Opp.," ECF No. 27) fails to address the key deficiencies of their Amended Complaint.[1] All of Plaintiffs' claims should be dismissed.

***First***, Plaintiffs overlook a core aspect of AAH's motion. AAH challenges not just the sufficiency of Plaintiffs' allegations about the provisions contained in AAH's agreements with Network Vendors, but also the Amended Complaint's failure to allege any causal connection between those provisions and any claimed antitrust harm. Plaintiffs do not allege how AAH's agreements with Plaintiffs' own Network Vendors—Cigna and Trilogy—harmed them in any respect. The Opposition repeatedly insists that Plaintiffs paid AAH allegedly high prices for healthcare services, but Plaintiffs nowhere explain *how* those supposedly high prices actually resulted from any harm to the competitive process caused by AAH's agreements with Cigna or Trilogy. The Amended Complaint should therefore be dismissed because Plaintiffs lack antitrust standing.

***Second***, the Opposition attempts to recast the Amended Complaint as asserting a "textbook" tying scheme, despite the fact that Plaintiffs referenced tying only in passing in the Amended Complaint. Plaintiffs fail to allege the most basic elements of a tying claim. They do not allege that AAH coerced Network Vendors to accept the challenged provisions. Plaintiffs also wrongly assert that their adoption of a tying theory relieves them of any need to plead foreclosure. Not so. It is black letter law that tying is unlawful only if it results in foreclosure of a substantial volume of commerce.

---

[1] Capitalized terms are defined in AAH's opening brief ("Opening Brief" or "Op. Br.," ECF No. 25), all internal citations and quotations have been omitted, and all emphasis has been added unless otherwise noted.

1

***Third***, Plaintiffs' monopolization claim fails for the same reasons as their purported tying claim, and also because Plaintiffs fail to allege plausible geographic markets where AAH has monopoly power. Plaintiffs rely entirely on Medicare data in their attempt to allege AAH's market share, despite bringing claims that expressly exclude Medicare services from the alleged markets. The Court should reject their attempt to use Medicare data as a proxy for private insurance markets.

***Finally***, the Amended Complaint comes nowhere close to pleading a claim for attempted monopolization. Plaintiffs lack standing to assert this claim due to their failure to allege any participation in the alleged relevant market, the Oconomowoc HSA. Plaintiffs also fail to allege the requisite elements for attempted monopolization. In particular, Plaintiffs fail to plausibly allege that AAH has a "dangerous probability" of obtaining monopoly power in Oconomowoc. The data Plaintiffs selectively bring forward to suggest that the other provider in the region is on the brink of closing actually suggests that the provider recently saw substantial ***increases*** in its inpatient volume.

Plaintiffs have now had two opportunities to plausibly allege their claims but have proven unable do so. The Amended Complaint should be dismissed in its entirety and with prejudice.

## ARGUMENT

**I.     PLAINTIFFS LACK STANDING BECAUSE THEY DO NOT ALLEGE ANY CAUSAL CONNECTION BETWEEN THE CHALLENGED CONTRACTUAL PROVISIONS AND ANY ANTITRUST HARM**

AAH does not contend, as Plaintiffs would have it (Opp. at 9), that the Amended Complaint fails to allege the ***existence*** of any contracts containing the challenged provisions. Rather, as set forth in AAH's Opening Brief, Plaintiffs' allegations are deficient because they fail to sufficiently plead how any such provisions are anticompetitive or the causal connection between any such provisions and any antitrust harm. Op. Br. at 10–13.

The Opposition does not cure these deficiencies, especially Plaintiffs' failure to allege *how* any of AAH's contract provisions with Plaintiffs' own Network Vendors resulted in any harm to Plaintiffs. The Amended Complaint should be dismissed on this ground because Plaintiffs lack antitrust standing. *See McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*, 937 F.3d 1056, 1065 (7th Cir. 2019) (antitrust standing requires, among other things, facts demonstrating a sufficient connection between the alleged conduct and Plaintiffs' purported injury, as well as a connection between that purported injury and the alleged antitrust harm). Plaintiffs did not even have contracts with Network Vendors until 2021. *See* AC ¶¶ 224, 229. Before that, Plaintiffs attempted to use reference-based pricing, a method for remitting payments to providers that is unrelated to any Network Vendor agreements. *See* AC ¶¶ 228–29.

When it comes to the actual focus of Plaintiffs' claims (the Network Vendor agreements), Plaintiffs do not address in any respect the actual content of AAH's agreements with Plaintiffs' own vendors, Cigna and Trilogy. *See* Op. Br. at 8.[2] Plaintiffs instead attach to their Opposition a contract between AAH and another Network Vendor, Wisconsin Physician Services ("WPS"), from 2001. AC ¶ 122; Opp. at 11. Plaintiffs do not plausibly allege that the 22-year-old WPS agreement—which was negotiated and executed well over a decade before the limitations period here—can be used as a proxy for AAH's other Network Vendor agreements. AC ¶¶ 224, 229.

Beyond that, Plaintiffs do not address how AAH's agreements with Cigna or Trilogy harmed them in any manner, let alone caused harm of the type that the antitrust laws are intended to prevent. *See Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir. 1993) ("direct link" required between the alleged violation and the claimed injury). The

---

[2] And contrary to what the Opposition contends in an attempt to turn the procedures for a motion to dismiss upside down (Opp. at 11), AAH is not required to put its Network Vendor agreements before the Court simply to demonstrate that the Amended Complaint fails to state a claim.

3

Opposition repeatedly claims that Plaintiffs paid high prices to AAH for healthcare services. What is missing from the Amended Complaint are any factual allegations connecting those allegedly high prices to some harm to the competitive process caused by Cigna's or Trilogy's agreements with AAH.[3] Indeed, the Amended Complaint says remarkably little about the Cigna and Trilogy agreements to begin with. Plaintiffs fail to plead antitrust standing as a result. *See Fisher v. Aurora Health Care, Inc.*, 558 F. App'x 653, 656 (7th Cir. 2014) (dismissing claim where "connection between [the] alleged injury and the alleged antitrust violation [was] tenuous at best"); *see also O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217, 224 (N.D. Ill. 1987) ("Pure speculation, or vaguely defined links are not sufficient to establish a chain of causation that demonstrates a threat of antitrust injury.").

## II. COUNT I FAILS TO PLAUSIBLY ALLEGE THAT AAH'S CONTRACTS WITH NETWORK VENDORS VIOLATE SECTION 1 OF THE SHERMAN ACT, AS A TYING SCHEME OR OTHERWISE

The Opposition declares that Plaintiffs' Section 1 claim is a "textbook" case of tying, and that the actual focus of the Amended Complaint is a theory that AAH uses its "must-have" facilities in certain less populous regions to force Network Vendors to also include in their networks facilities in areas where AAH faces more competition, such as Milwaukee and Green Bay. Opp. at 1, 8–9. The Opposition's attempt to recharacterize Plaintiffs' Section 1 claim does not cure their deficient allegations, which do not state a claim regardless of which label Plaintiffs use.

### A. Plaintiffs Do Not Allege Any Coercion

To allege tying, a plaintiff must plead: (1) a tying arrangement between two distinct products or services; (2) the defendant has sufficient economic power in the tying market to

---

[3] As addressed further below, *see infra* Section II.A, the same holds true as to Network Vendors beyond Cigna and Trilogy: the Amended Complaint does not allege any facts suggesting that the challenged contract provisions harmed competition and therefore resulted in higher prices.

4

appreciably restrain free competition in the market for the tied product; (3) a substantial volume of commerce is foreclosed because of the tie; (4) the defendant has some economic interest in the sales of the tied product; and (5) forcing or "coercion" by the defendant. *See Siva v. Am. Bd. of Radiology*, 38 F.4th 569, 573–74 (7th Cir. 2022); *Reifert v. S. Cent. Wisconsin MLS Corp.*, 450 F.3d 312, 316–17 (7th Cir. 2006). Here, the Amended Complaint fails to allege the most basic elements of tying, including coercion and foreclosure.

As an initial matter, the Amended Complaint does not allege that any patient's purchase of any health care service is conditioned upon the purchase of a "tied" health care service. But even assuming Plaintiffs' allegation—that a Network Vendor's decision to include one AAH hospital in its network is conditioned upon the Network Vendor including the other AAH hospitals in the network—constitutes a tie, the Amended Complaint fails to allege that AAH *coerced* Network Vendors into accepting any of the challenged provisions. Coercion, or "forcing" a customer to purchase two products, is the *sine qua non* of a tying arrangement. *See, e.g., Siva*, 38 F.4th at 573 ("A tie is illegal only when the seller exploit[s] . . . its control over the tying product to force the buyer into the purchase of a tied product . . . .").[4]

On this critical element, Plaintiffs offer little more than conclusory assertions, for example, that "AAH forces the Network Vendor to also include facilities and outpatient providers that the vendor does not want in its network." AC ¶ 100. Plaintiffs allege no facts plausibly supporting this assertion. Here too, Plaintiffs rely primarily on statements that WPS made in a litigation fifteen years ago concerning a contract it negotiated in 2001. AC ¶¶ 105, 109 ("According to WPS, AAH forces all or nearly all insurance companies and Network Vendors to agree to the same

---

[4] *Accord* Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Applications, ¶ 1700i (5th ed. 2022) ("no tie exists unless the customer was 'coerced' into taking both products").

all-or-nothing terms . . . ."). Parroting dated, isolated assertions is insufficient to plausibly allege that AAH has forced Network Vendors, against their will, to include all facilities in their networks during the relevant period. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 917 (7th Cir. 2013) (rejecting information-and-belief pleading where "factual detail in support of [an] otherwise conclusory allegation [was] entirely missing"). Plaintiffs also reference statements attributed to an unidentified consultant that AAH drew a hard line in its negotiations and two media reports (from 2000 and 2006), which the Opposition claims reflect that AAH "insists on including the challenged provisions in its contracts." Opp. at 10 (citing AC ¶¶ 107, 171). None of these vague allegations goes as far as to plausibly suggest that AAH forced any of these provisions on any Network Vendor over its objection.

Plaintiffs noticeably do not allege that there are any Network Vendors that actually sought to include only certain AAH facilities in their plans (or to include all AAH facilities in only some of their plans), but were forced to include all AAH facilities in all of their plans. This failure is grounds for dismissal. *See E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 32 (2d Cir. 2006) (affirming dismissal of tying claim for failure to plead coercion). The Seventh Circuit has rejected substantially stronger and more detailed allegations at the pleading stage than what Plaintiffs offer here. *See Sheridan v. Marathon Petroleum Co. LLC*, 530 F.3d 590, 596 (7th Cir. 2008) (provision requiring franchisees to accept use of defendant's credit cards did not amount to coercion even though it was "a powerful incentive to route *all* [of the franchisees'] credit card transactions" through defendant's system) (emphasis in original).

B. **Plaintiffs Do Not Sufficiently Allege Substantial Foreclosure**

Regardless of whether Plaintiffs characterize their Amended Complaint as involving tying or another theory, the Section 1 claim also fails because Plaintiffs do not supply any causal link
6

between the alleged restraints and the harm Plaintiffs claim, purportedly high prices.[5] In this regard, Plaintiffs do not plead any facts suggesting that any of AAH's rivals have been foreclosed from competing or that their inability to compete has resulted in AAH's higher prices.

Plaintiffs attempt to distance themselves from any obligation to allege substantial foreclosure by claiming that it is a "special rule" that only applies to exclusive dealing cases. Opp. at 18. To the contrary, both the Supreme Court and the Seventh Circuit have made clear that Plaintiffs' now-professed theory—a tying arrangement—"violates antitrust law only if a substantial volume of commerce is foreclosed because of the tie." *Reifert*, 450 F.3d at 317; *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 16 (1984) ("[T]here can be no adverse impact on competition [where] no portion of the market which would otherwise have been available to other sellers has been foreclosed."). In addition, exclusive contracts are only held to violate the antitrust laws where they foreclose competition. *See Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 737–38 (7th Cir. 2004). Where, as here, the alleged vertical restraints are *less* restrictive than outright exclusive dealing, the necessity of plausibly alleging substantial foreclosure should be higher, not lower.[6]

---

[5] Plaintiffs inaccurately claim that AAH has conceded their allegations regarding AAH's purportedly "high prices" and "low quality," but AAH has done no such thing. Opp. at 16. AAH takes Plaintiffs' factual allegations as true for purposes of this motion (as it must), but the Amended Complaint's allegations concerning prices and quality are nonetheless deficient for the reasons stated in AAH's Opening Brief. *See* Op. Br. at 19 n.16.

[6] Plaintiffs' authorities are not to the contrary. *See* Opp. at 18 (citing *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018) and *McWane, Inc. v. FTC*, 783 F.3d 814, 835 (11th Cir. 2015)). *McWane* recognized that foreclosure of a substantial percentage of the relevant market was an initial "threshold" to establish antitrust liability. 783 F.3d at 837. *Ohio v. American Express* explains that in a rule of reason case, plaintiffs must demonstrate that "the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." 138 S. Ct. at 2284. That is exactly what Plaintiffs here fail to do: they do not plausibly allege that AAH's vertical restraints **cause** the anticompetitive effects of higher prices or reduced output, because they do not plausibly allege the **mechanism** of such effects, *e.g.*, the foreclosure of rivals from a substantial share of the market.

Although the Amended Complaint makes passing, conclusory references to "substantial foreclosure," Plaintiffs say nothing about which markets were foreclosed, to whom, or by how much. As AAH underscored in its Opening Brief (Op. Br. at 14–15), notably absent from the Amended Complaint are any factual allegations addressing what impact the challenged contractual provisions have on the marketplace—most importantly, *how* any rivals have been affected by the alleged contractual provisions. Plaintiffs do not allege that rival providers are excluded from payor networks. In short, Plaintiffs have failed to allege facts showing *any* foreclosure, let alone substantial foreclosure. *See Methodist Health Servs. Corp., v. OSF Healthcare Sys.*, No. 1:13–cv–01054–SLD, 2016 WL 5817176, at *11 (C.D. Ill. Sept. 30, 2016) (if a provider can continue competing for a group of patients, those patients "[are] not foreclosed to [that provider], no matter how foreclosure is defined"), *aff'd,* 859 F.3d 408 (7th Cir. 2017).

Attempting to escape this conclusion, Plaintiffs cite the D.C. Circuit's opinion in *U.S. v. Microsoft Corp.* to argue that substantial foreclosure occurs even if competitors are not "entirely excluded" from any segment of the market. Opp. at 19 (citing 253 F.3d 34, 70 (D.C. Cir. 2001)). But Plaintiffs do not allege that rival providers have been unable to obtain sufficient scale or volume to compete in the market. *See Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F.3d 1379, 1385 (5th Cir. 1994) ("Speculation about anticompetitive effects is not enough. [Plaintiff] ha[s] to show that the tie 'as it actually operate[d] in the market' harmed competition.").

This defect is fatal, particularly where the Seventh Circuit has recognized that preferred provider agreements do not violate antitrust law even where such contracts—unlike the alleged contracts here—actually disfavor rivals. For instance, the court in *Marion HealthCare, LLC v. South Illinois Hospital Services* rejected claims that an area's largest hospital system and its largest health insurer had violated antitrust law by entering into contracts designating the defendant but

8

not the plaintiff as a preferred provider. *See* 41 F.4th 787, 791 (7th Cir. 2022); *see also Methodist Health*, 2016 WL 5817176, at *10 ("[Plaintiff-hospital] seems to argue that if a contract excludes [it] from a provider network then it has been foreclosed from competing for all the patients covered by that plan, full stop. The undisputed facts of this case suggest that analysis is not correct."). Here, where the alleged contract provisions do not prevent Network Vendors from including AAH's competitors in-network, Plaintiffs' allegation of foreclosure is even weaker than the claims rejected in both *Marion HealthCare* and *Methodist Health Services*. The Amended Complaint should be dismissed because Plaintiffs do not allege any means by which the contract provisions they challenge resulted in anticompetitive effects, including higher prices.

### III. COUNT II FAILS TO PLAUSIBLY ALLEGE ANY VIOLATION OF SECTION 2 OF THE SHERMAN ACT

Plaintiffs' monopolization claim in Count II relies on the same failed vertical allegations as Count I and thus fails to state a viable antitrust claim for the same reasons just addressed. In addition, Plaintiffs fail to adequately allege relevant geographic markets where AAH has monopoly power, which provides an independent basis to dismiss the monopolization claim. Specifically, Plaintiffs rely on Medicare data to allege market share percentages, even though the Amended Complaint expressly excludes Medicare services from their alleged markets.[7]

Plaintiffs cannot use Medicare data as a proxy in this manner. In *Davis v. HCA Healthcare, Inc.*, the court dismissed the plaintiffs' monopolization claim because they relied "largely, if not entirely, on **Medicare** data" to allege the relevant geographic markets even though their claims were limited to the private insurance market. *See Davis v. HCA Healthcare, Inc.*, No. 21-cv-3276, 2022 WL 4354142, ¶¶ 87–92 (N.C. Super. Ct. Sept. 19, 2022) (emphasis in original). The *Davis*

---

[7] Further, for the reasons explained in AAH's Opening Brief (Op. Br. at 17), Dartmouth HSAs are not plausible geographic markets.

9

court rejected the plaintiffs' attempt to resort to government payor data despite allegations that the defendant-hospital system's market share in one county exceeded 90% of government-insured patients—higher than AAH's share of government-insured patients in any market alleged in the Amended Complaint. *See id.* ¶¶ 12, 87–92 ("On a number of occasions, courts have acknowledged the fundamental differences between government payers and private insurers in antitrust cases and refused to consider Medicare or Medicaid data offered in support of such claims.").[8]

Though Plaintiffs insist that Medicare market shares are widely accepted proxies for commercial market shares (Opp. at 25), they fail to cite a single case where a plaintiff has successfully pled geographic markets for private insurance by relying entirely on Medicare data. Plaintiffs point to *Sidibe v. Sutter Health* (Opp. at 23), but the Ninth Circuit in *Sidibe* did not consider whether the plaintiff's use of Medicare data was improper because it related only to government payors as opposed to private payors, *see* 667 F. App'x 641, 643 (9th Cir. 2016), and the plaintiff relied on other geographic data beyond the Dartmouth HSAs that Plaintiffs invoke here. *See Sidibe v. Sutter Health*, 51 F. Supp. 3d 870, 878–79 (N.D. Cal. 2014).

Because Plaintiffs fail to allege relevant geographic markets, their monopolization claim must be dismissed.[9]

---

[8] *See also FTC v. Sanford Health*, No. 1:17-cv-133, 2017 WL 10810016, at *10 (D.N.D. Dec. 15, 2017) ("This court finds it appropriate to consider a relevant market limited to a distinct category of customers—commercial health insurance plans."); *Steward Health Care Sys., LLC v. Blue Cross & Blue Shield*, 997 F. Supp. 2d. 142, 162 (D.R.I. 2014) ("Viewing the product market from the perspective of an aggrieved private purchaser of hospital services, then, it is appropriate to exclude Medicare and Medicaid purchases because the private purchaser was never competing to purchase those services in the first place.").

[9] Plaintiffs also argue that the claimed existence of the allegedly unlawful provisions in AAH's contracts with most Network Vendors is "direct evidence" of AAH's market power. Opp. at 26-27. But pleading "direct evidence" only suffices in cases (unlike here) involving horizontal conspiracies, as demonstrated by the very decisions Plaintiffs themselves rely upon. *See* Opp. at 26–27 (citing *Republic Tobacco*, 381 F.3d at 737; *Toys "R" Us v. FTC*, 221 F.3d 928, 937 (7th Cir. 2000); *United States v. Visa U.S.A., Inc.*, 344 F.3d 229, 240 (2d Cir. 2003)).

## IV. COUNT III DOES NOT PLAUSIBLY ALLEGE ANY CLAIM FOR ATTEMPTED MONOPOLIZATION UNDER SECTION 2 OF THE SHERMAN ACT

Plaintiffs' claim for attempted monopolization fails for several reasons. ***First***, the Opposition cannot avoid Plaintiffs' lack of standing due to their failure to allege any participation in the relevant market—specifically, the Oconomowoc HSA. Plaintiffs point to their allegation that they have paid AAH's purportedly supracompetitive prices "at locations throughout Wisconsin." Opp. at 28–29 (quoting AC ¶ 210). But the surrounding paragraphs of the Amended Complaint make clear that neither Plaintiff participated in the Oconomowoc HSA. Indeed, for every other region Plaintiffs identify in the Amended Complaint, they allege whether Plaintiff Hometown, Plaintiff Uriel, or both paid for AAH's services within that region. *See* AC Section VIII.D, ¶¶ 211–213, 215. The only region where such allegations are absent is the Oconomowoc HSA. *Id.* ¶ 214. That was not an oversight, and Plaintiffs cannot rely on the vague, catchall assertion that they purchase services "throughout Wisconsin" to demonstrate standing to bring an attempted monopolization claim for conduct that occurred specifically in Oconomowoc. *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 539 (1983) (plaintiffs lack antitrust standing unless they are consumers or competitors in the relevant market).

Plaintiffs also argue that they do not need to demonstrate that they participated in the Oconomowoc HSA because, were AAH to succeed in monopolizing that alleged market, it would use its market power to raise prices in other markets where Plaintiffs do pay for services. Opp. at 29. Plaintiffs cite to no authority for this proposition and for good reason—such a tenuous connection to a market in which Plaintiffs do not participate is insufficient to confer standing. *See McGarry*, 937 F.3d at 1065 (applying presumption that "competitors and consumers in the relevant market are the only parties who suffer antitrust injuries").

***Second***, Plaintiffs fail to allege the elements of a claim for attempted monopolization. *See* Op. Br. at 22–23. The Opposition contends that Plaintiffs' attempted monopolization claim is not a challenge to AAH's opening of a hospital in that region in 2010—an act well beyond the statute of limitations that is hardly anticompetitive, as AAH underscored in its Opening Brief (Op. Br. at 22)—but to the same alleged vertical restraints elsewhere challenged in the Amended Complaint. Opp. at 29. Plaintiffs' allegations therefore fail for the same reasons addressed above, s*ee* Sections II–III, *supra* at 4–10. But importantly, Plaintiffs also fail to plausibly allege that AAH has a "dangerous probability" of obtaining monopoly power in Oconomowoc, which is a required element of an attempted monopolization claim. *See Ind. Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413 (7th Cir. 1989). Plaintiffs' conclusory assertion (Opp. at 29) that for-profit Oconomowoc Memorial—the only other hospital in the region—is on "the brink of financial ruin" is not only implausible (*see* Op. Br. at 23), but it is based on cherry-picked data. In this regard, Plaintiffs' allegation that 2021 saw a continued decline in Oconomowoc Memorial's inpatient visits (Opp. at 29, citing AC ¶ 167) is contradicted by the very source referenced by Plaintiffs, which indicates that inpatient days of treatment at Oconomowoc Memorial actually ***increased by 9.3%*** from 2020 to 2021.[10] Accordingly, the Court should not credit Plaintiffs' conclusory

---

[10] *See* Wis. Hosp. Ass'n, December 2021 Hospital Utilization Report, Table 1, *available at* https://www.wha.org/WisconsinHospitalAssociation/media/WHACommon/Finance/XLS/HospitalUtilizationReport_December2021.xls (first tab reflecting Oconomowoc Memorial's 9.3% increase in inpatient days of treatment and 1.3% increase in inpatient visits year over year in 2021). The Court can consider this document because it is incorporated by reference in the Amended Complaint. AC ¶ 167; *see Narayan Rao v. Abbott Lab'ys*, No. 12 C 8014, 2013 WL 1768697, at *3–4 (N.D. Ill. Apr. 24, 2013) (considering document attached to motion to dismiss despite plaintiff's "failure to explicitly reference" document in the complaint).

assertions that AAH has a "dangerous probability" of obtaining monopoly power in Oconomowoc. *See Hennessy Indus. Inc. v. FMC Corp.*, 779 F.2d 402, 405 (7th Cir. 1985).[11]

## CONCLUSION

Plaintiffs have had ample opportunity to plausibly allege antitrust standing and to state a claim. Because Plaintiffs still have failed to plead any facts that would sustain their antitrust theories under Seventh Circuit or U.S. Supreme Court precedent, and because the Opposition does not seek leave to amend or identify additional facts Plaintiffs could allege if given the opportunity to do so, the Amended Complaint should be dismissed in its entirety with prejudice. *See Chi. Studio Rental Inc. v. Ill. Dep't of Com. & Econ. Opportunity*, No. 15 C 4099, 2017 WL 1208424, at *4 (N.D. Ill. Apr. 3, 2017), *aff'd sub nom. Chi. Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d 971 (7th Cir. 2019) (dismissing antitrust claims with prejudice for failure to allege antitrust injury where plaintiff was "given . . . an opportunity to cure this deficiency and it failed to do so").

Date: February 10, 2023

/s/ *Daniel Conley*
Daniel E. Conley
Nathan J. Oesch
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
Telephone: 414.277.5000
Fax: 414.271.3552
daniel.conley@quarles.com
nathan.oesch@quarles.com

Matthew Splitek, SBN 1045592
QUARLES & BRADY LLP
33 E Main St, Suite 900
Madison, WI 53703
Telephone: 608.251.5000
Fax: 608.251.9166
matthew.splitek@quarles.com

---

[11] Plaintiffs' state law claims also fail for the same reasons discussed above. *See* Op. Br. at 23–24.

13

Jane E. Willis
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: 617.951.7000
Fax: 617.951.7050
jane.willis@ropesgray.com

Anne Johnson Palmer
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111
Telephone: 415.315.6300
Fax: 415.315.6350
anne.johnsonpalmer@ropesgray.com