# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

URIEL PHARMACY HEALTH AND WELFARE PLAN,

*et al.*,

        Plaintiffs,

        v.

ADVOCATE AURORA HEALTH, INC.,

*et al.*

        Defendants.

Case No. 2:22-cv-610-LA

---

## AMENDED FRCP 26(f) JOINT DISCOVERY PLAN AND PRELIMINARY PRETRIAL CONFERENCE REPORT

---

On May 24 and July 21, 2023, the Parties participated in calls pursuant to Rule 26(f).[1]  On

June 30, 2023, the Court noticed a Rule 16(f) conference for August 16, 2023.  In anticipation of

that conference, and as required by the Local Rules, the Parties respectfully submit this Rule 26(f)

---

[1] Prior to the amendment of the Complaint which, among other things, added Plaintiff Hometown Pharmacy Health and Welfare Benefits Plan and Plaintiff Hometown Pharmacy (Doc. 21), the Uriel Plaintiffs sought to host a Rule 26(f) conference that Defendants objected to participating in while a motion to dismiss was pending and because the Court had not ordered a Rule 16 scheduling conference. (Doc. 20). The Uriel Plaintiffs nonetheless filed a Joint Discovery Plan and Preliminary Pretrial Report. (Doc. 19). The Court did not conduct a scheduling conference. On April 28, 2023, this Court denied Defendants' motion to dismiss the Amended Complaint. (Doc. 31).  Given the passage of time, the addition of new Parties, and the interest in economy of all Parties participating in a Rule 26(f) conference, all Parties have met and conferred and submit this report to supersede that filed at Doc. 19.

report.  Counsel participating in the conference, and their respective telephone numbers, are as follows:

- For Plaintiffs Hometown Pharmacy and Hometown Pharmacy Health and Welfare Benefits Plan and Uriel Pharmacy and Uriel Pharmacy Health and Welfare Plan:
  - ° Jamie Crooks, Fairmark Partners, LLP, (619) 507-4182
- For Defendants Aurora Health Care, Inc. and Advocate Aurora Health, Inc.:
  - ° Daniel Conley, Quarles & Brady LLP, (414) 277-5609
  - ° Anne Johnson Palmer, Ropes & Gray LLP, (415) 315-6337

## I.  Statements of the Case

### A. Plaintiffs' Preliminary Statement

Plaintiffs are Hometown Pharmacy and Hometown Pharmacy Health and Welfare Benefits Plan (collectively "Hometown") and Uriel Pharmacy and Uriel Pharmacy Health and Welfare Plan (collectively "Uriel"). They bring these claims individually, and on behalf of all others similarly situated, against Aurora Health Care, Inc. and Advocate Aurora Health, Inc. (collectively, "AAH"), the dominant hospital system in Wisconsin, on behalf of a class defined as:

> All businesses, unions, local governments, or other entities with self-funded health plans that are considered citizens of Illinois, Michigan, and/or Wisconsin for purposes of 28 U.S.C. §1332 and that, during the past six years, compensated AAH for general acute care hospital services or ancillary products at an AAH facility in the Relevant Geographic Markets during any period that AAH employed All-or-Nothing, All-Plans, Anti-Steering, Anti-Tiering, Non-Competes, Gag Clauses, and/or other vertical restraints in one or more agreements or negotiations with Network Vendors (the "Class Period").

This proposed class action asserts claims under the Sherman Act for unlawful restraints of trade and monopolization.  Specifically, the Amended Complaint alleges that Defendants have used their monopoly power to impose anticompetitive contractual provisions on two categories of counterparties: (1) Network Vendors (companies, usually insurance providers such as Cigna, who

2

negotiate with hospitals to develop insurance networks), and (2) independent physicians and physician groups.

With respect to Network Vendors, the Amended Complaint alleges that Defendants cause Network Vendors to accept in their contracts with Defendants ("Insurer/Provider Contracts") unreasonable vertical restraints that inhibit price and quality competition both between insurers and between Defendants and its competing hospitals. These restraints include (1) a requirement that any insurer wishing to include in its network any of Defendants' hospital facilities must also include all of Defendants' facilities, even if the insurer would otherwise choose not to include those facilities at the prices Defendants dictate ("all-or-nothing" provisions); (2) a requirement that if an insurer wants to include Defendants' facilities in any of their insurance plans, the insurer must include Defendants' facilities in all of the insurer's plans. (the "all plans" requirement); (3) provisions prohibiting insurers from taking any measure, including designing narrow networks or other innovative insurance products, to incentivize patients to receive care from Defendants' competitors (the "anti-steering provisions"); and (4) provisions that prohibit insurers from disclosing the prices and other terms contained in the Insurers/Provider contracts to third parties, including employers who purchase networks from the Network Vendors for their self-funded insurance plans (the "gag clauses"). The Amended Complaint alleges that Defendants cause all or nearly all Network Vendors to include these restrictions in all or nearly all of their Insurer/Provider Contracts. As alleged in the Amended Complaint, these restrictions substantially inhibit price and quality competition and lead directly to employers with self-funded insurance plans, including Plaintiffs and members of the proposed class, paying substantially more directly to Defendants for healthcare than they would pay absent these restraints.

3

With respect to independent physicians and physician groups, the Amended Complaint alleges that Defendants cause these individuals and entities to accept other types of contractual restraints, including: (1) non-compete provisions, prohibiting physicians and physician groups from competing with Defendants in certain geographies and practice areas; (2) referral restrictions, requiring physicians and physician groups to refer an inflated number of patients to Defendants in order to keep their admitting privileges at Defendants' hospitals; and (3) other restrictions that are designed to eliminate competition from independent physicians or physician groups, or inhibit them from working with or referring patients to Defendants' competitors. The Amended Complaint alleges that most physicians and physician groups would not accept these policies but for Defendants' insistence, and that these policies reduce access to more affordable, high-quality care to patients throughout Defendants' service area, thereby inflating the prices Defendants' can charge for medical services to Plaintiffs and the members of the proposed Class to supracompetitive levels.

Plaintiffs allege that through these and other anticompetitive tactics Defendants have engaged in unlawful restraints of trade, and they have unlawfully acquired, maintained, and enhanced monopoly power over a market spanning large portions of the region of Wisconsin, Michigan, and Illinois in which Defendants do business. The Amended Complaint therefore alleges that these practices violate the antitrust laws.

**B. Defendants' Preliminary Statement**

AAH is a non-profit health system that provides inpatient and outpatient health care services. AAH is a leader in clinical innovation, health outcomes, consumer experience and value-based care, and has a strong commitment to equitable care. AAH serves patients in Wisconsin, Illinois, and Michigan.

4

Plaintiffs are Wisconsin-based employers that offer self-insured health plans to their employees. Through this action, which Plaintiffs purport to bring on behalf of a class of allegedly similarly situated health plans, Plaintiffs challenge certain provisions in AAH's contracts with (1) Network Vendors and (2) independent physicians and physician groups.

AAH rejects Plaintiffs' contention that it has violated federal or state antitrust law. Plaintiffs' claims fail on the merits—and Plaintiffs will be unable to satisfy the requirements to certify any class—for a number of reasons, including:

1.      Plaintiffs will be unable to demonstrate by a preponderance of the evidence that each requirement for class certification under Fed. R. Civ. P. 23(a) and (b)(3) is satisfied;

2.      AAH does not possess market power under the antitrust laws in any relevant antitrust market;

3.      AAH has not entered into any contract whose likely effect is, or has been, to restrain trade or diminish competition in any relevant market—to the contrary, the challenged contracts yield substantial procompetitive benefits to health care providers, patients, and Network Vendors that significantly outweigh any purported anticompetitive effects;

4.      The challenged contract provisions did not foreclose rival health systems from competing for networks or for patients, nor did they prevent patients from freely choosing between health care providers;

5.      AAH has not coerced or otherwise forced Network Vendors to contract for all AAH facilities or to accept any of the other challenged contract provisions; and

6.      Plaintiffs have not suffered any antitrust injury and cannot meet the other requirements for antitrust standing.

## II.      Procedural History

On July 29, 2022, Defendants filed a motion to dismiss. (Doc. 16). On September 15, 2022, an Amended Complaint was filed which, among other things, added new Plaintiffs. (Doc.

21).  On October 31, 2022, Defendants moved to dismiss the Amended Complaint. (Doc. 24). After briefing, the Court denied the motion. (Doc. 31).  Defendants moved unopposed to enlarge the answer deadline, which was granted.  (Docs. 32, 33). Defendants filed their answer on June 12, 2023. (Doc. 33).

### III.    Discovery Plan, Limitations, and Agreements[2]

The Parties acknowledge this matter is more complex that ordinary commercial civil litigation and recognize a need for the scheduling order to accommodate this complexity. Specifically, the Parties anticipate that class certification proceedings will involve expert witnesses, and thus any scheduling order should enable the Parties time to conduct fact-based and opinion discovery relating to class certification, including time for the Court to resolve discovery disputes should they arise. Similarly, the Parties anticipate that Rule 56 motions and the trial of this matter will involve expert testimony supporting claims and defenses which will be based on a complex set of facts established by a substantial volume of business records and other documents and testimony.

Pursuant to Fed. R. Civ. P. 26(f)(3), the Parties propose the following discovery plan.

### A.  Initial Disclosures under Rule 26(a).

The Uriel Plaintiffs made their initial disclosures on August 9, 2022. The Hometown Plaintiffs made their initial disclosures on June 23, 2023.  Defendants made their initial disclosures on June 23, 2023.

### B.  Subjects on which Discovery May Be Needed

_____

[2] As used in this status report, any single plaintiff or defendant "family" counts as one "Party." Specifically, Hometown, Uriel, and AAH (as defined above) each constitute a single Party. Further, the word "side" refers to Plaintiffs collectively (as one "side") and Defendants collectively (as the other "side").

6

Discovery is required on all matters relating to Plaintiffs' class action allegations and all matters related to Plaintiffs' claims, damages, and Defendants' defenses to Plaintiffs' claims. The Parties acknowledge there could be third party discovery.

Plaintiffs anticipate that such discovery will include, but not be limited to, (1) Defendants' contracts with Network Vendors, Third Party Administrators, or other contracts containing the terms of Defendants' agreements with insurers, and (2) claims data, including the relevant costs of procedures, within Defendants' possession regarding medical services Defendants rendered to individuals insured by members of the putative class during the relevant period. Plaintiffs will seek this discovery, as well as other discovery, and pursuant to an appropriate protective order if agreed to by the Parties and/or approved by the Court.

AAH anticipates that discovery will include, but not be limited to, discovery concerning: (1) the selection and use of Network Vendors and Third Party Administrators by Plaintiffs and putative class members; (2) the facts and circumstances surrounding AAH's agreements with Network Vendors, Third Party Administrators and physicians; (3) claims data, including the data relating to the relevant costs and locations of health care services provided to employees of Plaintiffs and putative class members; and (3) third party payors' and providers' contracting with AAH and its competitors and the competitive landscape in which AAH has operated.

### C. Changes To Limitations on Discovery

The Parties acknowledge that given the complexity of this matter and its nature as a class action, there is a need to change discovery limitations as follows. Should the Parties later seek extensions of these limits, they may meet and confer and, if they cannot agree, the Parties may move the Court and seek appropriate relief based on a showing of good cause.

7

The Parties agree that a maximum of 30 requests for admission (served pursuant to Federal Rule of Civil Procedure 36) should be permitted per side, not including requests related to the authentication and/or admissibility of documents. The Parties agree that each side may propound up to 60 interrogatories under Fed. R. Civ. P. 33. The Parties further agree that no one Party shall be subject to more than 30 interrogatories.

Each side (Plaintiffs and Defendants) may take up to 336 hours of non-expert depositions, including non-Party depositions. Each Party shall be subject to no more than 119 hours of non-expert depositions. Absent agreement of the Parties or leave of Court, no Party witness, including experts, shall be deposed for more than one day of seven hours. The Parties also agree that each Party shall be subject to no more than 14 hours of deposition testimony under Fed. R. Civ. P. 30(b)(6).

During non-Party depositions noticed by only one side, the non-noticing side may cross-examine the witness for up to one hour at the conclusion of direct examination, and the side who conducted the direct examination shall be entitled to redirect examination of the witness for approximately the same amount of record time as the cross-examination regardless of whether the redirect examination extends past the seven hour limit contained in Fed. R. Civ. P. 30(d)(1). The time on the record that the non-noticing side spends deposing any non-Party witness will count toward that side's total limit on deposition time. If the total, on-record portion of the deposition goes beyond seven hours, the Parties may, but are not required to, have the remaining portion of the deposition take place on a second day.

If a non-Party deposition is noticed by both sides, then the deposition will be divided equally between the sides, and the record time that each side spends deposing the witness will count toward that side's total limit on deposition time. A party may reserve a certain amount of

the allotted, equally divided record time for redirect examination. Any time allotted to one side not used by that side in a non-Party deposition may not be used by the other side, unless the side that does not use all of its allotted time agrees to allow the other side to use the remaining time.

Excluded from these deposition limits are (i) post-fact-discovery depositions of witnesses who appear on an opposing Party's final pre-trial witness list and were not previously deposed; and (ii) post-fact-discovery depositions solely related to the authenticity and admissibility (other than relevance) of exhibits that have been disclosed on a Party's final pre-trial exhibit list and are subject to an objection from another Party on the basis of authenticity or admissibility. The Parties agree that such post-fact discovery depositions, including third-party depositions, shall be permitted absent good cause shown.

### D. Stipulations and Protocols Governing Discovery

The Parties anticipate submitting the following documents for Court approval.

The Parties contemplate that a protective order will be necessary in this matter to, among other things, protect the confidentiality of health information that may be the subject of discovery as well as the confidentiality of documents Defendants contend contain trade secrets or confidential business information. The Parties agree to submit a proposed stipulated order, or as needed competing aspects of one, governing confidentiality of documents, pursuant to Fed. R. Civ. P. 26.

The Parties agree that the production of privileged or work-product protected documents, ESI or information, whether inadvertent or otherwise, should not be considered a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. The Parties agree to submit a proposed stipulated order under Federal Rules of Evidence 502, or as

needed competing aspects of one, governing issues relating to privilege that provides the maximum protection allowed by Federal Rule of Evidence 502(d).

The Parties have met and conferred to discuss disclosure of, discovery of, and preservation of electronically stored information. The Parties will look to come to an agreement shortly on these issues and do not anticipate the need for court intervention at this time. The Parties agree that in response to Rule 34 requests for production of documents, they will meet and confer about methods to search ESI that is subject to production. The Parties agree to meet and confer regarding production formats and other matters regarding the production of ESI. The Parties agree to submit a proposed stipulated order, or as needed competing aspects of one, governing the protocol for discovery of ESI.

The Parties agree to submit a proposed stipulated order, or as needed competing aspects of one, governing discovery of expert-related materials.

### E. Schedule

The Parties request the Court enter a Rule 16(b) scheduling order upon receipt and review of this report or after a further consultation with the Parties at a scheduling conference. The Parties have agreed to a discovery schedule to be included in a scheduling order, and provide a proposed schedule below:

| Event | Date |
| --- | --- |
| Start of Fact Discovery | June 23, 2023 |
| Deadline to Amend Pleadings or Add Parties As of Right | October 2, 2023 |
| Substantial Completion of Production of Structured Data in Response to Requests for Production Served On or Before August 16, 2023[3] | November 17, 2023 |

[3] This "Substantial Completion" date assumes that Plaintiffs' requests for the production of structured data (which have not yet been served) will be sufficiently targeted so as to permit a

10

| Event | Date |
|---|---|
| Substantial Completion of Document Production in Response to Requests for Production Served On or Before August 16, 2023[4] | September 18, 2024 |
| Close of Fact Discovery[5] | February 19, 2025 |
| Deadline to Serve Opening Expert Reports on All Issues on Which a Party Has the Burden of Proof | March 19, 2025 |
| Deadline to Serve Opposing Expert Reports | May 14, 2025 |
| Deadline to Serve Rebuttal Expert Reports | July 9, 2025 |
| Expert Deposition Deadline[6] | August 13, 2025 |
| Deadline to File Motion to Certify Class and *Daubert* Motions Related to Class Certification | September 24, 2025 |
| Deadline to File Opposition to Motion to Certify Class and to *Daubert* Motions Related to Class Certification | November 19, 2025 |
| Deadline to File Reply in Support to *Daubert* Motions | January 14, 2026 |
| Deadline to File Reply in Support of Motion to Certify Class | January 21, 2026 |

---

response on the timing set forth above. If, upon receiving Plaintiffs' requests, Defendants determine that additional time may be required to substantially complete the data production, counsel for Defendants will promptly notify Plaintiffs' counsel and the Parties will negotiate in good faith regarding the timing of Defendants' data production.

[4] The Parties agree that, for productions made on or before January 15, 2024, a privilege log will be served no later than February 29, 2024 with respect to any documents withheld on the basis of attorney-client privilege or the work product protection from those productions. For productions made after February 29, 2024, the Parties agree that a privilege log will be served within 45 days of the date of any production from which documents are withheld.

[5] The Parties agree that Interrogatories and Requests for Admission, other than those Requests for Admission regarding the admissibility of evidence (including authenticity and foundation issues), must be served no later than 45 days before this deadline.

[6] The Parties agree that no expert may be deposed for more than seven hours on the record absent agreement of the Parties or leave of Court.

| Event | Date |
|---|---|
| Deadline to File Motion for Summary Judgment and *Daubert* Motion Related to Summary Judgment | April 15, 2026 |
| Deadline to File Opposition to Motion for Summary Judgment and Opposition to *Daubert* Motion Related to Summary Judgment | June 10, 2026 |
| Deadline to File Reply in Support of Motion for Summary Judgment and Reply in Support of *Daubert* Motion Related to Summary Judgment | July 22, 2026 |
| Motions In Limine | [to be set by Court in connection with trial date] |
| Pretrial Disclosures Rule 26(3)(A) | [to be set by Court in connection with trial date] |
| Pretrial Report, including all objections under Rule 26(3)(B) as well as all material required by Local Civ. R. 16(c) | [to be set by Court in connection with trial date] |
| Final Pretrial Conference | [to be set by Court in connection with trial date] |
| Trial | [to be set by Court] |

The Parties currently anticipate a trial will last a minimum of three weeks if the class is certified.

Respectfully submitted this 9th day of August, 2023.

/s/ Jamie Crooks
Jamie Crooks
Michael Lieberman
Alexander Rose
FAIRMARK PARTNERS, LLP
1825 7th Street, NW, #821
Washington, DC 20001
Tel: (619) 507-4182
jamie@fairmarklaw.com
michael@fairmarklaw.com
alexadner@lieberman.com

Joseph R. Saveri
JOSEPH SAVERI LAW FIRM
601 California Street, Suite 1000
San Francisco, CA 94108
Tel: (415) 500-6800
jsaveri@saverilawfirm.com

Eric L. Cramer
Daniel J. Walker
Berger Montague, P.C.
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bm.net
dwalker@bm.net

Timothy Hansen
James Cirincione
John McCauley
HANSEN REYNOLDS, LLC
301 N. Broadway, Suite 400
Milwaukee, WI 53202
Tel: (414) 455-7676
thansen@hansenreynolds.com
jcirincione@hansenreynolds.com
jmccauley@hansenreynolds.com

**Counsel for Hometown Pharmacy, Hometown Pharmacy Health and Welfare Benefits Plan, Uriel Pharmacy, Inc., Uriel Pharmacy Health and Welfare Plan**

/s/ Kevin M. St John
Kevin M. St. John
BELL GIFTOS ST. JOHN LLC
5325 Wall Street, Suite 2200
Madison, WI 53718
Tel: (608) 216-7990
kstjohn@bellgiftos.com

**Counsel for Uriel Pharmacy, Inc., Uriel Pharmacy Health and Welfare Plan**

13

/s/ Daniel E. Conley
Daniel E. Conley
Nathan J. Oesch
Kristin C. Foster
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
Tel: (414) 277-5000
daniel.conley@quarles.com
nathan.oesch@quarles.com
kristin.foster@quarles.com


Matthew Splitek, SBN 1045592
QUARLES & BRADY LLP
33 E Main St, Suite 900
Madison, WI 53703
Tel: (608) 251-5000
matthew.splitek@quarles.com


**Counsel for Defendants Advocate Aurora
Health, Inc. and Aurora Health Care, Inc.**

Jane E. Willis
ROPES & GRAY LLP
Prudential Tower,
800 Boylston Street Boston,
MA 02199-3600
Tel: (617) 951-7603
jane.willis@ropesgray.com

Anne Johnson Palmer
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6337
anne.johnsonpalmer@ropesgray.com

14