| | |
|---|---|
| URIEL PHARMACY HEALTH AND WELFARE BENEFIT PLAN et al., <br><br>             Plaintiffs, <br><br> vs. <br><br> ADVOCATE AURORA HEALTH, INC., and AURORA HEALTH CARE, INC., <br><br>             Defendants. | **[PROPOSED] STIPULATED ORDER REGARDING ESI PROTOCOL AND FORMAT OF PRODUCTIONS** <br><br> Case No. 22-cv-0610 |

To expedite the flow of discovery material and to facilitate the consistency in the format of the documents to be produced by the Parties in this case, Plaintiffs and Defendants (collectively, the "Parties"), by and through their respective counsel, hereby stipulate and agree to the terms of this Stipulated Order Regarding Protocol for the Production of Documents and Electronically Stored Information (the "ESI Protocol" or "Protocol").

## I.   SCOPE

A.   **General.** The procedures and protocols set forth in this ESI Protocol shall govern the production of relevant electronically stored information ("ESI") and hard copy documents in this matter, unless the Parties agree in writing to a change or they are changed by the Court. Nothing in this ESI Protocol shall be interpreted to require production of relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents.

B.   **Cooperation.** The Parties intend to cooperate on issues relating to discovery of ESI and other documents. In doing so, the Parties will adhere to guidelines as set forth by the Court.

The Parties recognize that collaborative conduct in the course of discovery may reduce litigation costs and delay, but they agree that neither collaboration nor cooperation entitles either Party to circumvent the federal rules pertaining to discovery, nor to seek information contrary to well-established case law, such as but not limited to that preventing discovery-on-discovery. The Parties will engage in informal discussions about the discovery of ESI throughout the litigation as necessary and appropriate. Counsel will be knowledgeable about their respective clients' information technology infrastructure, including how potentially relevant data is stored and retired. When appropriate, counsel may engage the assistance of someone knowledgeable about a Party's electronic systems as necessary. The Parties are obliged to be forthcoming and transparent in disclosing their use of mechanized tools to cull responsive data and are encouraged to bring technically adept personnel together to resolve e-discovery issues.

C. **Liaison.** The Parties (plaintiffs collectively and defendants collectively, to the extent possible) will each identify an e-discovery liaison who serves as counsel to a party and will be knowledgeable about and responsible for each party's ESI within seven (7) days after entry of this ESI Protocol Order. Counsel for the Plaintiffs collectively or the Defendants collectively are free to change their designated e-discovery liaison by providing written notice to the other Parties.

D. **Disputes.** The Parties shall meet and confer in good faith on any issue regarding ESI. No Party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected Parties to resolve any dispute regarding the interpretation or application of any provision of this Protocol or any proposed deviation from provisions of this Protocol. Any dispute(s) left unresolved after good faith meet and confer efforts may be submitted to the Court for resolution in accordance with Local Rule 37.

E.    **Confidentiality Order.** All productions are subject to the Stipulated Protective Order ("Protective Order") entered by the Court in this Action. For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as Confidential or Highly Confidential – Attorneys Eyes Only pursuant to the Protective Order.

## II.    DEFINITIONS

A.    **"Documents"** shall have the same definition as set forth in the Federal Rule of Civil Procedure 34(a).

B.    **"Electronically stored information"** or **"ESI"** as used herein has the same meaning as in the Federal Rules of Civil Procedure and other applicable law, including Rules 26 and 34(a) of the Federal Rules of Civil Procedure. Examples of ESI include:

1. Digital communications (e.g., e-mail, voice mail, text messages, instant messaging, and ephemeral messaging (e.g., SnapChat, etc.);

2. E-mail server stores (e.g., Microsoft Exchange .edb);

3. Word-processed documents (e.g., Word, files and drafts thereof);

4. Spreadsheets and tables (e.g., Excel worksheets);

5. Accounting application data (e.g., QuickBooks);

6. Image and facsimile files (e.g., .PDF, .TIFF, .JPG, .GIF);

7. Sound recordings (e.g., .WAV and .MP3);

8. Video and animation (e.g., .AVI and .MOV);

9. Databases (e.g., Access, Oracle, SAP, SQL data);

10. Contact and relationship management data (e.g., Outlook contacts);

11. Calendar and diary application data (e.g., Outlook calendar entries, blog entries);

12. Presentations (e.g., PowerPoint);

13. Network access and server activity logs;

14. Project management application data;

15. Computer aided design/drawing files; and

16. Cloud-based or other virtualized ESI, including applications, infrastructure and data.

C. **"Extracted Text"** means the text extracted from ESI, and includes all headers, footers, and document body information when reasonably available.

D. **"Hard Copy Document"** means a document collected from physical files and not from electronic sources.

E. **"Hit Report"** means a report with the number of documents identified (i.e., "hit") by each keyword search term or Boolean search string.

F. **"Load/Unitization file"** means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file will also contain data relevant to the individual Documents, including extracted and user-created Metadata.

G. **"Media"** means an object or device, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

H. **"Metadata"** means and refers to application and system information of a file that contains data about the file, as opposed to describing the contents of a file, as the term is described and used in "The Sedona Conference Glossary: E-Discovery and Digital Information Management," (5th ed. Feb. 2020).

I.     **"Parties"** means or refers collectively to the named Plaintiffs and Defendants in the above-captioned matter, as well as any later added plaintiffs and defendants. **"Party"** shall refer to a plaintiff or defendant, individually.

J.     **"Producing Party"** means or refers to a Party in the above-captioned matter from which production of ESI or Hard Copy Documents are sought.

K.     **"Native," "Native Format,"** or **"Native Data Format"** means and refers to an electronic document's associated file structure as defined by the original creating application. For example, the native format of an Excel workbook is a .xls or .xlsx file.

L.     "**NIST Library"** means the list of over 26 million known, traceable software application files (i.e., the NIST List or the National Software Reference Library (NSRL)) maintained by the federal technology agency known as the National Institute of Standards and Technology (NIST). *See* https://nvd.nist.gov/ncp/repository.

M.     **"OCR text"** means text generated through the optical character recognition process of a Hard Copy Document.

N.     **"Requesting Party"** means or refers to a Party in the above-captioned matter seeking production of ESI or Hard Copy Documents.

O.     **"Search Terms"** means a search methodology using keywords, terms or phrases including Boolean-search strings.

P.     **"Static Image(s)"** means a representation of ESI produced by converting a Native file into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format, or "TIFF," image is an example of a Static Image. Tagged Image File Format or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper documents.

Q.      **"TAR"** means Technology Assisted Review, which is a process of using computer software to electronically classify documents based on input from reviewers, in an effort to expedite the organization and prioritization of the document collection.

R.      **"Text Messages"** means electronic messages that are sent among users with mobile devices. Text Messages shall include Short Messaging Service (SMS) and Multimedia Messaging Service (MMS), as the terms are described and used in "The Sedona Conference Glossary: E-Discovery and Digital Information Management," (5th ed. Feb. 2020).

## III.      RULE 26(a) ESI DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a), each Party shall disclose the information identified below.  The Parties acknowledge and expect that Defendants may have a larger volume of materials to review and produce in this action.  Nonetheless, pursuant to this Section, each Party will be subject to the same disclosure requirements concerning the categories of information to be produced.

A.      **Custodians.** The custodians most likely to have discoverable ESI in their possession, custody, or control (hereinafter, "Priority Document Custodians"), specifically in the number of [eight] custodians for Defendants and 2 for each Plaintiff. The Priority Document Custodians shall be identified by name, title, connection to the instant litigation, and the type of information under his/her control. Each Party expressly reserves the right to request inclusion of additional custodians as discovery progresses.  Each Party also expressly reserves the right to object to the inclusion of any additional custodian(s).

B.      **Non-custodial Data Sources:** A list of known non-custodial data sources (e.g., shared drives, servers, etc.), if any, likely to contain discoverable ESI. Additionally, as part of their non-custodial data sources Rule 26(a) disclosures, each Party will identify the databases that

contain "structured data" responsive to the opposing party's First Set of Requests for Production of Documents (served on Plaintiffs on August 15, 2023 and served on Defendants on August 16, 2023, respectively).

      C.     **Data Sources.** The data sources of the individual custodians whose Documents and ESI will be searched. The Producing Party will inform the Requesting Party about custodial data sources that will be searched.

      D.     **Third-Party Data Sources.** The Producing Party will provide the Requesting Party a list of known third-party data sources, if any, likely to contain discoverable ESI and, for each such source, the extent to which a Party is (or is not) able to preserve information stored in third-party data source.

      E.     **Inaccessible Data.** Whether certain categories of Documents are not reasonably accessible as defined under Fed. R. Civ. P. 26(b)(2)(B). The Parties need not preserve, produce, or identify on a privilege log the following categories of ESI in this matter:

      1.   Deleted, slack, fragmented, or other data only accessible by forensics.

      2.   Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

      3.   On-line access data such as temporary internet files, history, cache, cookies, and the like.

      4.   Back-up data that is substantially duplicative of data that are more accessible elsewhere.

      5.   Data stored on photocopiers, scanners and fax machines.

      6.   Data remaining from systems no longer in use that cannot be accessible by systems in use.

Nothing in this Protocol prevents any Party from asserting that other categories of ESI are not reasonably accessible.

## IV.     SEARCH PROCEDURES FOR DOCUMENTS AND ESI

A.     **In General.** Prior to commencing its search for responsive Documents and ESI, regardless of the search methodologies to be employed, the Requesting Party and Producing Party shall meet and confer regarding search methodologies (described below) that the Producing Party proposes to employ to identify responsive materials.

B.     **Preparation for Meet and Confer.** The Parties agree that negotiations regarding search methodology and custodians are intended to be a cooperative and interactive process, involving a good-faith exchange of information and proposals to facilitate production of the Documents requested by the Requesting Party (subject to privilege assertions). The Parties also agree, however, that each Party is ultimately responsible for determining the search methodologies for reviewing its own Documents. Prior to that meet and confer, the Parties shall be prepared to discuss all items identified in Section III, *supra*; and the proposed methodology for searching and retrieving Documents, as described below:

1.     **Search Methodology for ESI.** The proposed method of searching ESI, including any Search Terms and/or Boolean search strings, TAR or other advanced technology-based analytics, date ranges to be searched, and any additional parameters to be applied for ESI.

2.     **Go- Get Documents**. Whether certain categories of documents or requests for production are amenable to retrieval without utilizing Search Terms or TAR, i.e., using a "go-get" approach.

3.     **Search Methodology for Hard Copy Documents.** The proposed methodology and scope for manual retrieval of Hard Copy Documents.

C.     **Selection of Methodology of Culling ESI for Review**. Within seven (7) days of the Court's entry of this Protocol, a Party shall notify the other Parties of the methodology it will use to cull or otherwise limit the volume of unstructured ESI subject to linear review, e.g. Search Terms, TAR, and/or other advanced technology-based analytics.  The use of Search Terms will not preclude the Parties' use of other reasonable review tools, including, but not limited to, analytics and predictive coding.

1.     If a Party elects to use Search Terms to cull or otherwise limit the volume of ESI prior to review using TAR and/or other advanced technology-based analytics, any such search terms will be designed to capture a broad set of documents that appear to reasonably relate to the issues in this case.

D.     **Procedure for TAR/Advanced Analytics.**  The Parties will make good faith efforts to satisfy the deadlines provided in this Section.

1.     If a Party chooses to use TAR, it shall, within seven (7) days of notifying the Parties of its intention to use TAR, disclose the following information pertaining to the TAR process: (a) the name of the TAR software and vendor, (b) a general description of how the Producing Party's TAR process will work, including, for example, what human interaction is involved in the TAR process and how it will train the algorithm, such as using exemplars, keyword search strings, or some other method, (c) a general description of the categories or sources of the documents that the Party expects will be included or excluded from the TAR process, and (d) a general description of quality control and validation measures that the Party expects to take.

2.     Within fourteen (14) days of receiving a Producing Party's TAR disclosures referenced above, the Requesting Party may raise with the Producing Party concerns regarding the proposed TAR process or categories of documents it proposes should be excluded from the TAR

process.  The Parties shall meet and confer to discuss those concerns within ten (10) days after the Requesting Party raises any such concerns.  Any disputes regarding TAR will not be submitted to the Court, Magistrate Judge or appointed Special Master before the Parties have met and conferred in good faith.  If the Requesting Party continues to dispute the Producing Parties' use of TAR (based on the disclosures referenced above in Paragraph IV.D.1) more than thirty (30) days from the date that the Producing Party disclosed the information regarding the TAR process, any unresolved matters will be promptly submitted to the Court for resolution.  Any subsequent disputes regarding a Party's use of TAR (including a Party's decision to discontinue its review) will be promptly raised by the Requesting Party and, if the Parties cannot reach agreement following a meet and confer, such disputes will be promptly submitted to the Court for resolution.

3. A Requesting Party may also propose exemplars it proposes be used to train a TAR tool or narrow keyword search strings it proposes be used to generate exemplars to train a TAR tool. At the receiving Party's request, the Parties may meet and confer to discuss the producing Party's ongoing use of TAR.

E. **Procedure for Search Terms.**  The Parties will make good faith efforts to satisfy the deadlines provided in this Section.

1. If a Party chooses to use Search Terms, it shall, within seven (7) days of notifying the Parties of its intention to use Search Terms, provide the Parties with its proposed Search Terms, as well as a hit report reflecting the number of Documents hitting on each Search Term.  A Hit Report must be provided in Excel (or other format as agreed to by the Parties) and must include (a) the overall number of documents being searched, (b) number of documents hit by the Search Term with separate hits for individual documents hit vs. documents

hit including families, and (c) unique documents hit by search string (i.e., documents that would not be included in the search results but for the inclusion of that particular search string).

2. Within seven (7) days of receiving the proposed Search Terms and hit count spreadsheet, the Requesting Party may provide proposed changes to the Producing Party's Search Terms. The Producing Party will have fourteen (7) days thereafter to provide the Requesting Party with (i) any further proposed changes to the Search Terms, and (ii) hit count spreadsheets for both the Requesting Party's proposed Search Terms and the Producing Party's proposed changes. These deadlines will apply to any subsequent proposed changes to the Search Terms by either Party.

3. If any objections are not resolved within thirty days of the date that the Producing Party provided its proposed search terms, the matter will be promptly submitted to the Court for resolution.

4. At any time during this process, either Party may request to meet and confer instead of, or in addition to, providing revisions to the Search Terms, and the Parties will seek to meet and confer promptly thereafter. Upon agreement by the Parties, the above deadlines may be suspended pending the occurrence of the Parties' meet and confer.

5. If the Parties disagree on the Search Terms to be used or sources of ESI to be searched, any Party may file an appropriate motion for determination by the Court after meeting and conferring in good faith. During the pendency of any such motion, the Producing Party's production obligation will be stayed for the

"disputed" Search Terms and/or sources of ESI, but not stayed for the agreed-upon Search Terms and sources of ESI to be searched. No Party is required to use Search Terms; further, use of Search Terms does not foreclose a Party's right to use other technologies. It is the Producing Party's right to determine the best method of search and review and how it will comply with Fed. R. Civ. P. 26.

F.  **Responsive ESI Discovered Outside of Search Methodology.** Notwithstanding any of the foregoing, if any Party identifies ESI or Documents that are in its possession, custody or control, responsive and within the scope of discovery as contemplated by Fed. R. Civ. P. 26, it shall produce all such Documents to the extent they are not privileged, even if they are outside of the search methodology(ies) agreed to by the Parties.

G.  **Production and Supplementation of Searches for ESI.** Production of responsive, non-privileged documents shall proceed on a rolling basis and be completed within the time period specified by order of the Court. If, after reviewing ESI and Documents received from the Producing Party, the Requesting Party believes that additional search terms are necessary or that changes to the search terms are warranted, the Requesting Party shall use good faith efforts to request a meet and confer under this Paragraph promptly and in any event no later than 120 days prior to the deadline for the close of fact discovery.

## V.  FORMAT OF PRODUCTION

A.  **Hard Copy Document Production Format.** The following provisions shall generally govern the production format and procedure for Hard Copy Documents and images.

1.      All documents originating in hardcopy format will be produced as black-and-white or color (if originally in color), single-page, 300 dpi Group IV tagged image file format ("TIFF") images, with OCR text and related path provided in document level text files.

2.      In scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hardcopy documents should be logically unitized). The Producing Party will use reasonable efforts to unitize documents correctly.

3.      Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

4.      Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/Metadata load file (.DAT), pursuant to Exhibit 2. Exhibit 1, Part 1 lists the objective coding fields that will be produced for hard copy documents.

5.      The Producing Party will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates-stamp order.

B.      **ESI Production Format.** The following provisions shall generally govern the production format and procedure for ESI and are subject to the other provisions contained herein.

1.      **Production of electronic documents.** The Producing Party must produce all ESI in TIFF format according to the following specifications.

a.      TIFFs shall be produced as black-and-white, single-page, 300 dpi Group IV tagged image file format ("TIFF") images.  The Producing Party will honor reasonable requests for a color image of a document, if production in color is necessary to understand the

meaning or content of the document. Documents produced in color will be produced in JPEG format as single-page, 300 dpi.

        b.      When producing documents in TIFF format, the image files shall be produced along with Concordance/Opticon image load files, linking the images to the corresponding document that indicate the beginning and ending of each document, showing the Bates number of each page and the appropriate unitization of the documents.

        c.      Each image file of an electronic document will be created directly from the original electronic document. Image files shall show all text and images that would be visible in the original electronic format (Native Format), including redlines and speaker notes.

        d.      All TIFF files are to be provided with an accompanying document-level, searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent technically feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows. In the case of files with redacted text, OCR'ed text of the redacted documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing.

        e.      All documents shall be produced in their original language. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

        f.      Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT). In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the

communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

2. **Fields and Metadata**.

Exhibit 1, Part 2 lists the objective coding fields and Metadata that will be produced for all ESI—including ESI produced in TIFF or Native Format.

3. **Native Format Production Documents**.

a. The Parties will produce the following ESI types in native file format:

    i. Excel files;

    ii. Presentation files (e.g., PowerPoint);

    iii. Personal databases (MS Access);

    iv. Audio/video files;

    v. Web pages;

    vi. Animations.

b. The Parties reserve the right to request production of other ESI types in Native Format, for example, that documents be produced in Microsoft Word, in addition to TIFF images. The Parties agree to meet and confer regarding such requests.

c. Any Native files that are produced should be produced with a link in the NativeLink field, along with all extracted Metadata fields, as set forth in Exhibit 1.

d. PowerPoint or other presentation files should be produced in Native Format as (e.g., as .PPT files). PowerPoint presentations shall also be produced in notes image format with speaker notes (which will print on the bottom half of the page under the top half of the page containing the slide) with related searchable text, Metadata, and bibliographic

information.

e. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the parties shall meet and confer to determine the appropriate form of production.

f. ESI shall be processed in a manner that preserves hidden columns or rows, hidden text, worksheets, notes, tracked changes, and comments. Any Party seeking a deviation from this provision must provide notice to other Parties and the Parties agree to meet and confer regarding such requests.

g. Any Document produced in native format, will be produced according to the following specifications:

i. A unique Bates number shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be: "BATES000001.xls." A confidentiality designation shall be produced in the CONFIDENTIALITY field as part of the metadata load file (*see* Exhibit 1).

ii. The native format Documents shall be accompanied by a single-page TIFF image slip-sheet. The slip-sheet, which the Producing Party will insert into the image population in place of the Native File, shall be endorsed with the corresponding native's Bates Number, text indicating the document is being produced in Native Format, and the appropriate confidentiality endorsement.

iii. When redactions are required for documents that are otherwise being produced in Native Format, the Producing Party may elect to utilize native redaction software tools to apply redactions directly to the Native File and produce a Redacted Native File instead of the original processed Native File.

iv. In all cases, unless there is no textual content, an OCR or Extracted Text file shall be produced along with the native file. For any native format documents that cannot be imaged or where the image is produced as a separate document, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number and confidential designation, if any, of the corresponding file.

v. In order to preserve the integrity of any file produced in Native Format, no Bates number or internal tracking number should be added to the body of the Native Format document.

vi. The Receiving Party may also request that the Producing Party produce additional file types of electronic documents in Native Format where converted image formats distorts or causes information to be improperly displayed. The Parties shall meet and confer regarding such requests in good faith and cooperate consistent with the provisions set forth in this Protocol.

h. **Production of Text Messages.** To the extent responsive Text Messages are being produced, they will be produced in a reasonably usable format. The Producing Party will disclose its production format of Text Messages to the Receiving Party prior to the production of Text Messages. The Producing Party will provide the Receiving Party an opportunity to raise any concerns with the usability of that format prior to production of Text Messages.

C. **Deduplication and De-NISTing Documents.** To reduce the unnecessary costs of reviewing and producing exact duplicate documents (i.e., the documents and Metadata fields are identical copies), to the extent reasonably possible and accounting for any technical limitations of any Party's ESI, each Party may remove duplicate ESI prior to producing documents.

1.      Subject to the provisions in this section, each Party may remove duplicate ESI prior to producing documents (based on the MD5 hash values at the parent document level). Stand-alone files will de-duplicate against other stand-alone files, but not against attachments contained in document families. Where any exact duplicates have attachments, hash values must be identical for both the document-plus-attachment (including associated Metadata other than custodian) as well as for any attachment (including associated Metadata other than custodian) standing alone. Provided, however, that if an "identical" document is an attachment to different emails (e.g., where attachment 1 is sent to person A one day and then sent to person B another day), then the attachment shall be produced together with each email.

2.      For exact duplicate documents, the Producing Party will produce certain Metadata described herein for a single production copy. The Producing Party may de-duplicate documents across custodians ("global deduplication"). Names of custodians of copies of files eliminated due to global deduplication shall be provided in the Duplicate Custodian field accompanying the original file.

3.      If during the course of its review the Producing Party identifies a large number of duplicate documents that do not deduplicate through the processing described above in Paragraph V.C.1, the Parties may meet and confer regarding a custom deduplication protocol. No custom deduplication method will be implemented without meeting and conferring with the Requesting Party.

4.      Common system and program files as defined by the NIST Library need not be processed, reviewed or produced.

D.      **E-mail Thread Suppression**: Email threads are email communications that contain prior or lesser-included email communications. A Producing Party may not use e-mail

thread suppression to exclude email from production or to exclude lesser-included emails from its privilege log.

E. **Password Protected Files.** The Producing Party shall make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this ESI Protocol, and the decrypted Document is produced (if responsive and not privileged). To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this ESI Protocol, the Producing Party has no duty to identify the prior encrypted status of such Documents. To the extent such Documents are not successfully processed that are members of a responsive family, the Producing Party agrees to: (a) produce a slipsheet for each encrypted or password protected Document indicating that the Producing Party could not successfully process the Document due to technical issues; and (b) provide the Metadata for the Document required by Exhibit 1 to the extent it can be reasonably extracted from the file in its encrypted form. The Requesting Party, Receiving Party, and/or Producing Party, as appropriate, shall meet and confer regarding any requests that a Producing Party undertake additional efforts to decrypt files after production.

F. **Prior or Other Production.** To the extent a set or sets of Documents in a Party's possession, custody, or control that were previously produced in a prior or other proceeding or litigation are the subject of discovery in this case and the ESI for such Documents (including but not limited to Metadata fields, searchable text, and organization) differs from the substance and format agreed to herein, such Party may produce the production set in the same format it was produced in the prior proceedings/litigation, including, but not limited to, with whatever Metadata fields, searchable text, organization, and formats that were produced in that litigation.

1.     In the event certain Documents in the prior or other productions are in a form that is not reasonably usable by the Requesting Party, the Requesting Party and the Producing Party shall meet and confer regarding alternative forms of production for such Documents. If the Parties are unable to agree after meeting and conferring in good faith, the Parties may seek resolution by the Court.

2.     If materials are being produced from a prior or other proceeding or litigation, the Producing Party shall specify the proceeding or litigation in which each document was previously produced, as well as the entity that produced it. If the prior production contained a unique Bates stream, it is sufficient for the Producing Party to identify the prior productions with reference to that Bates stream. For example, if Documents being produced in this litigation bear a prior Bates stream of "ABC-xxxxxx," the Producing Party can identify the prior proceeding(s) in which such documents were producing by disclosing that all Documents bearing a Bates stamp of "ABC-xxxxxx" reflect documents produced by Party A in litigation Y.

3.     Notwithstanding the foregoing, any prior production document produced in this case, must, in addition to its prior Bates labeling, also be Bates-labeled for this case, as set forth below.

G.     **Prior Privilege Logs.** To the extent a Party produces Documents in this case that were produced in a prior proceeding or litigation, the producing Party may produce the privilege logs from those prior proceedings/litigations in lieu of creating, in this case, a new log (or log entries) for the Documents that were withheld in the prior proceeding/litigation. The Requesting Party retains the right to request additional information regarding any entry on each such prior log. If the Producing Party objects to producing such additional information, the Requesting Party retains the right to all related challenges, including, without limitation, the right to challenge the

sufficiency of the prior log (whether as a whole and/or as to particular entries), and/or the validity of any privilege claim(s) asserted.

H.    **Redactions.**

1.    To the extent that a responsive document contains privileged content, or to comply with federal or state privacy requirements (e.g., HIPAA), the Producing Party may produce that document in a redacted form. Any redactions shall be clearly indicated on each page of the document from which information is redacted, bearing a designation that it has been redacted. The designation shall make clear the reason for the redaction (e.g., "REDACTED - PRIVILEGED"). Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document as redacted. The Parties further agree that documents redacted for privilege will be produced without populating the Load File fields indicated with an asterisk in Exhibit 1.

2.    Native Excel or other spreadsheet files which are redacted may be redacted in their native form by overwriting the data contained in a particular cell, row, column, or tab with the word "Redacted" and shall make clear the reason for the redaction (e.g., "REDACTED - PRIVILEGED"). The Parties acknowledge that redacting the native may alter the Metadata of the produced file; however, the Metadata produced subject to Exhibit 1 will be the Metadata extracted from the original native file, other than Metadata containing redacted information.

3.    Native Excels or other spreadsheet files, PowerPoint or other presentation files which are redacted may be produced as black-and-white or color (as applicable), single-page, 300 DPI Group IV TIFF images, with text and related path provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file, including but not limited to speaker notes and "hidden" slides, with any redaction clearly

delineated. If the file contains external video or audio components, the video or audio will be produced as native files.

4. If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unredacted portions of the content. If the content is a voice recording, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unredacted portion of the content.

5. The Parties will not make any redactions based upon the purported relevancy of a Document.

I. **Confidentiality of Produced ESI.** Responsive ESI, whether produced as TIFF images or in Native Format, shall be produced pursuant to the terms of the separately entered Stipulated Confidentiality Order. If the Producing Party is producing ESI in TIFF Format subject to a claim that it is protected from disclosure under any protective agreement or confidentiality order, or any agreement entered into or Order issued in this matter, the word "CONFIDENTIAL" (or something substantially similar) shall be annotated on each page of such document.

J. **Additional Production Specifications.** All productions will include these additional specifications:

1. Delimited Metadata load file (.DAT) containing a field with the full path and file name to the native files produced pursuant to Exhibit 2, and shall include the Metadata fields identified below (Exhibit 1);

2. Delimited image load/unitization file for images (.opt) shall be provided pursuant to Exhibit 2;

3. Document level .txt files for all documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted);

4.     Bates number branding (in the lower right-hand corner) and Confidentiality designation (if any, in the lower left-hand corner) on the face of the TIFF image using a consistent font type and size that, to the extent reasonably feasible, does not obliterate, conceal, or interfere with any information from the source document, including bates number branding from previous litigation productions. If the placement will result in obscuring the underlying image, the Bates number and/or Confidentiality designation should be placed as near to that position as possible while preserving the underlying image;

5.     A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format or withheld;

6.     Each Bates number will: (i) be unique across all document productions, including prior productions; (ii) maintain a constant length and format across the entire production (i.e., ABC00000001- with a consistent prefix, no space between the prefix and the number, and padded to the same number of characters); and (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

7.     To the extent any documents contain redactions and are produced in TIFF format, the following specifications apply:

a.     PowerPoint slides/presentations that are produced in TIFF format will be produced with any notes, talking points, outlines, or comments contained therein; and

b. All hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) will, to the extent reasonably feasible, be expanded, extracted, and rendered in the TIFF file.

8. Each of the Metadata and coding fields set forth in Exhibit 1 that can be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Exhibit 1 *except* Default Production Fields ("DPF") that are generated in the course of collection, review and production (e.g., BEGBATES, ENDBATES, etc.); and the "CUSTODIAN," "DUPLICATE CUSTODIAN," "CONFIDENTIALITY", and "REDACTION" fields. If Metadata fields are not produced because they do not exist or because they are not reasonably accessible, the Producing Party shall include the fields in the header row of the .DAT and leave the field blank for the corresponding document(s).

9. **Time Zone.** The Parties agree that the entirety of each party's ESI should be processed using Central Standard Time ("CST") identified as a fielded value in the production metadata load file.

10. **Auto date/time stamps.** ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

11. The Parties understand and acknowledge that such standardization affects only dynamic date fields and Metadata values and does not affect, among other things, dates and times that are hard-coded text within a file.

## VI. PRESERVATION

A. **Deleted Files and Meet and Confer.** The Parties shall not be obligated under this Protocol to produce or preserve ESI that was deleted, lost, or destroyed before the date upon which the duty to preserve ESI arose, as a result of the routine, good-faith operation of an ESI system.

Nothing in this provision limits or expands a Party's obligation to seek or search for ESI known to be "deleted" by a user that remains as a copy on an archive, backup, or as active data on some other central server or place within a Party's possession, custody, or control provided such search is otherwise consistent with and does not exceed or limit the Party's obligations under the Federal Rules of Civil Procedure. If a Producing Party learns that responsive ESI that should have been preserved was lost or destroyed, and is no longer retrievable, the Parties shall promptly meet and confer regarding such responsive ESI. Nothing in this agreement alters or expands the obligations of the Requesting Party or the Producing Party pursuant to Federal Rule of Civil Procedure 26(b).

## VII. FAMILY RELATIONSHIPS OF ELECTRONIC FILES

A. **Family Relationships.** Parent-child relationships between ESI (e.g., the association between an attachment and its parent e-mail, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all files within a parent-child group, and by providing accurate attachment ranges for those files in the Metadata fields required. If a Party withholds as privileged a member of a parent-child group (e.g., a document or portion of a document) that has other non-privileged or privilege redacted members, any parent-child relationship must be similarly maintained by indicating the absence of that document (or portion thereof) using a Bates-numbered slip sheet (or a clearly marked redaction) and the grounds for withholding.

1. In the event a document or portion of a document that is part of a family is initially withheld as privileged, but later produced, the entire family must be reproduced with it, along with all required Metadata.

B. **Non-Responsive Attachments.** The Parties agree that "non-responsive" shall generally not be a cognizable basis for withholding documents from production, if a document is

associated, through familial relationships, with a responsive document. An otherwise non-responsive attachment to a responsive parent document—or an otherwise non-responsive parent document that has responsive attachments—may not be withheld simply because the document, if it were not in the same family as responsive material, would not be responsive. The Parties agree, however, that the general provisions of this paragraph shall not prejudice any Party's right to seek exceptions if it identifies particular non-responsive documents, or categories or portions of documents, that it believes are appropriate to withhold or redact on the basis of non-responsiveness notwithstanding their association with a responsive document. In such case, the Parties shall meet and confer regarding the exception sought and may submit any such issue to the Court if agreement cannot be reached.

      C.     **Microsoft "Auto" Feature and Macros**. Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be branded with the words "Auto Date," "Auto File Name," "Auto File Path" or similar words that describe the "auto" feature.

      D.     **Embedded Documents.** Embedded ESI documents (e.g., a spreadsheet embedded within a word processing document or an audio file in a PowerPoint presentation) will not be extracted.

      E.     **Compressed Files.** Compression file types (e.g., .CAB, .GZ, .RAR. .ZIP), shall be decompressed to ensure that a compressed file within a compressed file are decompressed into the lowest possible compression resulting in individual folders and/or files.

## VIII.   STRUCTURED DATA

When responsive information is located in a database—including for enterprise resource planning or human resource applications or databases like Workday, SuccessFactor, Access, Oracle, SQL Server data, SAP, etc.—or other structured or aggregated data source, the Parties will meet and confer to address the production format of responsive data.

## IX.   DISCLOSURE OF CUSTODIAL ESI COLLECTION

Each Producing Party will disclose the following information regarding its collection of ESI.  To the extent that any Requesting Party believes that additional categories of ESI should be collected, or would like additional detail concerning any categories of the Producing Party's ESI collection, it shall promptly raise such issues with the Producing Party, and the Parties will promptly meet and confer.

A. **Email**. For each Document Custodian, a list of any of the Custodian's email accounts from which the Producing Party has collected emails, and the date range of the collection.

B. **Cell Phones.** A list of any cell phones collected for each Document Custodian and, for each cell phone included in the collection, the custodian's phone number, and the type of phone if known.

C. **Tablets, Personal Computers, and Other Devices**. A list of any tablets, personal computers, or other devices collected for each Document Custodian.

D. **Other Sources.** High-level descriptions of other sources of ESI, including but not limited to cloud-based ESI and ESI stored in shared drives or similar locations.

## X. PRODUCTION MEDIA

Documents shall be produced via secure FTP site, rather than through physical media (e.g., CD-ROM, DVD, or external hard drive), unless such transmission is impracticable or the Parties hereafter agree upon on a different method of transmission. Each production shall by accompanied by a cover letter, to be sent via email at the time of production, including the following information:

A. Name of the Litigation and its case number;

B. Name of the Producing Party;

C. Date of the production (mm/dd/yyyy);

D. Bates number range;

Confidentiality Designation; and

E. Notes regarding any irregularities in the production (e.g., whether it is a replacement production (see below)).

F.  Any replacement production or Documents shall cross-reference the original production, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced. Producing Parties may encrypt their productions and, if so, shall provide a key to decrypt the production in a separate communication via email.

## XI.  NON-PARTY SUBPOENAS AND PRODUCTIONS

Any Party that issues a non-party subpoena shall notify other Parties within five (5) business days when it receives non-party productions of documents, ESI or other responses from the non-party, and shall provide copies of all such productions in the format in which they were received from the non-party to the other Parties. If the non-party produces documents or ESI that are not Bates labeled, the Receiving Party will Bates-label the documents or ESI before producing a copy to the other Parties if the produced documents or ESI are of the type so requiring consistent with other provisions of this Order.

Nothing in this Protocol precludes a Receiving Party from reviewing a non-party production of documents or ESI and applying (if the non-party produced documents without a confidentiality designation) or elevating a confidentiality designation (e.g., elevating documents designated as CONFIDENTIAL to ATTORNEYS' EYES ONLY) if the production contains highly sensitive information as set forth in the Stipulated Confidentiality Order.

## XII.  OBJECTIONS TO ESI PRODUCTION

If any formatting requirements or other specifications agreed to in this Protocol are later determined by the Producing Party to be not feasible, or unduly burdensome or unreasonably costly, the Producing Party shall notify the Requesting Party, and the Parties will meet and confer in order to attempt to agree upon appropriate modifications to the Protocol before presenting any

such issue to the Court. Notwithstanding anything contained herein to the contrary, a Producing Party shall not intentionally produce ESI in a format not provided for in this Protocol, and if a mistake is made, shall be allowed to remediate that mistake. If an issue arises, the issue may be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet and confer process.

## XIII.   FRE 502(d) and (e) CLAWBACK AGREEMENT

A.     Pursuant to Federal Rule of Evidence 502(d) and (e), the Parties agree to, and the Court orders, protection from disclosure of information subject to a legally recognized claim of protection, including, without limitation, the attorney-client privilege, the work-product doctrine, or other applicable protection ("Protected Information") against claims of waiver as follows:

1.     The inadvertent disclosure or production by a Party of Protected Information by a producing Party to a receiving Party shall in no way constitute the voluntary disclosure of such information.

2.     The production or disclosure of Protected Information in this action shall not result in the waiver of any privilege, evidentiary protection, or other protection associated with such information as to the receiving Party or any third parties, and shall not result in any waiver, including subject matter waiver, of any kind.

3.     The Parties stipulate that the entry of this Order by the Court shall constitute a Rule 502(d) order, which shall be interpreted to provide the maximum protection allowed by Rule 502(d).

B.     **Clawback Mechanism**

The Parties agree that inadvertent disclosure of documents or ESI not relevant to the above-captioned action or protected by the attorney-client privilege, attorney work product doctrine, or

any other such protection ("Inadvertently Disclosed ESI") obligates the receiving party, upon request, to return or destroy the inadvertently disclosed material. If a receiving Party discovers that Inadvertently Disclosed ESI has been produced, the receiving Party is obligated to inform the disclosing Party in writing within five (5) business days, regardless of whether a challenge to such privilege or protection is anticipated.

Within five (5) business days from the date on which (a) the receiving Party notifies the disclosing Party of Inadvertently Disclosed ESI, or (b) the disclosing Party identifies Inadvertently Disclosed ESI, the disclosing Party shall notify the receiving Party in writing (the "Notice"), identifying the Inadvertently Disclosed ESI and directing the receiving Party to promptly return, destroy, and/or make inaccessible the inadvertently disclosed information/documents and all copies.

1.      Parties' Obligations: Within three (3) business days of receipt of the Notice, the receiving Party shall inform the disclosing Party that compliance will be effectuated or challenge the Notice in a formal responsive writing. If the Notice is not challenged, the receiving Party shall destroy, return, and/or disable all access to the specified documents/information within ten (10) business days or as agreed by the Parties.

a.      Where the Inadvertently Disclosed ESI is in the form of a disc or access to a password-protected server, the producing Party must replace, upon receipt of intent to comply with the Notice, a replacement of the production containing all documents/information but for those identified in the Notice.

b.      The receiving Party will endeavor in good faith to retrieve any copies of the identified documents/information to return, destroy, or otherwise

dispose of the materials, and take all steps necessary to prevent further sharing of those materials.

      c.     Any use of the identified Inadvertently Disclosed ESI prior to receipt of the Notice is not a violation of this ESI Protocol but may be subject to the provisions of the Protective Order.

      d.     If the receiving Party challenges the Notice, it will return, destroy, or disable all copies of the documents/information, but may retain one copy for the purpose of challenging the designation or inadvertency of the disclosure. However, this exception allowing the receiving Party to retain one copy is limited and does not allow the retention of any copy of Inadvertently Produced Privileged Material, as defined in the Protective Order, which shall be returned, destroyed, or disabled promptly by the receiving Party and shall not be used by the receiving Party in any motion to compel to challenge the privilege designation.

      e.     The Parties will meet and confer within two (2) business days to resolve the dispute if the Notice is challenged, and, if not resolved, the Receiving Party shall promptly, but in no event no later than ten (10) business days following the Parties' meet and confer, move to compel the production of the Inadvertently Produced ESI.

      f.     Under all circumstances, the disclosing Party must preserve all documents/information subject to the Notice until any dispute has been resolved by the Parties' agreement or court order.

## XIV. PRODUCTION OF PRIVILEGE LOGS

A.     For any Document withheld in whole on the basis of privilege, work product doctrine or other protection, the Party or third party withholding the Document(s) shall produce a privilege log or logs in Excel format that permits electronic sorting and searching.

B.     Exclusions from Logging Potentially Privileged Documents: The following categories of documents need not be collected, reviewed or reflected in a Producing Party's privilege log..

1.     Communications after May 24, 2022 exclusively between a Producing Party and its corporate in-house and/or outside counsel regarding this Action.

2.     Any communications exclusively between a Producing Party and its outside counsel, or an agent of outside counsel other than the Producing Party.

3.     Any communications exclusively between a Producing Party any non-testifying experts in connection with this specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with this specific litigation.

4.     Any privileged materials or work product created by or specifically at the direction of a Producing Party's outside counsel, an agent of outside counsel other than the Producing Party, any non-testifying experts in connection with specific litigation, or with

respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with this specific litigation.

C. <u>Privilege Log Requirements</u>: Privilege Logs shall contain the following information for each redacted or withheld Responsive Document:

    1.    The privilege logs will be generated using the following objective metadata to the extent available (as applicable to the Document types as shown in Exhibit 1 to the ESI Protocol Order):

        a.  A unique privilege log identifier

        b.  Custodian

        c.  Duplicate Custodian (if applicable)

        d.  RecordType (E-mail, E-mail Attachment, Electronic Document, etc.)

        e.  Subject

        f.  FileName

        g.  Author

        h.  From

        i.  To

        j.  CC

        k.  BCC

        l.  ParentDate or SortDate

        m.  DateCreated

        n.  SentDate

        o.  ReceivedDate

        p.  DateModified

2.      In addition to the objective Metadata, the Parties agree to meet and confer regarding a reasonable list of categories into which log entries will be organized. Each Party shall include in its privilege log:

a.  A description of the document, including the factual basis sufficient to support the claim that the document is privileged and/or protected and, where the document is an Email thread, a narrative description that fairly accounts for the entirety of the Email thread;

b.  The privilege designation(s) associated with each document (attorney-client; attorney work product; joint defense and/or common interest, etc.);

c.  Which person(s) mentioned in the fields or otherwise related to the Document are attorneys; and

d.  For fully withheld emails, an indication whether the withheld version of the email is part of a chain.

3.      The Producing Party shall produce a list identifying the law firms and attorneys appearing on that Producing Party's privilege log.

4.      Should a Receiving Party, in good faith, have reason to believe a particular entry on a privilege log is responsive and does not reflect privileged information, or that a particular redaction is responsive and does not reflect privileged information, the Receiving Party may request additional information, and the Producing Party will not unreasonably refuse to provide, more information about the basis of the asserted privilege in compliance with Fed. R. Civ. P. 26(b)(5).

D.     <u>Challenges to Privilege Claims</u>:  Should a Requesting Party articulate a good faith reason why a particular redaction or withheld Document is responsive and does not reflect privileged or protected discoverable information after the Producing Party has provided the additional information requested under Paragraph XIV(C)(6) or (7) above, the Requesting Party shall provide (i) the Producing Party with its justification, which may include applicable case law or rulemaking, for believing the redaction or withheld Document is responsive and not privileged or protected; this justification must include sufficient detail for the Producing Party to understand and evaluate it, and (ii) the Producing Party an opportunity to re-consider its assertion of privilege or protection on the redaction or Document. The Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court. The Requesting Party shall not challenge the Producing Party's privilege log or any individual entries thereon without following the procedures set forth in this Paragraph. The withdrawal of an asserted privilege or protection following a challenge and subsequent meet and confer shall not be a basis to challenge other Documents included in the privilege log, except for duplicate Documents.

## XV.     PROPER BASIS FOR REDACTIONS AND WITHOLDING OF DOCUMENTS FOR PRIVILEGE.

A.     Pursuant to Rule 26(b)(5)(A), a party may redact or withhold Responsive Documents only on grounds of (1) attorney-client privilege; (2) protection under the work-product doctrine; and/or (3) common interest or joint defense doctrine if the Document, but for

its disclosure, would have been protected by the attorney-client privilege or work-product doctrine.

B.      If a Producing Party believes that it can withhold a Document based on a privilege or similar protection not enumerated in this Section XV(A), the Producing Party and Requesting Party shall meet and confer in good faith. If any member of a Document Family is responsive and not privileged, the Producing Party shall produce all family members and/or portions thereof that are not independently protected as privileged or work-product.

C.      To the extent documents are redacted or withheld on the above grounds, the redaction boxes or placeholder document for a withheld family member should indicate the reason for the redaction as follows: REDACTED – PRIVILEGED or WITHHELD – PRIVILEGED.

D.      If a Producing Party, for any reason, subsequently produces a Document/ESI that was previously withheld, with a placeholder, or redacted pursuant to this ESI Protocol, the Producing Party shall produce that Document pursuant to the production format specifications of this ESI Protocol that would have been applicable to the Document had it been produced initially (including provision of applicable load files necessary to link the replacement file to other previously produced Document Family members), except that the Producing Party shall apply an appropriate numerical suffix to the Bates number of the file to account for instances where the produced version of the file occupies more pages than the original placeholder image for the file. Alternatively, the Producing Party may, at the time of the production of the withheld Document/ESI, produce such Document/ESI with a new Bates number so long as a cross reference chart from the original Bates number to the new Bates numbers is provided in Excel format. As an example, if a Producing Party initially withholds a five-page Word document and

provides a placeholder image branded with the number ABC-000000001, the subsequently produced version of that five-page Word document shall be branded ABC-000000001_001 through ABC-000000001_005.

## XVI.   RESERVATION OF RIGHTS

By entering this Protocol, a Party does not waive any objections it has to requests for documents. Nor does a Party give up its right to review its documents for privilege or any other reason (including to identify non-responsive documents), and the existence of this Protocol cannot be used to compel a party to produce documents without review.

SO ORDERED, this the ___ day of_____, 2023.

_____
The Honorable Lynn Adelman
United States District Judge

Dated: February 9, 2024                    Respectfully submitted,

*/s/ Jamie Crooks*                          */s/ Daniel Walker*
Jamie Crooks                                Eric L. Cramer
Michael Lieberman                           Daniel J. Walker
FAIRMARK PARTNERS, LLP                      Berger Montague, P.C.
1825 7th Street, NW, #821                   1818 Market Street, Suite 3600
Washington, DC 20001                        Philadelphia, PA 19103
Tel: (619) 507-4182                         Tel: (215) 875-3000
jamie@fairmarklaw.com                       ecramer@bm.net
michael@lieberman.com                       dwalker@bm.net

*/s/ Joseph Saveri*                         */s/ Timothy Hansen*
Joseph R. Saveri                            Timothy Hansen
JOSEPH SAVERI LAW FIRM                      James Cirincione
601 California Street, Suite 1000           John McCauley

San Francisco, CA 94108
Tel: (415) 500-6800
jsaveri@saverilawfirm.com

HANSEN REYNOLDS, LLC
301 N. Broadway, Suite 400
Milwaukee, WI 53202
Tel: (414) 455-7676
thansen@hansenreynolds.com
jcirincione@hansenreynolds.com
jmccauley@hansenreynolds.com

**Counsel for Hometown Pharmacy, Hometown
Pharmacy Health and Welfare Benefits Plan,
Uriel Pharmacy, Inc., Uriel Pharmacy Health
and Welfare Plan**

*/s/ Kevin St. John*
Kevin M. St. John
BELL GIFTOS ST. JOHN LLC
5325 Wall Street, Suite 2200
Madison, WI 53718
Tel: (608) 216-7990
kstjohn@bellgiftos.com

**Counsel for Uriel Pharmacy, Inc., Uriel Pharmacy
Health and Welfare Plan**

*/s/ Daniel Conley*
Daniel E. Conley
Nathan J. Oesch
Kristin C. Foster
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
Tel: 414.277.5000
daniel.conley@quarles.com
nathan.oesch@quarles.com
kristin.foster@quarles.com

Matthew Splitek
QUARLES & BRADY LLP
33 E Main St, Suite 900
Madison, WI 53703
Tel: 608.251.5000
matthew.splitek@quarles.com

*/s/ Jane Willis*
Jane E. Willis
ROPES & GRAY LLP
Prudential Tower,
800 Boylston Street
Boston, MA 02199-3600
Tel: 617.951.7000
jane.willis@ropesgray.com

Anne Johnson Palmer
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111
Tel: 415.315.6300
anne.johnsonpalmer@ropesgray.com

**Counsel for Advocate Aurora Health, Inc., and
Aurora Health Care, Inc.**

## EXHIBIT 1

## FIELDS and METADATA TO BE PRODUCED

1.     The load files accompanying scanned paper documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| BEGBATES | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family |
| PAGECOUNT | Number of pages |
| CUSTODIAN | Name of custodian or custodial file |
| PRODVOL | The Production volume name |
| DOCTYPE | Description of document (Email, Attachment, Edoc, Hard Copy) |
| CONFIDENTIALITY | Confidentiality designation |
| REDACTION | Identifies if a document has been redacted |
| TEXTLINK | Link to text file for the document |

2.     The following Metadata fields shall be included in Load files accompanying ESI, to the extent available, and/or unredacted. The Parties agree that all fields with an asterisk will not be produced for files that are redacted for privilege.

| Field | Field Description for Electronic Documents | Field Description for Emails or Calendar Entries |
|---|---|---|
| BEGBATES | First Bates identifier of item | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a document family | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family | Ending Bates number of a document family |
| PAGECOUNT | Number of pages | Number of pages |
| ATTACHCOUNT | Number of files attached to parent | Number of files attached to parent |
| CUSTODIAN | Custodian(s) of the document | Custodian(s) of the document |
| ALL CUSTODIANS | Name of duplicate custodian(s) and original custodian | Name of duplicate custodian(s) and original custodian |
| PRODVOL | The Production volume name | The Production volume name |
| CONFIDENTIALITY | Confidentiality designation | Confidentiality designation |

| Field | Field Description for Electronic Documents | Field Description for Emails or Calendar Entries |
|---|---|---|
| REDACTION | Identifies if a document has been redacted | Identifies if a document has been redacted |
| AUTHOR | Document author from Metadata | n/a |
| FROM | n/a | Sender of message or calendar invite |
| TO | n/a | Recipient of message or calendar invite |
| CC | n/a | Copied recipients of message or calendar invite |
| BCC | n/a | Blind copied recipients of message or calendar invite |
| SUBJECT* | n/a | Subject of message or calendar invite |
| TITLE* | Title from a document's properties | n/a |
| PARENTDATE | The date of the parent document shall be applied to the parent document and all attachments. | The date of the parent email shall be applied to the parent email and all of the email attachments. |
| DATECREATED | Date file was created in the format MM/DD/YYYY | n/a |

| Field | Field Description for Electronic Documents | Field Description for Emails or Calendar Entries |
|---|---|---|
| TIMECREATED | Time file was created in the format HH:mm:ss | |
| DATEMODIFIED | Date file was last modified in the format MM/DD/YYYY | |
| TIMEMODIFIED | Time file was last modified in the format HH:mm:ss | |
| SENTDATE | n/a | The sent date of the message in the format MM/DD/YYYY |
| SENTTIME | n/a | The sent time of the message in the format HH:mm:ss |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY |
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss |
| FILENAME* | Contents of this Metadata field, or an equivalent | Contents of this Metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes |

| Field | Field Description for Electronic Documents | Field Description for Emails or Calendar Entries |
|---|---|---|
| LOGICALPATH | The directory structure of the original file(s). Any container name is included in the path. | The directory structure of the original file(s). Any container name is included in the path. |
| ALLLOGICALPATHS | The directory structure of ALL file(s). Any container name is included in the path. | The directory structure of the ALL file(s). Any container name is included in the path. |
| MD5HASH | MD5 hash of the document | MD5 hash of the email |
| DOCTYPE | Description of document (Email, Attachment, Edoc, Hard Copy) | Description of document (Email, Attachment, Edoc, Hard Copy) |
| ISEMBEDDED | Identifies if a document is embedded in another document. | Identifies if a document is embedded in another document. |
| NATIVELINK | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK | Link to text file for the document | Link to text file for the email |

Such Metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the information in the Metadata is protected by law or Court Order. This list of fields does not create any obligation to create or manually code fields that do not exist as part of the original Metadata of the document.

# EXHIBIT 2

## REQUESTED LOAD FILE FORMAT FOR DOCUMENTS AND ESI

**1**.    **Delimited Text File**.

A delimited text file (.DAT File) containing the fields listed in Exhibit 1 should be provided. The delimiters for the file should be Concordance defaults accordingly:

| Comma | ASCII character 20 (¶) |
|-------|------------------------|
| Quote | ASCII character 254 (þ) |
| Newline | ASCII character 174 (®) |

þBegBatesþþEndBatesþþBegAttachþþEndAttachþþPageCountþþCustodianþ

- The first record should contain the field names in the order of the data.
- All date fields should be produced in mm/dd/yyyy format.
- Use carriage-return line-feed to indicate the start of the next record.
- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered.
- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT).
- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).
- If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format.

**2.**    **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

   Further definitions and instructions as follows:

| ImageID | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
|---|---|
| VolumeLabel | The name of the volume. |
| ImageFilePath | The full path to the image file. |
| DocumentBreak | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak | Leave empty. |
| BoxBreak | Leave empty. |
| PageCount | Number of pages in the Document. |

- The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.LFP).

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

- There should be one row in the load file per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as the Bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.

3. **Sample Data**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002,VOL001,E:\100\ MT00000002.TIF,,,,

PROD00000003,VOL001,E:\100\ MT00000003.TIF,Y,,,4

PROD00000004,VOL001,E:\100\ MT00000004.TIF,,,,

PROD00000005,VOL001,E:\100\ MT00000005.TIF,,,,

PROD00000006,VOL001,E:\100\ MT00000006.TIF,,,,

4. **OCR / Extracted Text Files**

- OCR or Extracted Text files shall be provided in a separate \OCR\ directory containing Document level text files named by the Bates Begin number of the associated document.

- If Foreign Language / Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format