IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

URIEL PHARMACY HEALTH AND
WELFARE PLAN; URIEL PHARMACY,
INC.; HOMETOWN PHARMACY; AND
HOMETOWN PHARMACY HEALTH and
WELFARE BENEFITS PLAN, on their own
behalf and on behalf of all others similarly
situated,

        Plaintiffs,

  v.

ADVOCATE AURORA HEALTH, INC. and
AURORA HEALTH CARE, INC.,

        Defendants.

Case No. 2:22-cv-610

**PLAINTIFFS' AMENDED RESPONSE IN OPPOSITION TO DEFENDANTS' CIVIL L. R. 7(H) EXPEDITED NON-DISPOSITIVE MOTION TO COMPEL PRODUCTION**

This case concerns allegations that Defendants Aurora Health Care, Inc. and Advocate Aurora Health, Inc. (collectively, "AAH") used their market dominance to impose anticompetitive restrictions on commercial health plans that shielded AAH from competition from other hospitals and allowed AAH to extract unreasonably high prices for its services. Defendants, however, seek to compel Plaintiffs to turn over information wholly unrelated to this conduct. Specifically, Defendants demand information about alternative health plans and networks that Plaintiffs may have considered but did not offer to their employees[1] as well as information about Plaintiffs' employees' preferences regarding healthcare. Motion at 3. This information does not meaningfully inform the focus of this case: competition between hospitals for inclusion in the provider networks created by vendors of insurance plans ("Network Vendors"). And the open-ended nature of these requests—that Plaintiffs produce any document showing even granular consideration of or desire for alternative insurance products—causes the burden of production to far outweigh any minimal relevance such documents could have.

Plaintiffs allege that AAH was able to force Network Vendors to accept anticompetitive restraints in the creation and maintenance of the provider networks they offer to purchasers of health plans. This included requirements that Network Vendors include all AAH's facilities in their networks and restrict insurers and employers from directing individuals to higher value care at non-AAH facilities. These restraints were imposed between AAH and the Network Vendors, and the success of these allegations will turn on the facts underlying these negotiations.

Economic literature and judicial analyses of hospital competition recognize that hospital

---

[1] Defendants also seek documents showing "the features and limitations of competitive plans that led [Plaintiffs] to choose the plans they selected." Mot. at 1. But Plaintiffs have already agreed to provide documents concerning selection of their offered plans, only declining to produce documents relating only to (1) plans that were not adopted, or (2) employee preferences. Plaintiffs have also agreed to provide all documents relating to Plaintiffs' reference-based pricing plans.

1
Case 2:22-cv-00610-LA    Filed 08/05/24    Page 2 of 7    Document 72

prices are determined at this stage of competition (between providers for inclusion in health insurance networks[2]), and therefore "antitrust analysis focuses on [this] first stage."[3] Defendants, however, ignore this settled legal framework and focus on a different stage of competition, between different entities: that between *Network Vendors* for insurance business of *health plan purchasers*. This is not relevant to hospital pricing or the relevant market for hospital services.

Further, the information Defendants seek will not meaningfully inform their defenses. Defendants argue they need information concerning whether Plaintiffs "sought or considered" contracting for health plans that exclude AAH providers and facilities or that otherwise featured cost-saving tools, because it could show 1) whether alternative health plans were ever unavailable from Network Vendors in Wisconsin; or 2) whether AAH in fact coerced Network Vendors or employers. *See* Mot. at 2. This is wrong for several reasons.

First, individual Plaintiffs' decisions in selecting between insurance networks will not reliably "test" (*id.*) these allegations, as they will concern a limited number of Network Vendors. Plaintiffs will prove (or Defendants will disprove) the claims in this case by showing whether alternative insurance plans were meaningfully limited for purchasers of insurance. An individual Plaintiff's knowledge or preferences cannot move the needle as to this market-wide question. Second, it is AAH and the Network Vendors, not Plaintiffs, who have the information needed to reliably determine the extent of AAH's imposition of the challenged terms. Finally, contrary to Defendants' assertions (Mot. at 2-3), it is not necessary that AAH entirely foreclose alternative health plans to exercise market power and impact the market. Indeed, Plaintiffs need only show

---

[2] *See, e.g.*, Gregory Vistnes, *Hospitals, Mergers, and Two-Stage Competition*, 67 Antitrust L.J. 671 (2000); *In the Matter of Evanston Nw. Healthcare Corp., Respondent*, ¶ 107, Initial FTC Decision (Oct. 20, 2005) ("[First stage competition] between hospitals and managed care organizations is particularly important because it is . . . [how] hospital prices are determined.").
[3] *St. Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 784 n.10 (9th Cir. 2015) ; *FTC* v. *Advocate Health Care*, 841 F.3d 460, 465 (7th Cir. 2016) (same).

2

Case 2:22-cv-00610-LA     Filed 08/05/24     Page 3 of 7     Document 72

that enough Network Vendors were coerced so as to meaningfully reduce choice in the market.[4] Whether individual Plaintiffs could select a single alternative plan is not relevant to this issue.

Defendants also argue that Plaintiffs' preferences could show how Network Vendors assess market demand in their negotiations. Mot. at 4. This too is wrong. Network Vendors respond to the demand of the market overall, not to that of two individual employers. Thus, documents from the two named Plaintiffs about their (or their employees') preferences cannot prove or disprove the existence or effectiveness of the restraints in the relevant market.[5]

Finally, the requests are unduly burdensome in light of the vanishingly slim relevance (if any) of the material sought.[6] Defendants' open-ended requests require a significantly more in-depth and burdensome review, as compared to the information Plaintiffs have agreed to produce. Each document must be examined for material showing 1) *any* consideration of *any* alternative health plans, as opposed to whether the document concerns health plans actually used; as well as 2) any indication of employee preferences, necessitating a detailed review of any email sent by an employee about what a health plan might cover. Moreover, Plaintiffs' review is already more than a quarter complete. To have Plaintiffs expend the cost and effort to re-review thousands of documents in such detail is disproportionate to their minimal potential relevance.

---

[4] *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 64 (D.C. Cir. 2001) (a claim that a restriction was not complete will not bar defendant from liability, for while defendant "did not bar its rivals from all means of distribution, it did bar them from the cost-efficient ones."); *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 482-83 (1982) ("[A]n increase in price resulting from *a dampening of competitive market forces* is assuredly one type of injury for which [the Clayton Act] potentially offers redress." (emphasis added); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 191 (3d Cir. 2005) ("The test is not total foreclosure, but whether the challenged practices bar a substantial number of rivals or severely restrict the market's ambit.").
[5] Nor do they bear on typicality, Mot. at 3; Plaintiffs do not argue their preferences are atypical.
[6] *See, e.g.*, *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 2019 WL 356805, at *4 (N.D. Ill. Jan. 29, 2019) ("any minimal relevance to some tangential issue is far outweighed by the burden").

3

Dated: August 5, 2024                              Respectfully submitted,

/s/ *Michaela L. Wallin*
Eric L. Cramer
Michaela L. Wallin
BERGER MONTAGUE, P.C.
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bm.net
mwallin@bm.net

Joseph R. Saveri
Itak Moradi
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1505
San Francisco, CA 94108
Tel: (415) 500-6800
jsaveri@saverilawfirm.com
imoradi@saverilawfirm.com

Jamie Crooks
Michael Lieberman
FAIRMARK PARTNERS, LLP
1825 7th Street, NW, #821
Washington, DC 20001
Tel: (619) 507-4182
jamie@fairmarklaw.com
michael@lieberman.com

Daniel J. Walker
BERGER MONTAGUE, P.C.
1001 G Street, NW
Suite 400 East
Washington, D.C. 20001
Tel: (202) 599-9745
dwalker@bm.net

Timothy Hansen
James Cirincione
John McCauley
HANSEN REYNOLDS, LLC
301 N. Broadway, Suite 400
Milwaukee, WI 53202
Tel: (414) 455-7676
thansen@hansenreynolds.com
jcirincione@hansenreynolds.com

jmccauley@hansenreynolds.com

*Counsel for All Plaintiffs*
Kevin M. St. John
Bell Giftos St. John LLC
5325 Wall Street, Suite 2200
Madison, WI 53718
Tel: (608) 216-7990
kstjohn@bellgiftos.com

*Counsel for Uriel Pharmacy, Inc., Uriel Pharmacy Health and Welfare Plan*

SIGNATURE ATTESTATION

As the ECF user whose user ID and password are utilized in the filing of this document, I attest under penalty of perjury that concurrence in the filing of the document has been obtained from the signatory.

Dated: August 5, 2024

*/s/ Itak Moradi*
Itak Moradi

6
Case 2:22-cv-00610-LA    Filed 08/05/24    Page 7 of 7    Document 72