## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

URIEL PHARMACY HEALTH AND
WELFARE PLAN; URIEL
PHARMACY, INC.; HOMETOWN
PHARMACY; AND HOMETOWN
PHARMACY HEALTH and
WELFARE BENEFITS PLAN, on their
own behalf and on behalf of all others
similarly situated,

        Plaintiffs,

   v.

ADVOCATE AURORA HEALTH, INC.
and AURORA HEALTH CARE, INC.,

        Defendants.

Case No. 2:22-cv-610

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)

# TABLE OF CONTENTS

Page

I.   Introduction...................................................................................1

II.  Background....................................................................................2

III. Legal Standard..............................................................................5

IV.  Argument......................................................................................7

    A.   Proposed Co-Lead Counsel Have Undertaken All the
        Investigation and Research for This Litigation....................................7

    B.   Proposed Co-Lead Counsel Have Substantial Experience in
        Leading the Prosecution of Antitrust Class Actions and
        Obtaining Superior Results for Class Members...................................9

        1.   Fairmark Partners, LLP................................................11

        2.   Berger Montague PC...................................................13

        3.   Joseph Saveri Law Firm, LLP ...............................18

    C.   Proposed Co-Lead Counsel Will Continue to Commit the
        Substantial Resources Necessary to Prosecute this Action and
        Protect Class Interests ..........................................................22

    D.   Proposed Co-Lead Counsel Will Ensure Efficient Litigation of
        This Matter ............................................................................23

V.   Conclusion ..................................................................................24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Beasley v. TTEC Servs. Corp.*,
  2022 WL 1719654 (D. Colo. May 27, 2022) ...................................................6

*Dale v. Deutsche Telekom AG*,
  No. 1:22-cv-03189 (N.D. Ill. Dec. 5, 2023), ECF No. 126 ............................6

*Good v. Am. Water Works Co., Inc.*
  2014 WL 2481821 (S.D. W. Va. June 3, 2014) ..............................................5

*In re Capacitors Antitrust Litig.*,
  No. 3:14-cv-03264-JD (N.D. Cal. June 27, 2017), ECF No. 1714 ......... 19-20

*In re Knight Barry Title, Inc. Data Incident Litig.*,
  No. 2:24-cv-00211 (E.D. Wis. May 8, 2024), ECF No. 14 ............................6

*Melgar v. Zicam, LLC*,
  2014 WL 5486676 (E.D. Cal. Oct. 29, 2014) .................................................6

*Moehrl v. Nat'l Ass'n of Realtors*,
  2020 WL 5260511 (N.D. Ill. May 30, 2020) ..................................................6

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  301 F.R.D. 284 (N.D. Ill. 2014) ...................................................................22

*Walker v. Discover Fin. Servs.*,
  2011 WL 2160889 (N.D. Ill. May 26, 2011) ..................................................6

**Statutes**

15 U.S.C. §§ 1 & 2 ..........................................................................................2

**Rules**

Fed. R. Civ. P. 23(g) ............................................................................ *passim*

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.11 (2004)..........................................5

Case 2:22-cv-00610-LA    Filed 10/04/24    Page 4 of 29    Document 83

# I.    INTRODUCTION

Plaintiffs Uriel Pharmacy Health and Welfare Plan, Uriel Pharmacy, Inc., Hometown Pharmacy, and Hometown Pharmacy Health and Welfare Benefits Plan ("Plaintiffs") respectfully move for entry of an order appointing Fairmark Partners, LLP ("Fairmark"), Berger Montague PC ("Berger Montague"), and Joseph Saveri Law Firm, LLP ("JSLF") (collectively, "Proposed Co-Lead Counsel" or "Proposed Co-Leads"), as interim co-lead class counsel pursuant to Fed. R. Civ. P. 23(g)(3). Defendants Advocate Aurora Health, Inc. and Aurora Health Care, Inc. ("Defendants" or "AAH") take no position on this Motion.

Appointing interim co-lead class counsel will ensure the effective representation of the proposed class ("Class") during the crucial parts of litigation that take place before the class is certified. Fairmark, Berger Montague, and JSLF are well-suited for the task. Proposed Co-Lead Counsel have the experience, resources, and track record necessary to provide the Class with the best possible representation. All three firms have successfully led myriad antitrust class actions and have collectively obtained approximately $44 billion dollars in recovery for clients and class members. *See* Declaration of Eric L. Cramer ("Cramer Decl.") ¶ 5; Declaration of Joseph R. Saveri ("Saveri Decl.") ¶ 5. The Proposed Co-Leads have already committed significant time and resources to representing Plaintiffs and the proposed Class, including by conducting the extensive factual investigation

and legal analysis that underly the complaint, briefing and arguing a dispositive motion, and conducting extensive fact discovery. As interim class counsel, Proposed Co-Lead Counsel will continue to ensure the case proceeds effectively and efficiently in the best interests of the Class.

## II.    BACKGROUND

Plaintiffs are employers with health plans who directly purchase healthcare services from AAH, who are proceeding on behalf of a proposed class of similarly situated commercial healthcare plans and insurance companies ("Plans"). ECF No. 46 ("Second Amended Complaint" or "SAC") ¶¶ 21-23, 231. Plaintiffs allege that AAH, which operates the largest hospital system in Wisconsin, has engaged in a variety of anticompetitive contracting and negotiating tactics to suppress competition and artificially inflate prices for hospital services. *Id.* ¶¶ 2, 8, 87. Plaintiffs further allege that, as a result of AAH's conduct, Plaintiffs and members of the proposed Class have paid supracompetitive prices for healthcare services. *Id.* ¶¶ 244, 251. Plaintiffs seek class-wide damages and injunctive and equitable relief under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2.

The complaint is the product of extensive factual investigation and legal analysis. *See* Declaration of Jamie Crooks, Esq. ("Crooks Decl.") ¶ 3. Fairmark began investigating these allegations in 2021 and spent over 700 hours on investigation and preparation before filing the case. *Id.*

Fairmark filed the first complaint ("Complaint") on May 24, 2022. *See* ECF No. 1. Defendants moved to dismiss the Complaint on July 29, 2022. *See* ECF No. 16. On September 15, 2022, Fairmark filed the First Amended Complaint ("FAC"), *see* ECF No. 21, and Defendants moved to dismiss the FAC on October 31, 2022. *See* ECF No. 24. This Court denied Defendants' Motion to Dismiss in full on April 28, 2023. *See* ECF No. 31.

In April of 2023, realizing the size and scope of this case, Fairmark engaged Berger Montague and JSLF as partners. Crooks Decl. ¶ 4; Cramer Decl. ¶ 3; Saveri Decl. ¶ 3. Fairmark selected Berger Montague and JSLF because of each firm's impressive track record of obtaining significant recoveries for class members in antitrust class actions. Crooks Decl. ¶ 4. The three firms have since created an organizational structure among themselves to manage the day-to-day progress of this litigation efficiently. *Id*; Cramer Decl. ¶ 3; Saveri Decl. ¶ 3. Proposed Co-Leads filed the Second Amended Complaint[1] on October 2, 2023. *See* SAC.

Proposed Co-Lead Counsel have taken meaningful steps to prosecute these claims and protect the interests of Plaintiffs and the proposed Class. Proposed Co-Lead Counsel have, for example, negotiated a case schedule with Defendants; negotiated an ESI protocol, protective order, and expert stipulation to govern the discovery with Defendants; negotiated dozens of document requests served on

---

[1] The SAC is the operative complaint.

Defendants and which have resulted in the production of hundreds of thousands of documents; served and negotiated nonparty discovery; worked with Plaintiffs to produce documents in their possession; begun reviewing productions from both Defendants and nonparties; engaged experts; and begun analysis of structured data.

In addition, Proposed Co-Lead Counsel are coordinating litigation efforts with counsel for plaintiffs in *Shaw v. Advocate Aurora Health, Inc.*, No. 2:24-cv-00157 (E.D. Wis.), to ensure these related cases are litigated efficiently. On February 5, 2024, the *Shaw* plaintiffs filed a complaint seeking to represent a class of citizens of Illinois, Michigan, and Wisconsin who are members of commercial health plans[2] that compensated AAH, asserting antitrust violations based on the same conduct at issue here. *See* No. 2:24-cv-00157 (E.D. Wis. February 5, 2024), ECF No. 1. Proposed Co-Lead Counsel has a proven track record of effectively representing class interests in coordinating parallel litigation efforts. *See*, *e.g.*, *Estuary Transit District v. Hartford Healthcare Corp.*, No. 3:24-cv-01051 (D. Conn.) (Berger Montague representing proposed class of direct purchasers of healthcare services and coordinating with Fairmark representing proposed class of indirect purchasers in parallel state action); *In re Mission Health Litig.*, No. 1:22-cv-00114-MR (W.D.N.C.) (Berger Montague representing cities and counties on behalf of a proposed class of health plans and coordinating litigation efforts with

---

[2] In contrast, Plaintiffs in this action seek to represent a class of Plans. SAC ¶ 231.

counsel for class of individuals in a parallel state court action); *In re Opana ER Antitrust Litig.*, No. 1:14-cv-10150 (N.D. Ill.) (Berger Montague serving as co-lead class counsel for direct purchaser class and coordinating litigation efforts with counsel for class of end purchaser plaintiffs in antitrust class action); *In re: Loestrin 24 FE Antitrust Litig.*, No. 1:13-md-2472 (D.R.I.) (same); *In re Juul Labs, Inc. Antitrust Litig.*, No. 3:20-cv-02345 (N.D. Cal.) (JSLF serving as interim lead counsel for direct purchaser plaintiffs and coordinating litigation efforts with counsel for classes of both indirect purchaser plaintiffs and indirect reseller plaintiffs). In coordinating with the *Shaw* plaintiffs, Proposed Co-Leads will ensure this case is litigated in a manner that reduces redundant efforts and collaborates in the best interests of both proposed classes.

## III.    LEGAL STANDARD

It is appropriate under Fed. R. Civ. P. 23(g)(3) to appoint class counsel now. Appointment "of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation (Fourth) § 21.11 (2004); *see also Good v. Am. Water Works Co., Inc.,* 2014 WL 2481821, at *3 (S.D. W. Va. June 3, 2014) ("The interim appointment may produce significant benefits in terms of coordinating the litigation in the pre-certification context.").

These benefits are particularly valuable in antitrust class actions, which typically require extensive and expensive discovery and expert work well before class certification and thus necessitate unified, competent, and court-authorized leadership from the outset. Appointing interim class counsel also provides defendants with certainty that appointed counsel is authorized to engage in long-term case management, discovery, and settlement discussions. In addition, an interim appointment avoids future conflicts over leadership, which can delay resolution of the case and require Court intervention. Courts thus frequently appoint interim class counsel well before class certification in antitrust class actions.[3]

When determining whether to appoint interim class counsel, courts typically apply the factors that govern appointing class counsel upon a grant of class certification. *See*, *e.g.*, *Walker v. Discover Fin. Servs.*, 2011 WL 2160889, at *2 (N.D. Ill. May 26, 2011) ("Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the

---

[3] Courts often appoint interim class counsel in the absence of competing class suits to ensure efficiency and protect the interests of the class. *See*, *e.g.*, *In re: Knight Barry Title, Inc. Data Incident Litig.*, No. 2:24-cv-00211 (E.D. Wis. May 8, 2024), ECF No. 14 (appointing interim class counsel); *Dale v. Deutsche Telekom AG*, No. 1:22-cv-03189 (N.D. Ill. Dec. 5, 2023), ECF No. 126 (appointing Berger Montague and two other firms as interim co-lead counsel in antitrust class action); *Beasley v. TTEC Servs. Corp.*, 2022 WL 1719654, at *2-3 (D. Colo. May 27, 2022) (appointing interim lead counsel); *Moehrl v. Nat'l Ass'n of Realtors*, 2020 WL 5260511, at *2 (N.D. Ill. May 30, 2020) (appointing three firms as interim lead counsel); *Melgar v. Zicam, LLC*, 2014 WL 5486676, at *2 (E.D. Cal. Oct. 29, 2014) (appointing interim class counsel).

considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification."). Those factors are: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Courts may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## IV. ARGUMENT

Proposed Co-Lead Counsel are experienced antitrust litigators who have already demonstrated their ability to work cooperatively and efficiently to prosecute this case. Proposed Co-Lead Counsel: (1) undertook all the investigative work to develop Plaintiffs' claims; (2) possess substantial experience in leading the prosecution of antitrust class actions and obtaining exceptional results for class members; (3) will continue to commit the substantial resources necessary to prosecute this action; and (4) will ensure this case is litigated efficiently.

### A. Proposed Co-Lead Counsel Have Undertaken All the Investigation and Research for This Litigation

Fed. R. Civ. P. 23(g)(1)(A)(i) directs the Court to consider "the work counsel has done identifying or investigating" claims in the present action when

7

assessing the appointment of lead counsel. The Complaint, filed on May 24, 2022, followed by the FAC and SAC, contains 80 pages of detailed factual allegations and thorough legal analysis supported by numerous sources and data. *See* Compl.; FAC; SAC. The Complaint is the first to raise the allegations in this case, and it is the product of Fairmark's substantial, independent investigation that started in 2021. Crooks Decl. ¶ 3. In total, Fairmark spent over 700 hours on investigation and preparation before filing this case. *Id.*

Proposed Co-Lead Counsel have continued to push this case forward and advocate zealously on behalf of Plaintiffs. After Plaintiffs defeated Defendants' Motion to Dismiss, discovery commenced on June 23, 2023. *See* ECF No. 41 ¶ 1. Since then, Proposed Co-Leads have negotiated a case schedule with Defendants; negotiated an ESI protocol, protective order, and expert stipulation to govern the case with Defendants; served and negotiated document requests on Defendants; served and negotiated nonparty discovery; begun reviewing productions from both Defendants and nonparties; engaged experts, and begun analyzing structured data. This work has involved extensive meet and confers with Defendants regarding, for example, custodians, the parties' use of TAR and search terms, the relevant time period for productions, and the parties' responses and objections to written discovery. In addition, Proposed Co-Leads have been negotiating with numerous nonparties for several months regarding search terms, custodians, the relevant time

period, and those nonparties' responses and objections to Plaintiffs' discovery requests.

**B.    Proposed Co-Lead Counsel Have Substantial Experience in Leading the Prosecution of Antitrust Class Actions and Obtaining Superior Results for Class Members**

Fed. R. Civ. P. 23(g)(1)(A)(ii) directs the Court to consider proposed Class counsel's experience "in handling class actions, other complex litigation, and the types of claims asserted in the [present] action." Similarly, Fed. R. Civ. P. 23(g)(1)(A)(iii) directs the Court to consider "counsel's knowledge of the applicable law" in the present case.

Proposed Co-Leads have prosecuted some of the most complex, significant antitrust class actions and have obtained some of the largest class action verdicts and settlements in history, recovering billions of dollars as well as injunctive relief for consumers and businesses. *See* Crooks Decl. ¶ 7; Cramer Decl. ¶ 5-7; Saveri Decl. ¶¶ 5-6. Their experience includes challenging anticompetitive contracting practices and restraints imposed by hospitals, like the conduct alleged here. *See, e.g.*, *Estuary Transit District v. Hartford Healthcare Corp.*, No. 3:24-cv-01051 (D. Conn.) (Berger Montague representing plaintiffs in class action alleging dominant hospital provider has engaged in anticompetitive scheme resulting in supracompetitive healthcare prices; *Team Schierl Cos. v. Aspirus, Inc.* ("*Aspirus*"), No. 3:22-cv-00580 (W.D. Wis.) (Fairmark and Berger Montague

9

representing plaintiffs in class action alleging that dominant hospital system uses exclusionary contracts to foreclose competition from rival health care providers); *In re Mission Health Litig.*, No. 1:22-cv-00114-MR (W.D.N.C.) (Berger Montague representing cities and counties on behalf of a proposed class of health plans in North Carolina alleging overcharges by dominant hospital system); *Ross v. Univ. of Pittsburgh Med. Ctr.*, No. 24-cv-00016-SPB (W.D. Pa.) (JSLF representing plaintiffs in class action alleging that University of Pittsburgh Medical Center illegally obtained and wielded monopsony power to suppress employee wages and foreclose competition).

The Proposed Co-Leads also have extensive experience prosecuting antitrust class actions together. *See*, *e.g.*, *Aspirus*, No. 3:22-cv-00580, (W.D. Wis.) (Fairmark and Berger Montague); *Giordano v. Saks Inc.*, No. 1:20-cv-00833- (E.D.N.Y.) (Berger Montague and JSLF); *Le v. Zuffa, LLC*, No. 2:15-cv-01045 (D. Nev.) (same); *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD (N.D. Cal.) (same); *In re: High-Tech Employee Antitrust Litig.*, No. 5:11-cv-02509-LHK (N.D. Cal.) (same); *In re Titanium Dioxide Antitrust Litig.*, No. 10-cv-00318-RDB (D. Md.) (same). Their vast collective experience is detailed below and in the attached firm resumes and attorney bios. *See* Exhibit 1 to Crooks Decl., Exhibit 1 to Cramer Decl., and Exhibit 1 to Saveri Decl.

### 1. Fairmark Partners, LLP

Founded in 2021, Fairmark pursues targeted, impactful litigation primarily against corporations. Fairmark's attorneys are experienced in, *inter alia*, appellate, antitrust, employment, and civil rights work.

Fairmark's attorneys have significant experience litigating complex cases, including numerous major class actions and specifically including class actions involving hospital systems such as *Brown v. Hartford Healthcare Corp.*, No. 03-CV22-6152239 (Conn. Super. Ct.), *Davis v. HCA Healthcare Inc.,* No. 21-CVS-3276 (N.C. Super. Ct.), and the aforementioned *Aspirus*, No. 3:22-cv-00580 (W.D. Wis.). Crooks Decl. ¶ 7. Fairmark has been appointed lead counsel in complex class actions, specifically in *Houghton v. Leshner*, No. 22-CV-07781, 2023 WL 2485785, at *3 (N.D. Cal. Mar. 13, 2023) and *Samuels v. Lido DAO*, 4:23-cv-6492 (N.D. Cal.). Finally, Fairmark is experienced in working alongside and coordinating with Berger Montague, including *Diaz v. Amick Farms, LLC.*, No. 5:22-cv-01246 (D.S.C.) (Fairmark and Berger Montague) and *Aspirus* (Fairmark and Berger Montague).

The Fairmark attorneys leading this case on a day-to-day basis are Jamie Crooks, Eric Chianese, Michael Lieberman, and Yinka Onayemi.

**<u>Jamie Crooks</u>:** Mr. Crooks, a founding partner of Fairmark Partners, has significant experience litigating complex cases, including numerous major class

actions in federal courts across the country. After clerking for the U.S. Court of Appeals for the Ninth Circuit and the U.S. Supreme Court, where he advised the courts on several complex class-action cases, Crooks joined the international law firm O'Melveny & Myers, LLP, where he was a litigation associate for several years. Crooks Decl. ¶ 6. There, he litigated complex commercial cases, including class actions, relating to financial products, insurance, products liability, and consumer protection at the federal trial, court of appeals, and Supreme Court levels. *Id.*

**Eric Chianese:** Mr. Chianese spent seven years as a litigation attorney at O'Melveny & Myers, most recently as a counsel in the firm's Los Angeles office. He was a member of O'Melveny's Product Liability & Mass Torts and Insurance Litigation practice groups, specializing in complex, multi-jurisdictional litigation. Mr. Chianese focused his practice on pharmaceutical matters alleging novel theories of nuisance and matters alleging consumer fraud claims such as false advertising and unfair competition.

**Michael Lieberman:** Mr. Lieberman is an experienced appellate litigator, brief writer, and legal strategist. Prior to joining Fairmark, he practiced law at Bancroft PLLC and Kirkland & Ellis LLP, where he specialized in Supreme Court and appellate litigation. His matters have involved a wide range of substantive issues, including antitrust, bankruptcy, civil rights, class actions, constitutional law,

criminal law, employment law, immigration law, international law, products liability, and sovereign immunity. Mr. Lieberman also served as a law clerk to the Honorable Jennifer W. Elrod of the United States Court of Appeals for the Fifth Circuit and the Honorable Ellen Lipton Hollander of the United States District Court for the District of Maryland.

**Yinka Onayemi:** Mr. Onayemi spent several years as an attorney at Orrick, Herrington & Sutcliffe where he leveraged his cross-practice experience in commercial litigation and white collar defense to represent clients in civil and criminal matters. He worked with Orrick's commercial litigation team to advise defendants and plaintiffs in high-stakes tort- and contract-based legal actions in jurisdictions across the country. Mr. Onayemi has maintained a robust pro bono practice, representing clients in issues related to reproductive rights, civil rights, international human rights, and immigration.

### 2. Berger Montague PC

Described by *Chambers & Partners* as "highly distinguished for the strength of its plaintiff-side work acting on monopoly matters and price-fixing, including an impressive track record in complex, high-profile class actions," Berger Montague boasts one of the largest and most experienced plaintiff-side antitrust departments in the country. It pioneered the antitrust class action and has been engaged in complex litigation for more than fifty years.

13

Berger Montague's recent successes as lead or co-lead counsel in antitrust class actions are numerous. They include *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-md-1720 (S.D.N.Y.) (settlement of approximately $5.6 billion, one of the largest in antitrust class action history); *Henry v. Brown University*, No. 22-cv-125 (N.D. Ill.) ($284 million in settlements to date in college financial aid conspiracy suit); and *In re Broiler Chicken Grower Antitrust Litigation*, No. 6:20-md-2977 (E.D. Okla.) ($169 million class settlement on behalf of class of chicken farmers), to name a few. Cramer Decl. ¶ 6.

Berger Montague is also currently lead or co-lead counsel in more than two dozen of the largest and most complex antitrust class actions in courts around the country, including *Le v. Zuffa, LLC*, No. 2:15-cv-01045, (D. Nev.) (as co-lead counsel with JSLF, secured class certification for class of elite mixed martial arts athletes alleging the UFC unlawfully suppressed fighters' compensation); and *Aspirus*, No. 3:22-cv-00580 (W.D. Wis.) (co-lead counsel with Fairmark representing plaintiffs in class action alleging that dominant hospital system uses exclusionary contracts to foreclose competition from rival health care providers). Cramer Decl. ¶ 7.

Berger Montague has deep experience leading antitrust class actions in the healthcare space, and in particular in antitrust actions against dominant health systems. *See*, *e.g.*, *In re Mission Health Antitrust Litig.*, No. 1:22-cv-00114-MR

(W.D.N.C.) (co-lead counsel representing cities and counties in North Carolina alleging overcharges by dominant hospital system); *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488 (S.D.N.Y.) (co-lead obtaining $750 million class settlement on behalf of drug direct purchasers); *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696 (E.D.N.Y.) (co-lead obtaining $80 million settlement on behalf of dental providers); *King Drug Co. of Florence, Inc. v. Cephalon Inc.*, No. 06-cv-1797 (E.D. Pa.) ($512 million class settlement on behalf of drug direct purchasers); *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-7178 (D.N.J.) (co-lead obtaining $61.5 million for providers in suit against vaccine manufacturer); *Mayor and City Council of Baltimore v. Merck Sharp & Dohme Corp.*, No. 23-cv-828 (E.D. Pa.) (co-lead in ongoing case alleging anticompetitive conduct by vaccine manufacturer).

The firm also has significant recent trial experience, obtaining excellent results in *In re Capacitors Antitrust Litigation*, No. 14-cv-3264 (N.D. Cal.) (total settlements over $600 million, including several occurring during jury trials in 2020 and 2021), *In re Opana ER Antitrust Litig*ation, No. 14-cv-10150 (N.D. Ill.) ($145 million settlement just prior to trial), and *United States v. Johnson & Johnson*, No. 12-cv-7758 (D.N.J.) (jury verdict in 2024 of well over $150 million in *qui tam* matter). Cramer Decl. ¶ 9.

The Berger Montague Shareholders leading this case on a day-to-day basis are Eric L. Cramer, Daniel J. Walker, and Michaela L. Wallin.

**Eric L. Cramer:** Mr. Cramer is Chairman of the firm, Co-Chair of the Antitrust Department, and has a national practice in the field of complex litigation. Mr. Cramer leads multiple antitrust class actions around the United States— including representing direct purchasers of healthcare services in *Team Schierl Cos. et al. v. Aspirus, Inc. et al.*, No. 3:22-cv-00580 (W.D. Wis.); *In re Mission Health Antitrust Litigation*, No. 1:22-cv-00114-MR (W.D.N.C.); and *Estuary Transit District v. Hartford Healthcare Corp.*, No. 3:24-cv-01051 (D. Conn.); as well as representing healthcare workers in a case alleging two hospitals suppressed healthcare worker pay, *In re Geisinger Healthcare Workers Antitrust Litig.*, No. 21-cv-196 (M.D. Pa.). Cramer Decl. ¶ 11.

*Chambers USA* has recognized Mr. Cramer as a "Band 1" antitrust practitioner for over 20 years, most recently noting that "[h]e excels in economic analysis" and "is a real leader" that sits at the "[t]op of the profession; a phenomenal lawyer who is an expert on economics" and "really a tremendous advocate in the courtroom, with a very good mind and presence." He was designated a "Distinguished Leader" by *The Legal Intelligencer*, "Lawyer of the Year" by *Best Lawyers*, a "Titan of the Plaintiffs Bar" by *Law360*, a "Champion of Justice" by Public Justice, and a "Visionary" by *The National Law Journal*. Teams

16

led by Mr. Cramer have also won AAI's Antitrust Enforcement Award three times. *Id.* ¶ 12.

**<u>Daniel J. Walker</u>:** Mr. Walker is a Shareholder in Berger Montague's Antitrust Department and leads the firm's Washington, DC office. Mr. Walker maintains a national practice representing plaintiffs, including direct purchasers and workers, in antitrust actions involving the health care industry. He has played an important role on numerous lead counsel teams in antitrust cases, including leading the firm's numerous hospital monopolization cases, including *Team Schierl Cos. et al. v. Aspirus, Inc. et al.*, No. 3:22-cv-00580 (W.D. Wis.); *In re Mission Health Antitrust Litigation*, No. 1:22-cv-00114-MR (W.D.N.C.); and *Estuary Transit District v. Hartford Healthcare Corp.*, No. 3:24-cv-01051 (D. Conn.). Prior to rejoining the firm in 2017, Mr. Walker was an attorney in the Health Care Division of the Federal Trade Commission. Mr. Walker has been named a Washington DC "Superlawyer" many times and most recently won the American Antitrust Institute's award for "Outstanding Antitrust Litigation Achievement in Private Practice." Mr. Walker clerked for Judge Richard C. Wesley on the United States Court of Appeals for the Second Circuit.

**<u>Michaela L. Wallin</u>:** Ms. Wallin is a Shareholder in the firm's Antitrust and Employment Law Departments. Ms. Wallin litigates complex cases on behalf of workers, consumers, businesses, and public entities, with a focus on antitrust and

17

labor matters. Ms. Wallin has played significant roles in class actions challenging anticompetitive conduct in a variety of industries, including conspiracies to fix the prices of commodities, to suppress workers' wages, and to keep less-expensive generic pharmaceuticals off the market. Prior to joining Berger Montague, Ms. Wallin served as a law clerk for the Honorable James L. Cott of the United States District Court of the Southern District of New York.

### 3. Joseph Saveri Law Firm, LLP

JSLF is one of the country's most acclaimed and successful boutique firms specializing in antitrust, class action, complex business disputes, securities, generative artificial intelligence, intellectual property, and consumer protection. Saveri Decl. ¶ 5; *see also id.*, Ex. 1. Since its inception twelve years ago, JSLF has recovered over $4.7 billion in settlements and successful resolutions for consumers, employees, and creators across numerous sectors on a variety of antitrust violations, including price-fixing, monopolization, no-poach agreements, and pay-for-delay agreements in the pharmaceuticals, technology, banking and financial services, transportation, and sports industries. Saveri Decl. ¶ 5. The firm's attorneys are accomplished in all phases of complex trial litigation and have been awarded by the American Antitrust Institute, *Chambers & Partners*, Martindale-Hubbell, *Best Lawyers*, *Law360*, *Daily Journal*, *Who's Who Legal*, *The Legal 500*, and other organizations for their distinguished leadership. *Id.* JSLF is

the only firm in California to be ranked by *Chambers & Partners* as "Band 1" in its "Antitrust: Mainly Plaintiff—California." Significantly, JSLF has a well-deserved reputation as one of a select few firms in the United States trying complex antitrust class actions and other cases. *Id.*

JSLF has served in dozens of court-appointed leadership positions, including its recent successes as Lead Counsel in *In re Capacitors Antitrust Litigation*, No. 3:14-cv-03264-JD (N.D. Cal.) (class settlements total over $604 million, well in excess of single damages, with $165 million obtained during a successful 2021 trial), as Co-Lead Counsel in *In re Cipro Cases I and II*, J.C.C.P. Nos. 4154 & 4220 (Sup. Ct. Ca.) ($399 million total recovery after obtaining a reversal of a lower court summary judgment in the California Supreme Court), and as Co-Lead as Co-Lead Counsel in *Le v. Zuffa, LLC*, No. 2:15-cv-01045 (D. Nev.). Saveri Decl. ¶ 6.

For example, in *Capacitors*, where JSLF was Lead Counsel and recently obtained extraordinary results for the plaintiff class at trial, Judge Donato remarked on the firm's skill and expertise: "[the] docket and the procedural history in this case demonstrate Counsel's expertise and the Direct Purchaser Plaintiffs' successes to date. . . . Counsel have done much to effectively prosecute the Class' claims, and to do so efficiently. Counsel have not come by their success in this litigation

19

easily [as] Defendants . . . have hired the best antitrust counsel money can buy to defend them." No. 14-cv-03264 (N.D. Cal. June 27, 2017), ECF No. 1714 at 7.

JSLF's vast antitrust experience includes challenging anticompetitive contracting practices and restraints imposed in the hospital industry. *See*, *e.g.*, *Ross v. Univ. of Pittsburgh Med. Ctr.*, No. 24-cv-00016-SPB (W.D. Pa.) (JSLF representing plaintiffs in class action alleging that University of Pittsburgh Medical Center illegally obtained and wielded monopsony power to suppress employee wages and foreclose competition)*.* Saveri Decl. ¶ 7.

The JSLF attorneys leading this case on a day-to-day basis are Joseph R. Saveri, Itak K. Moradi, David Lerch, and Latoya R. Concepcion.

**Joseph R. Saveri:** Mr. Saveri, Founder and Managing Partner of JSLF, has an extensive and illustrious career in complex antitrust litigation, achieving superlative results and making groundbreaking precedents in landmark cases. Saveri Decl. ¶ 10. Mr. Saveri is among the most experienced class action and antitrust attorneys in the United States. The cases he has led include cases in the health care and pharmaceutical industries, as well as recently with respect to copyright and intellectual property claims on behalf of copyright holders against the companies developing, selling, and marketing generative artificial intelligence products. In addition, Mr. Saveri has demonstrated his commitment to the profession by serving on multiple committees charged with developing rules,

programs, and guidelines regarding complex litigation, electronic discovery, and

trial procedure. *Id*. Mr. Saveri has received numerous awards and accolades

including the California Lawyer of the Year and most recently, recognition as one

of the top 100 Plaintiffs Lawyers in California. *Id.* & Ex. 1 at 24-25.

**Itak K. Moradi:** Ms. Moradi's practice has focused on litigating high-stakes

fraud and deceitful business practices. She brings a passion for public advocacy to

her work and is a precise and creative litigator. From 2020-present, Ms. Moradi

has been selected by Super Lawyers as a Northern California Super Lawyer

"Rising Star." She has been named by Best Lawyers as "One to Watch" (2024).

She is a member of the San Francisco Trial Lawyers Association, Iranian

American Bar Association, and Anti-Fraud Alliance, and is an associate fellow of

the Litigation Counsel of America.

**David Lerch:** Mr. Lerch's practice covers a range of antitrust cases,

including a class action involving a no-poach agreement by a nationwide tax

preparation firm and a buy-out by a large tobacco company. Over his legal career,

Mr. Lerch has successfully handled complex federal and state court litigation,

including antitrust matters involving patent pools and standard essential patents,

no-poach agreements, monopolization, and buyouts. Earlier in his career, he

clerked for Judge Christina Snyder in the United States District Court for the

Central District of California.

**Latoya R. Concepcion:** Ms. Concepcion's practice focuses on antitrust and consumer protection cases. She works diligently to ensure she reaches her most important goal: favorable outcomes for the firm's clients. She is a core part of the teams litigating a class action involving price-fixing of generic drugs as well as a class action involving price-fixing of goods and services in the competitive cheer market.

### C. Proposed Co-Lead Counsel Will Continue to Commit the Substantial Resources Necessary to Prosecute this Action and Protect Class Interests

Under Rule 23(g), the Court must consider whether proposed lead counsel has sufficient resources to effectively represent the class. *See* Fed. R. Civ. P. 23(g)(1)(iv). The Court must be satisfied that counsel "will commit sufficient attorney time and financial resources to vigorously prosecute the putative class's claims." *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 289 (N.D. Ill. 2014).

This case seeks recovery for years of overcharges for hospital services. Plaintiffs face a difficult and resource-intensive fight. There will be multiple expert reports, dozens of depositions, and the need to review, search through, and analyze the hundreds of thousands of documents anticipated from Defendants and numerous nonparties. Defendants have the resources to hire, and have hired, top-notch defense counsel to defeat Plaintiffs' claims. As evidenced by the

numerous examples listed above, Proposed Co-Lead Counsel has shown the acumen and commitment to devote the resources, and to commit a roster of talented attorneys and capable professional staff, to litigate these claims efficiently and aggressively in the interests of justice. Proposed Co-Lead Counsel have already demonstrated their commitment, dedicating significant time and resources advancing this litigation to date. They can be expected to do so in the future.

### D. Proposed Co-Lead Counsel Will Ensure Efficient Litigation of This Matter

Rule 23(g)(1)(B) states that a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Proposed Co-Lead Counsel are committed to coordinating efforts to ensure this case is litigated efficiently and economically. Proposed Co-Lead Counsel is comprised of three law firms with leanly staffed teams that will provide nimble expert representation. With the exception of assistance from competent local counsel, the Proposed Co-Leads plan to litigate the case themselves. As a result, a small number of attorneys will spend a large proportion of their time litigating this case, leading to deep institutional knowledge of the facts, and ensuring excessive attorney time is not billed and excessive costs are not incurred.

# V. CONCLUSION

Plaintiffs respectfully request that the Court appoint Fairmark, Berger Montague, and JSLF as interim co-lead class counsel. A proposed order is attached.

Dated: October 4, 2024                                   Respectfully submitted,

*/s/ Jamie Crooks*
Jamie Crooks
Michael Lieberman
FAIRMARK PARTNERS, LLP
1001 G Street, NW
Suite 400E
Washington, DC 20001
Tel: (619) 507-4182
jamie@fairmarklaw.com
michael@fairmarklaw.com

*/s/ Daniel J. Walker*
Daniel J. Walker
BERGER MONTAGUE PC
1001 G Street, NW
Suite 400 East
Washington, D.C. 20001
Tel: (202) 599-9745
dwalker@bm.net

*/s/ Michaela L. Wallin*
Eric L. Cramer
Michaela L. Wallin
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bm.net
mwallin@bm.net

*/s/ Joseph R. Saveri*
Joseph R. Saveri
Itak Moradi
David Lerch
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1505
San Francisco, CA 94108
Tel: (415) 500-6800
jsaveri@saverilawfirm.com
imoradi@saverilawfirm.com
dlerch@saverilawfirm.com

24

*/s/ Timothy Hansen*
Timothy Hansen
James Cirincione
John McCauley
HANSEN REYNOLDS, LLC
301 N. Broadway, Suite 400
Milwaukee, WI 53202
Tel: (414) 455-7676
thansen@hansenreynolds.com
jcirincione@hansenreynolds.com
jmccauley@hansenreynolds.com

**Counsel for All Plaintiffs**

*/s/ Kevin M. St. John*
Kevin M. St. John
BELL GIFTOS ST. JOHN LLC
5325 Wall Street, Suite 2200
Madison, WI 53718
Tel: (608) 216-7990
kstjohn@bellgiftos.com

**Counsel for Uriel Pharmacy, Inc., Uriel
Pharmacy Health and Welfare Plan**