UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

URIEL PHARMACY HEALTH AND WELFARE
PLAN; URIEL PHARMACY, INC.;
HOMETOWN PHARMACY; and HOMETOWN
PHARMACY HEALTH AND WELFARE
BENEFITS PLAN, on their own behalf and on
behalf of all others similarly situated,

    Plaintiffs,

  v.

ADVOCATE AURORA HEALTH, INC. AND
AURORA HEALTH CARE INC.,

    Defendants.

Case No. 2:22-cv-610-LA

**PLAINTIFFS' CIVIL L. R. 7(h) EXPEDITED NON-DISPOSITIVE
MOTION TO COMPEL PRODUCTION OF DEFENDANTS' "MERGER FILES"**

# INTRODUCTION

This action alleges that Defendants Advocate Aurora Health Inc. and Aurora Health Inc. (together, "AAH") unlawfully monopolized health care markets in Wisconsin by imposing anticompetitive contractual restraints on insurers that blocked competition and raised hospital prices. This "All Plans" restraint—which AAH uniformly imposed and enforced across all health insurance plans in Eastern Wisconsin—banned numerous insurance products that would encourage price competition. AAH could impose this restraint on unwilling insurers because of, *inter alia*, the market power AAH accumulated through mergers and acquisitions. When AAH merged with or acquired a competitor, it immediately applied the restraint to the newly acquired entities to obtain higher prices and limit competition; the restraint's impact was aggravated by other restrictions AAH imposed on referrals and physician competition at newly merged or acquired facilities; and the mergers or acquisitions expanded AAH's power in the market. Nevertheless, AAH refuses to produce *any* documents from its "Merger Files," a compendium of merger and acquisition transaction documents that is already organized and that AAH has already begun to review. While Plaintiffs have sought to avoid burdening the Court, AAH's flat refusal to consider producing Merger Files in a monopolization case warrants the Court's intervention.

After over a year of document discovery, AAH for the first time notified Plaintiffs on July 10, 2024, of the existence of "Merger Files," which (AAH noted on July 19) contain "hard copy transaction documents for certain acquisitions" that were "non-custodial." After conducting an initial review of these files in response to a request from Plaintiffs, AAH stated that they were not relevant because they contained "executed contracts" and not "correspondence" related to the transactions. Declaration of Jamie Crooks ("Crooks Decl."), Ex. A.

Plaintiffs disagreed, and in several letters and conferrals noted that the Second Amended Complaint ("SAC") alleges that AAH's merger-and-acquisition strategy was instrumental to its

1

market power and also evidenced the restraint's anticompetitive purpose, both of which are highly relevant. When AAH continued to refuse to produce *any* Merger Files due to its relevance and burden objections, Plaintiffs offered on September 6 a compromise wherein AAH would produce Merger Files from only 2000 to 2006, the time period surrounding when AAH imposed the All Plans restraint. Crooks Decl., Ex. B. On October 11, AAH reiterated that it would produce no such files, offered no counterproposal, and agreed that the parties had reached impasse. Crooks Decl., Ex. C. Plaintiffs now ask the Court to compel production of the Merger Files from 2000 to present.

**DISCUSSION**

Rule 26 permits parties to "obtain discovery . . . that is relevant to any party's claim or defense." A document is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *B.A. v. Bohlmann*, 2010 WL 11688355, at *1 (W.D. Wis. Nov. 12, 2010). As the objecting party, AHH "bears the burden in showing why the request is improper." *Share Corp. v. Momar Inc.*, 2011 WL 2600740, at *3 (E.D. Wis. June 29, 2011).

The Merger Files are directly relevant to this monopolization action for four key reasons, all of which Plaintiffs have already articulated in detail to AAH. **First**, as Plaintiffs have noted, the Second Amended Complaint ("SAC") expressly alleges that when AAH acquires a physician practice it imposes the contractual restraints at issue in this case in all of that practice's payer/provider contracts. SAC ¶¶ 8, 155, 162. The surest way to prove this allegation is that practice's contracts, which AAH has confirmed the Merger Files contain. **Second**, the SAC alleges that such mergers give AAH greater market power with payers, in particular due to AAH's practice of negotiating with insurers on an "all or nothing" basis. Thus, "[t]he acquired facilities' ability to add to AAH's market power depends in part on the terms of the acquisition, including whether the

2

facility maintains any ability to contract independently, the fate of its existing managed care contracts, and its billing relationship to nearby AAH facilities." Crooks Decl., Ex. D; *see also* SAC ¶¶ 12, 159 & 160. Discovery thus far indicates that leveraging acquired facilities to extract more contractual concessions from insurers was a purposeful strategy AAH often discussed internally; the Merger Files will help prove how AAH implemented this strategy, which goes both to anticompetitive intent and market power. ***Third***, the SAC alleges that AAH also forces onerous non-competes on physician groups it acquires and cites a specific example. SAC ¶ 136. The Merger Files, which contain these employment contracts, "are the most obvious source to confirm that AAH imposes non-competes" on acquired practices. Crooks Decl., Ex. D. ***Finally***, the SAC alleges that one reason AAH acquires competitors is to "aggressively limit [those] physicians from referring outside of the AAH system," SAC ¶ 143, an allegation that will be readily shown (or disproved) by the contracts in the Merger Files.

AAH's response that some of these files will be turned over through custodial searches is unavailing. AAH is only searching custodial files back to 2014, but it first implemented the restraints and its acquisition strategy in the early 2000s. Moreover, AAH acknowledges that the Merger Files do not reside in any custodian's email and thus will not be identified through custodial searches. Finally, that these documents are already segregated drastically limits the burden of retrieving and producing them. Indeed, AAH has already identified the Merger Files and begun to review them; any additional burden in producing them is far outweighed by their relevance.

## CONCLUSION

Plaintiffs respectfully request that the Court compel production of the Merger Files from 2000 (about three years before AAH imposed the All Plans restraint) to present.

3

Dated: October 17, 2024

                                                */s/ Jamie Crooks*

| | |
|---|---|
| Eric L. Cramer<br>Michaela L. Wallin<br>**BERGER MONTAGUE PC**<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103<br>Ph: (215) 875-3000<br>Email: ecramer@bm.net<br>mwallin@bm.net<br>**Counsel for All Plaintiffs**<br><br>Daniel J. Walker<br>1001 G Street, NW, Ste. 400E<br>**BERGER MONTAGUE PC**<br>Washington, DC 20006<br>Ph: (202) 559-9745<br>Email: dwalker@bm.net<br>**Counsel for All Plaintiffs**<br><br>Timothy Hansen<br>James Cirincione<br>**HANSEN REYNOLDS, LLC**<br>301 N. Broadway, Suite 400<br>Milwaukee, WI 53202<br>Email: thansen@hansenreynolds.com<br>jcirincione@hansenreynolds.com<br>**Counsel for All Plaintiffs** | Jamie Crooks<br>Michael Lieberman<br>Eric Chianese<br>**FAIRMARK PARTNERS, LLP**<br>1001 G Street, NW, Ste. 400E<br>Washington, DC 20001<br>Ph: (619)507-4182<br>Email: jamie@fairmarklaw.com<br>michael@fairmarklaw.com<br>eric@fairmarklaw.com<br>**Counsel for All Plaintiffs**<br><br>Joseph R. Saveri<br>Itak Moradi<br>**JOSEPH SAVERI LAW FIRM, LLP**<br>601 California Street, Suite 1000<br>San Francisco, CA 94108<br>Ph: (415) 500-6800<br>Email: jsaveri@saverilawfirm.com<br>imoradi@saverilawfirm.com<br>**Counsel for All Plaintiffs**<br><br>Kevin M. St. John, SBN 1054815 5325<br>**BELL GIFTOS ST. JOHN LLC**<br>Wall Street, Suite 2200<br>Madison, WI 53718<br>Ph: (608) 216-7990<br>Email: kstjohn@bellgiftos.com<br>**Counsel for Uriel Pharmacy Inc., Uriel Pharmacy Health and Welfare Plan** |