# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**URIEL PHARMACY HEALTH**
**AND WELFARE PLAN, et al.,**
          **Plaintiffs,**

    **v.**                                 **Case No. 22-C-0610**

**ADVOCATE AURORA HEALTH, INC., et al.,**
          **Defendants,**

_____

**PATRICK SHAW, et al,,**
          **Plaintiffs,**

    **v.**                                 **Case No. 24-C-0157**

**ADVOCATE AURORA HEALTH, INC., et al.,**
          **Defendants.**

_____

## DECISION AND ORDER

In two separate cases, groups of plaintiffs bring antitrust claims against Advocate Aurora Health, Inc., and Aurora Health Care, Inc. (collectively "AAH"). This order addresses seven discovery motions that have been filed over the last few months, plus a few administrative motions associated with the discovery motions.

### I. BACKGROUND

The plaintiffs in the _Uriel_ case are two employers, Uriel Pharmacy, Inc., and Hometown Pharmacy, that offer health benefits to their employees through self-funded plans. The plans are also named as plaintiffs. The plaintiffs in the _Shaw_ case, Patrick and Debra Shaw, are two individuals who receive their health insurance from Anthem Blue Cross and Blue Shield of Wisconsin through Patrick's employer, a golf course in Sheboygan, Wisconsin.

1

According to the allegations of the complaints, AAH is the largest hospital system in Wisconsin and the dominant hospital system in Eastern Wisconsin. Plaintiffs contend that AAH has contributed to the high cost of health care in Wisconsin by committing antitrust violations that allow it to charge supracompetitive prices. The alleged antitrust violations consist of restraints of trade prohibited by Section 1 of the Sherman Act and monopolization and attempted monopolization offenses prohibited by Section 2. The Shaws also bring similar restraint-of-trade and monopolization claims under Wisconsin antitrust law.

The specific restraints of trade at issue relate to AAH's strategy for negotiating with health insurers that desire to include AAH's providers and facilities within their networks. Plaintiffs allege that, due to its market power, AAH can impose contractual terms on nearly all insurers that restrain the market for health services in Eastern Wisconsin. For example, when an insurer wishes to build a network that includes some of AAH's most in-demand facilities, AAH requires the insurer to include all of its providers and facilities within the network, even if the insurer may wish to exclude some providers and facilities that are less desirable. Similarly, AAH will contractually require an insurer that wishes to include AAH in any of its networks or plans to include AAH in all of the plans and networks that the insurer offers to customers. Plaintiffs also allege that AAH imposes contractual terms that prevent insurers from offering "innovative insurance products" that use features such as referenced-based pricing, in which an insurer bases its payments to a provider on a percentage above the provider's Medicare rates. Plaintiffs allege that, through these and other restraints, AAH charges supracompetitive prices to health insurers, who pass those costs on to consumers like the Shaws and to self-funded plans like Uriel and Hometown that "rent" access to the provider networks offered by insurers.

2

Plaintiffs' monopolization and attempted monopolization claims are largely based on the same allegations about AAH's contracting strategy with insurers. These claims, however, add the allegation that AAH either has monopoly power or is attempting to acquire monopoly power in a relevant market.

Before me now are several motions to compel discovery filed by plaintiffs and AAH against each other and third-party subpoena respondents.

## II. DISCUSSION

### A.  The Shaws' Motion to Compel Production of Illinois Documents

The Shaws move to compel AAH to produce its contracts with Illinois insurers and documents relating to negotiations between AAH and insurers following an April 2018 merger between Aurora Health Care and Advocate Health Care of Illinois that created the AAH entity. AAH has refused to produce these documents on the grounds that the documents are irrelevant and that collecting, reviewing, and producing them would impose a burden that is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). AAH's relevance argument rests on the fact that Illinois is outside the geographic markets alleged in the complaint. Its undue-burden argument rests on the fact that plaintiffs' requests call for potentially hundreds of thousands of additional documents. AAH notes that it has at least 538 contract documents with two large Illinois insurers and additional contracts with approximately 40 other Illinois insurers. Further, with respect to negotiation documents, AAH anticipates that the potentially responsive documents possessed by its lead negotiator in Illinois would add more than 100,000 documents to its review.

For three reasons, plaintiffs contend that the Illinois documents are relevant, and that the burden of responding is proportional. First, plaintiffs contend that AAH's "market

3

power in Illinois affects Wisconsin border regions, and vice versa." (Mot. at 2.) But plaintiffs do not adequately explain what they mean by this. If Wisconsin and Illinois are separate markets, then it's not clear why AAH's market power in Illinois would be relevant to plaintiffs' claims alleging supracompetitive prices in Wisconsin. Plaintiffs contend that AAH might argue that some of the alleged geographic markets include portions of Illinois because they are located on the border. But even if that is so, I do not see how that makes AAH's contracts with Illinois payors relevant. A geographic market is determined by looking for the area in which purchasers can practicably turn for supply, not by examining a single supplier's contracts with its customers within a potential market. *See Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 738 (7th Cir. 2004) ("[C]ontracts represent transactions that have occurred within the market. The question of what transactions have occurred in the market is subsequent to and therefore irrelevant to the definition of the market itself."). Thus, I cannot envision any way in which the Illinois contract documents would be relevant to defeating AAH's argument that the relevant geographic markets include portions of Illinois.

Second, plaintiffs contend that the documents are relevant because they relate to AAH's ability to use its dominance of Wisconsin markets to its advantage in neighboring Illinois markets. Again, I'm not sure why AAH's ability to use market or monopoly power in Wisconsin to influence Illinois markets would be relevant to plaintiffs' claims. Those claims seek redress for AAH's charging supracompetitive prices to "Wisconsin commercial health plans" and their members, Compl. ¶ 3, not to Illinois plans and their members. In any event, AAH has represented that, under its existing document collection and production protocols, it will produce any documents that concern both Wisconsin and Illinois because AAH is already producing all documents that relate to Wisconsin and will

4

not exclude any documents that might also relate to Illinois. Plaintiffs feel that it might not be obvious from the face of a document that it concerns both states, but this could be a problem only if a document appears to relate only to Illinois. And even then, because I can't see how Illinois contracting documents would support a claim alleging supracompetitive pricing in Wisconsin, I think the risk that some documents might be missed is too small to warrant a full-scale search of all Illinois documents.

Finally, plaintiffs argue that the Illinois documents are relevant to damages. Here, they note that one method for calculating damages in an antitrust case is to identify a benchmark period free of anticompetitive conduct and a damages period when the allegedly anticompetitive conduct occurred. Such a benchmarking analysis may rely on comparing an anticompetitive market to a competitive market in a neighboring state. Plaintiffs contend that a benchmarking analysis could be based on comparing Wisconsin to Illinois: If, following the April 2018 merger, AAH imposed some of the same contractual restrictions in Illinois that it imposed in Wisconsin, Illinois might serve as a benchmark for the price effect of those restrictions on a market in Wisconsin. In contrast, if AAH did not impose those restrictions, Illinois might serve as a benchmark for prices in a market untainted by the restrictions.

AAH does not dispute that plaintiffs' desire to explore using Illinois as a benchmark for damages makes some of the Illinois documents relevant. Instead, it contends that plaintiffs' request is overbroad in relation to this purpose. First, AAH contends that documents relating to contact negotiations would not be relevant. Second, AAH contends that plaintiffs' request for all contracts, including those executed prior to the 2018 merger, is overbroad. I mostly agree with AAH on these points. First, I do not see how evidence concerning contract *negotiations* could be relevant to benchmarking. A benchmarking

5

comparison would depend on whether the alleged anticompetitive restraints were implemented in the market, and only the contracts themselves would be needed to answer that question. The negotiations that resulted in the contracts would be irrelevant.

As for the contracts themselves, I conclude that plaintiffs are entitled to discover whether, following the 2018 merger, AAH was able to add the same restrictions that exist in Wisconsin to the contracts with payors in Illinois. But plaintiffs have not demonstrated that, to make this determination, they would need all 538+ contracts that AAH and Advocate entered into with Illinois payors. Presumably, contracts executed long before the merger would not be relevant to the effect of any post-merger restrictions on prices. Thus, I will not grant plaintiffs' motion to compel the production of all such contracts. However, the parties should continue to meet and confer on this topic and attempt to agree on the scope of the contracts that plaintiffs might need to perform a benchmarking analysis. At this point, it appears to me that the proper scope would include enough data from the periods before and after the merger to enable plaintiffs to determine whether AAH imposed the challenged restrictions in Illinois after the merger. If the parties are unable to agree on what contracts need to be reviewed and potentially produced for this purpose, plaintiffs may file a new motion to compel that is limited to the contracts they think they need for benchmarking.

**B.    AAH's Motion to Compel *Uriel* Plaintiffs to Produce Information Concerning Alternative Health Plans**

AAH moves to compel the *Uriel* plaintiffs to produce information concerning their decisionmaking process relating to their purchase of health networks that were available to them in the marketplace. Here, AAH seeks to determine whether plaintiffs considered health networks available in Wisconsin that either featured the cost-saving measures

6

identified by plaintiffs in their complaint as features of "innovative" plans or excluded some or all of AAH's facilities. Plaintiffs have agreed to produce some of this information, namely, information relating to any plan that they actually offered to their employees, and information about certain plans plaintiffs previously offered that featured reference-based pricing. (Br. in Opp. at 1 n.1.) Plaintiffs, however, refuse to produce information that (1) relates only to plans that they never adopted or (2) reflects their employees' preferences as to plan choices. (*Id.*) Plaintiffs contend that such information is not relevant, and that producing it would result in an undue burden.

In resisting this discovery on relevance grounds, plaintiffs contend that the preferences of two self-funded employer plans is irrelevant to whether AAH's vertical restraints violate the antitrust laws. Plaintiffs contend that whether the restrictions are anticompetitive depends on the stage of competition that exists between health-care providers for inclusion in health-insurance networks. Plaintiffs further contend that AAH's discovery demand focuses on a different stage of competition—the stage in which insurance networks compete for insurance business from health-plan purchasers such as plaintiffs.

Plaintiffs' relevance argument may have some force as a matter of antitrust law in general. However, that argument is at odds with the allegations of their own complaint. Plaintiffs allege that AAH "pressured" them specifically (not just their network providers) to avoid using the kinds of innovative plans at issue in this case. (Second Am Compl. ¶ 113.) Moreover, plaintiffs allege that, as a result of such pressure, they abandoned their innovative plans and selected network providers that had agreed to AAH's allegedly anticompetitive restrictions. (*Id.* ¶¶ 224–25, 229–30.) Plaintiffs do not contend that their own allegations are irrelevant to their claims because they concern a different stage of

competition. And because plaintiffs have made and continue to press these allegations, AAH is entitled to take discovery designed to determine whether they are true. Thus, information indicating whether plaintiffs considered plans that did not include the alleged anticompetitive restraints, and if so, their reasons for not selecting them, is relevant to facts that plaintiffs have placed at issue in this litigation.

As for the burden of responding, plaintiffs first contend that it would be unduly burdensome for them to determine whether a document involves the consideration of an alternative health plan, as opposed to a health plan that one of the plaintiffs actually used. But I fail to see how this involves an undue burden, especially when the parties have already agreed on the scope of the review by identifying custodians and search terms. *See* Mot. at 1 n.1. Plaintiffs next contend that AAH's request for information about employee preferences will require them to review all emails sent by employees about what a health plan might cover. However, I do not understand AAH to be asking for documents generated by plaintiffs' employees about plan coverage. Instead, the relevant information is that possessed by those of plaintiffs' administrative employees who evaluated and selected plaintiffs' health plans. What do their records show about plaintiffs' reasons for selecting a plan with the alleged restrictions rather than an available "innovative" plan or a plan that excluded some of AAH's facilities? I do not see how a review of these records could be unduly burdensome. Finally, plaintiffs note that their document production is partially completed, and that granting AAH's motion will require them to re-review thousands of documents. However, AAH included the requests at issue in its first set of requests for the production of documents (Decl. of Anne Palmer Johnson Ex. A), and plaintiffs do not contend that AAH waited too long to file its motion after plaintiffs began their review. Plaintiffs' decision to omit the requests at issue from their

8

prior review cannot be used to manufacture an undue burden that would not have existed had plaintiffs responded to the requests in the first place.

Accordingly, AAH's motion to compel the production of information concerning plaintiffs' consideration of alternative plans will be granted.

**C.** ***Uriel* Plaintiffs' Motion to Compel Non-Party Atrium to Produce Documents**

The *Uriel* plaintiffs have filed a motion to compel non-party Atrium Health to produce documents in response to a subpoena. The documents at issue relate to a Department of Justice investigation and lawsuit that was pending in the Western District of North Carolina against a corporate entity affiliated with Atrium. The subpoena was issued by this court on March 22, 2024, but it specified that Atrium was to comply with the subpoena by producing the requested documents in Charlotte, North Carolina. (Decl. of David Lerch Ex. B.) Atrium refused to comply with the subpoena on the ground that the information sought is irrelevant. After plaintiffs filed the present motion to compel in this court, Atrium responded by arguing that plaintiffs were required to file the motion in the Western District of North Carolina because that is "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i).

Plaintiffs do not dispute that a motion to compel the production of documents in response to a subpoena must be filed in the court for the district where compliance is required. However, they contend that because, on September 20, 2023, they served a different subpoena on Atrium that demanded compliance in Madison, Wisconsin (Lerch Decl. Ex. A), they may enforce the subpoena in this court. An initial problem with this argument is that Madison, which is in Dane County, is not within the Eastern District of Wisconsin—it is within the Western District of Wisconsin. *See* 28 U.S.C. § 130(b). So even under plaintiffs' argument, the court for the district where compliance is required is

9

not this court. In any event, plaintiffs are not seeking to enforce the earlier subpoena, which does not request documents relating to the prior DOJ action. *See* Lerch Decl. Ex. A at 7–8; *see also* Pls.' Prop. Order (proposing to compel compliance with subpoena "dated March 22, 2024"). Therefore, Rule 45 required plaintiffs to file their motion to compel in the Western District of North Carolina, and I must deny the motion that they filed here.

**D.** *Uriel* **Plaintiffs' Motion to Compel AAH to Produce "Merger Files"**

The *Uriel* plaintiffs bring a motion to compel AAH to produce what have come to be known as the "merger files." This is a collection of documents that generally consists of executed contracts for mergers, acquisitions, and other transactions to which AAH and its predecessor entities were parties between 2000 and the present. The documents consist of 34,000 pages of materials that relate to more than 200 transactions. AAH refuses to produce these files on the ground that any relevant information they contain would have already been produced in response to plaintiffs' more specific document requests. Plaintiffs provide four reasons why the merger files themselves are relevant, but, as explained below, I do not find any of them persuasive.

First, plaintiffs contend that the merger files are relevant to proving their allegation that, when AAH acquires a physician practice, it incorporates the contractual restraints at issue in this case into that practice's contracts with insurers and other payors. But AAH has already agreed to produce contracts between its providers and their payors going back to 2000. (Br. in Opp. at 3.) Plaintiffs have not explained why they would need to receive this information a second time through the merger files. Nor have they explained what additional insight they might hope to gain on this topic by reviewing the contracts executed by the provider and AAH at the time of the acquisition.

10

Second, plaintiffs contend that the terms of a specific acquisition might be relevant to determining whether AAH has market power. However, I do not see how executed merger and acquisition contracts could shed any light on whether AAH had market power during any period relevant to plaintiffs' claims. Generally, market power is determined by market share and characteristics of the market itself, not on the formal structure of any mergers or acquisitions. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 983 (9th Cir. 2023) ("Market power is generally inferred from the defendant's possession of a high market share and the existence of 'significant barriers to entry.'"). Plaintiffs also suggest that the merger files would be relevant to determining whether AAH pursued a merger-and-acquisition strategy with anticompetitive intent, but again I fail to see how that could be so. AAH's reasons for adopting a merger-and-acquisition strategy could not be inferred from the contractual documents finalizing the transactions themselves.

Third, plaintiffs contend that the merger files contain employment contracts between AAH and physicians that contain non-compete clauses. I can see how non-compete agreements might be relevant to an antitrust claim, but AAH has already agreed to produce its contracts with physicians going back to 2006. (Br. in Opp. at 3.) Plaintiffs have not explained why they need to acquire this information a second time through the merger files. Perhaps plaintiffs wish to obtain physician contracts for the period between 2000 and 2006, but if so, the appropriate motion would be one to compel production of those specific contracts, not the entire set of merger and acquisition documents covering a 24-year period.

Finally, plaintiffs contend that the contracts in the merger files will show that AAH prevented the physicians affiliated with an acquired practice from making referrals to physicians outside the AAH system. But again, plaintiff has already received the physician

11

contracts, which are the most likely sources of any referral restrictions. Moreover, plaintiffs could have made a direct request for any documents containing limitations on a physician's ability to refer patients to non-AAH providers or facilities. Attempting to obtain this information indirectly by demanding production of 34,000 pages of merger documents is inefficient and imposes an undue burden.

Accordingly, plaintiffs' motion to compel production of the merger files will be denied.

## E. AAH's Motion to Compel Non-Party ProHealth Care, Inc., to Produce Documents

AAH moves to compel ProHealth Care, Inc., to produce documents in response to AAH's subpoena.[1] ProHealth is a hospital system that competes with AAH in the markets alleged in the complaint. AAH served the subpoena on ProHealth to obtain evidence about competition in the alleged markets. The subpoena generally requests insurer contracting and claims-level data on ProHealth's services, pricing, and financial condition. ProHealth has produced some information in response to the subpoena, but AAH contends that the production is deficient in two respects.

First, AAH contends that ProHealth's production of claims-level data is deficient. According to AAH, to satisfy the subpoena, ProHealth must produce "non-personally identifiable patient information (*e.g.*, gender, age); facility and provider information; admission, and discharge dates; diagnosis (or DRG) codes; admission and discharge categories, including transfers; invoice information, including submittal date, billed charges, and allowed and paid amounts; and cost breakdowns." (Mot. at 2.) However, no

---

[1] AAH also filed a motion for leave to file a reply in support of this motion, which I will grant.

request in the subpoena identifies this information specifically. Instead, AAH contends that the information is responsive to Request 3, which calls for "a data set or compilation sufficient to show" various facts like patient encounters and prices. (*Uriel* ECF No. 108-2 at 13 of 968.) However, I do not see how this general request requires ProHealth to produce the more detailed information AAH now identifies in its brief. AAH did not ask for any specific documents but instead asked for data "sufficient to show" various facts relating to its claims data. By drafting the request in this way, AAH granted ProHealth a certain amount of discretion to determine what data would be sufficient to show those facts. AAH apparently thinks that the information it now identifies in its brief is what is sufficient to show those facts. But if that is the information AAH has sought all along, it could have served a request for it specifically.

In any event, even if I ultimately must decide what data is "sufficient" to show the facts identified in AAH's request, AAH has not provided me any basis other than its own say-so to conclude that what ProHealth has already produced is insufficient or that the specific information AAH now requests is needed to render the production sufficient. When ProHealth responded to the motion to compel, it argued that the specific claims-level data that AAH now demands was not identified in the subpoena. AAH's only response to this argument was to assert that the subpoena "plainly describes" the data sought. (Reply at 1.) But it is not plain to me that, without this specific data, ProHealth's production is not sufficient to show the items identified in Request 3. Accordingly, I cannot find that ProHealth's existing production is deficient.

Second, AAH contends that ProHealth's production of electronically stored information ("ESI") is deficient. Here, the parties' dispute centers around the method by which ProHealth must comply with the subpoena. AAH insists that ProHealth must use a

list of search terms that it created and communicated to ProHealth during the meet-and-confer process. ProHealth contends that those search terms return too many nonresponsive documents and are therefore overbroad.

In general, the party producing information is in the best position to choose an appropriate method of searching and culling data. *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 427 (D.N.J. 2009) (citing a prior version of The Sedona Conference, *The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery*, 15 Sedona Conf. J. 217 (2014)).[2] Here, the producing party is ProHealth, and therefore its choice of response method is presumed to be sufficient. *See id.* Thus, AAH has the burden to show that the results produced by ProHealth's search are not accurate, complete, or reliable. *See* Sedona Conference Best Practices, 15 Sedona Conf. J. at 236.

ProHealth's existing search resulted in the production of 9,400 pages, including 7,800 pages of documents found through an ESI search using ProHealth's search terms. (Decl. of Tessa K. Jacob ¶ 2 & Ex. 1.) AAH generally asserts that this production was deficient because it did not include as much information as AAH thought there would be. AAH also notes that ProHealth's search terms were crafted in a way that would return hits only if the terms "Aurora," "AAH," or "Advocate" appeared in the document. I agree that limiting the search to documents that mention AAH entities is not sufficient to comply with the subpoena requests that seek information about ProHealth's own efforts and strategies in the market. *See* Requests 7, 9, 13 and 14. However, AAH has not demonstrated that its requested remedy—ordering ProHealth to review all documents produced by AAH's

---

[2]    The Sedona Conference Best Practices Commentary is available at https://thesedonaconference.org/node/8400 (viewed Jan 8, 2025).

search terms—is appropriate. ProHealth used AAH's search terms to determine that they return over 88,000 documents, a full review of which would cost between $60,000 and $240,000. (Decl. of Tessa K. Jacob ¶ 5.) ProHealth's attorneys report that they reviewed a sample set of the "hits" from the search and determined that very few, if any, of the hits were responsive to AAH's request. (*Id.* ¶¶ 6–11.) AAH has not developed an argument showing that its terms are reasonably calculated to produce responsive documents without requiring review of large quantities of irrelevant documents. AAH, instead, insists that it is not unreasonable to require ProHealth to review all the documents that its terms returned given the stakes of this case. But I will not require a non-party to conduct a review costing as much as $240,000 without some showing that the search terms are likely to yield responsive documents without including large numbers of false positives, especially when the producing party has reviewed a sample and determined that the terms returned very few responsive documents. Accordingly, I will not grant the relief requested in the motion to compel.

In one of its meet-and-confer letters, AAH indicates that it is open to further revising its search terms to reduce the number of false positives. (*Uriel* ECF No. 145-4 at 5 n.4.) I will require the parties to continue negotiating and attempting to agree on a method of production that responds to Requests 7, 9, 13 and 14 that is not limited to documents that reference an AAH entity. At this point, I am not requiring ProHealth to conduct an electronic custodial search. Rather, if ProHealth believes that it can find all responsive documents on a "go get" basis,[3] it may stand on such a search. But if the parties cannot

---

[3] I understand "go get" to mean a search in which humans attempt to find responsive information in the places where they think they might be located, rather than a search of electronic data using search terms and similar tools. *See In re Diisocyanates Antitrust Litig.*, MDL No. 2862, 2023 WL 11938951, at *6 (W.D. Pa. Nov. 7, 2023).

agree on a search method and AAH decides to return to court, I may order a custodial search. However, AAH must remember that, if it renews its motion to compel, I will presume that ProHealth's search methods were reasonable. To obtain relief, AAH must demonstrate both that ProHealth's chosen method was deficient and that AAH's preferred alternative is a reasonable method of identifying responsive information without requiring review of large quantities of false positives.

## F. AAH's Motion to Compel Non-Party Network Health, Inc., to Produce Documents

AAH moves to compel Network Health, Inc., to produce documents in response to its subpoena.[4] Network Health is a health insurance company that has offered "narrow networks" that exclude AAH providers. Plaintiffs allege that AAH has engaged in anticompetitive conduct designed to eliminate such narrow networks from the market. AAH served its subpoena on Network Health to discover facts about how its narrow network affected the market. Network Health has produced some information in response to the subpoena, but AAH contends that its production is deficient in three respects.

First, AAH contends that Network Health has not fully responded to its request for "[d]ocuments sufficient to show" the features and plan design of all health insurance plans and provider networks within the alleged geographic markets that Network Health offered from 2018 to the present. (*Uriel* ECF No. 110-4 at 12 of 100.) Network Health states that it provided this information to AAH on November 11, 2024, after AAH filed its motion to compel. AAH does not address this request in its reply, other than to note that Network Health refuses to search ESI for additional documents. Thus, I assume Network Health

---

[4] AAH also filed a motion for leave to file a reply in support of the motion, which I will grant.

has produced the actual plan documents that are responsive to this request. As for the ESI, AAH has not explained why a search of ESI would be necessary. Network Health should be able to identify and retrieve all plan documents that it offered without searching its ESI, and I do not see how any documents other than the plan documents themselves could be responsive to this request. Thus, I will not compel any further response to the request.

Second, AAH contends that Network Health should be compelled to produce "claims data." (*Uriel* ECF No. 109 at 3 of 5.) But, as Network Health rightly points out, the subpoena does not request claims data. AAH contends that even though it did not request such data, it may enforce a separate subpoena issued by plaintiffs that requests the data. Here, AAH points to its own request that Network Health produce all documents that Network Health has produced or will produce to the plaintiffs. (Request No. 9.) But this request merely asks Network Health to provide the same documents to AAH that it provides to plaintiffs. AAH does not show that Network Health has provided claims data to plaintiffs that it has not provided to AAH. Therefore, Network Health has fully complied with Request 9, and AAH may not use that request as a vehicle for enforcing plaintiffs' subpoena.

Finally, AAH contends that Network Health has failed to produce ESI in response to the subpoena. Network Health primarily responds by arguing that it was able to locate responsive documents without conducting an ESI search. As noted above, the producing party is generally entitled to choose the method of compliance, and therefore its decision not to perform an ESI search is entitled to some deference. *Ford Motor Co.*, 257 F.R.D. at 427. Further, I largely agree with Network Health that it was reasonable to locate responsive documents without searching ESI. For the most part, the subpoena requests

17

written agreements and other documents that Network Health likely was able to find without an ESI search, and AAH has not demonstrated that Network Health's decision not to conduct such a search was unreasonable.

But I do find that an ESI search is necessary to respond to AAH's request for Network Health's communications with plaintiffs. Network Health does not dispute that these documents are relevant or that an ESI search would be needed to locate them. Instead, it contends that AAH could obtain the same documents from plaintiffs. While it is likely that AAH could obtain some of the communications from plaintiffs, it is reasonable to expect that Network Health will have retained many communications that plaintiffs did not. Further, Network Health has not shown that searching its ESI for such communications would be burdensome. The request seeks communications with only two entities (Uriel and Hometown and their related benefits plans) and I am confident that Network Health can conduct a targeted search of its ESI for those communications. And Network Health has not shown that the number of communications is likely to be unreasonably large, such that a review of the communications for privilege would be unduly burdensome. Therefore, I will compel Network Health to produce its communications with plaintiffs.[5]

In short, AAH's motion against Network Health will be granted to the extent that Network Health must produce its communications with plaintiffs. In all other respects, the motion will be denied.

_____

[5] Network Health asks that I order AAH to pay the costs of this production, but because Network Health has not demonstrated that locating and producing its communications with plaintiffs will result in "significant expense," I see no reason for cost-shifting. *See* Fed. R. Civ. P. 45(d)(2)(B)(ii).

**G.** **AAH's Motion to Compel Non-Party Anthem Blue Cross and Blue Shield of Wisconsin to Produce Documents**

AAH moves to compel non-party Anthem Blue Cross and Blue Shield to produce documents in response to its subpoena. Anthem is a health insurance company that contracts with providers like AAH. AAH served the subpoena on Anthem to obtain evidence about the competitive landscape in the alleged markets. Anthem has produced information in response to the subpoena, but AAH contends that its production is deficient in two respects.

First, AAH contends that Anthem has not produced enough ESI. According to Anthem, in responding to AAH's subpoena and a related subpoena filed by plaintiffs, it produced more than 870 documents, 47,000 pages, and 259 million rows of claims data containing 65 fields. (Decl. of Julia B. Hartley ¶ 5.) AAH contends that Anthem's ESI production remains deficient because Anthem did not perform an ESI search using search terms crafted by AAH. Instead, Anthem identified responsive documents on a go-get basis and then supplemented its production with documents produced using search terms that Anthem had negotiated with plaintiffs. AAH contends that this method failed to produce sufficient information in response to its request for documents concerning Anthem's comparisons of health care providers (Request No. 2) and its request for documents concerning Anthem's members' preferences with respect to providers and services (Request No. 3). Anthem states that it was able to retrieve the documents responsive to Request No. 2 without using search terms, and that it could not identify any documents responsive to Request No. 3 using non-electronic search methods. (*Uriel* ECF No. 140 at 3.) However, Anthem notes that the search terms that were designed to comply with plaintiffs' subpoena would have returned any emails touching on Anthem's

19

comparison of AAH to other providers. (*Id.* at 3–4.) AAH received those emails pursuant to its request to be copied on all documents Anthem provided to plaintiffs (Request No. 9).

Again, I note that, as the party responding to the subpoena, Anthem is entitled to deference in its choice of method to search for and produce responsive documents. *Ford Motor Co.*, 257 F.R.D. at 427. And AAH has not convinced me that Anthem should be required to do more than it has done. AAH's argument boils down to a claim that Anthem must use AAH's search terms and not rely on the terms it negotiated with plaintiffs in connection with their overlapping subpoena. However, according to Anthem, AAH's proposed terms returned more than 115,000 documents and "are not sufficiently focused, narrowly tailored, relevant, or helpful in responding to Requests 2 and 3." (Hartley Decl. ¶ 9.) Further, AAH has not identified any specific type of information that would be responsive to Requests 2 or 3 but likely missed by Anthem's earlier searches. Based on this record, AAH has not rebutted the presumption that that Anthem's method of responding to the subpoena was appropriate. Therefore, I will deny AAH's motion to compel the production of additional ESI.

Second, AAH contends that Anthem must produce more "claims-level information that is necessary to compare AAH's prices to its competitors." (*Uriel* ECF No. 116 at 4 of 5.) However, AAH did not request claims data in its subpoena to Anthem. *See Uriel* ECF No. 117-3 at 13–15 of 101. Instead, AAH contends, as it did in connection with the Network Health subpoena, that it may enforce plaintiffs' subpoena because the AAH subpoena requested all documents that Anthem has or will produce to the plaintiffs (Request No. 9). But, as I explained above, a request to be copied on all documents produced to plaintiffs does not grant AAH the right to enforce plaintiffs' subpoena. Anthem

20

states that it provided AAH with copies of all information it produced to plaintiffs. (*Uriel* ECF No. 140 at 3 n.6.) Thus, Anthem has fully complied with the subpoena, and AAH's motion to compel will be denied.

### III. MOTIONS TO RESTRICT PUBLIC ACCESS

Finally, I address the parties' motions to restrict access to parts of the supporting materials they filed in connection with the above motions. First, I address AAH's motion to seal parts of certain exhibits it filed in response to plaintiffs' motion to compel production of the merger files. This motion first seeks to restrict access to parts of AAH's meet-and-confer letters that discuss a civil investigative demand ("CID") relating to a merger. Although I am not entirely convinced that the mere discussion of the CID in these letters is confidential information, I will grant the motion to restrict because the information is not relevant to the issues decided in the motion to compel. *See City of Greenville, Ill. v. Syngenta Crop Protection, LLC*, 764 F.3d 695, 697 (7th Cir. 2014) (presumption of public access to materials applies only to those that affect judicial decisions).

AAH's motion also seeks to restrict access to parts of a meet-and-confer letter that discusses a contractual term that constitutes one of the alleged restraints at issue in this case. (*Uriel* ECF No. 113-6.) AAH has not shown that the contractual term counts as a trade secret or something comparable whose economic value depends on its secrecy. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546–47 (7th Cir. 2002). However, because the exact language of the term is not relevant to the issues decided in the motion to compel, I will allow the letter to remain redacted. Still, I advise the parties that I am unlikely to allow the terms of the alleged restraints to remain restricted from public view if those terms are discussed in motions relating to the merits of the antitrust claims, for at that

point they will become central to the public's understanding of the litigation. *Id.* at 545–46.

The remaining motion to restrict access was filed by the Shaws. However, AAH designated the materials as confidential, and therefore it had the burden to show that the materials truly are confidential. *See* Gen. L.R. 79(d)(3); *see also* Order Regarding Confidentiality (*Shaw* ECF No. 26) at 3 (reminding parties that non-movant designator must show good cause). But AAH did not respond to the motion to restrict access or otherwise attempt to show good cause for keeping the materials restricted. Therefore, I will allow the documents to remain restricted only if it is plain from the face of the documents that they contain information that may be withheld from public view.

The Shaws' motion seeks to restrict access to parts of their motion to compel production of the Illinois documents and the exhibits filed in support of that motion. I see no grounds for restricting the public's access to the motion to compel itself, as the motion does not appear to discuss trade secrets or anything comparable and is central to the public's understanding of my resolution of the motion. As for the exhibits, they consist of meet-and-confer letters discussing the CID and some of AAH's allegedly confidential contract terms. As discussed above, although I doubt that such discussions constitute confidential information, I will allow the redactions to remain in place because the matters discussed were not relevant to the issues decided in the motion to compel.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that the Shaws' motion to compel the production of Illinois documents (*Shaw* ECF No. 31) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that the parties must meet and confer to identify the

Illinois contracts and pricing information that plaintiffs need to perform a benchmarking analysis. In all other respects, the motion is denied.

**IT IS FURTHER ORDERED** that defendants' motion to compel the production of information concerning the *Uriel* plaintiffs' consideration of alternative plans (*Uriel* ECF No. 67) is **GRANTED**.

**IT IS FURTHER ORDERED** that the *Uriel* plaintiffs' motion to compel non-party Atrium Health to produce documents (*Uriel* ECF No. 87) is **DENIED**.

**IT IS FURTHER ORDERED** that the *Uriel* plaintiffs' motion to compel production of the merger files (*Uriel* ECF No. 97) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to compel non-party ProHealth to produce documents (*Uriel* ECF No. 107) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that AAH and ProHealth must continue to negotiate a method for identifying documents responsive to Requests 7, 9, 13 and 14 that is not limited by mention of an AAH entity. In all other respects, the motion is denied.

**IT IS FURTHER ORDERED** that defendants' motion to compel non-party Network Health to produce documents (*Uriel* ECF No. 109) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that Network Health must produce its communications with plaintiffs. In all other respects, the motion is denied.

**IT IS FURTHER ORDERED** that defendants' motion to compel non-party Anthem Blue Cross and Blue Shield of Wisconsin to produce documents (*Uriel* ECF No. 116) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motions for leave to file reply briefs in support of their motions to compel ProHealth and Network Health (*Uriel* ECF Nos. 145 & 146) are **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for an extension of time to respond to defendants' motion to compel (*Uriel* ECF No. 69) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion to restrict access to materials filed in connection with the motion to compel the production of merger files (*Uriel* ECF No. 112) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion for leave to substitute exhibits (*Uriel* ECF No. 147) is **GRANTED**.

**FINALLY, IT IS ORDERED** that plaintiffs' motion to restrict access to materials filed in connection with the motion to compel the production of Illinois documents (*Shaw* ECF No. 30) is **GRANTED IN PART** and **DENIED IN PART**. The motion is denied as to ECF No. 31, which the Clerk of Court shall make available for public viewing. In all other respects, the motion is granted.

Dated at Milwaukee, Wisconsin, this 10th day of January, 2025.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge