| | |
|---|---|
| URIEL PHARMACY HEALTH AND WELFARE PLAN; AND URIEL PHARMACY, INC., on their own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> ADVOCATE AURORA HEALTH, INC. and AURORA HEALTH CARE, INC., <br><br> Defendants. | Case No. 2:22-CV-00610 |
| PATRICK SHAW, DEBRA SHAW, and HALEY SHAW, on their own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> ADVOCATE AURORA HEALTH, INC. and AURORA HEALTH CARE, INC., <br><br> Defendants. | Case No. 24-CV-00157 |

**DECLARATION OF HEATHER MCARTHUR IN SUPPORT OF
NONPARTY HUMANA INC.'S LIMITED RESPONSE AND MOTION
TO MAINTAIN RESTRICTED ACCESS TO CERTAIN HUMANA MATERIALS**

1

I, Heather McArthur, declare as follows:

1. I have worked at Humana, Inc. since August 2018 and am currently Regional VP, Contracting Negotiations. In this role, I am responsible for building and driving network strategy, including developing provider networks that maximize member health, optimizing financial performance, and negotiating and managing contracts with all types of providers. The materials and information we use to build these strategies are highly confidential and are designated as such internally. I submit this declaration based on my personal knowledge and my review of Humana records. If called as a witness, I could and would testify competently to the matters stated herein.

2. Humana produced documents and testimony in this litigation in response to third-party subpoenas. Humana designated certain materials confidential or highly confidential under the applicable protective order.

3. Humana does not seek continued restricted access merely because materials were designated confidential under a protective order. Humana seeks continued restricted access only for materials that disclose nonpublic trade-secret or competitively sensitive business information that Humana maintains as confidential and that derives economic value from not being publicly known.

4. Humana has exited the employer group commercial medical business. Humana does not seek continued restriction of information merely because it relates to that former line of business. Humana's request is limited to materials that disclose current or materially similar Humana methodologies, matrices, risk assessments, actuarial methods, rate-development assumptions, provider-network analyses, or provider-specific leverage assessments that remain competitively sensitive.

2

5. Humana maintains the types of information described below as confidential and does not publicly disclose them. Access to such information is generally limited to employees, consultants, and advisors with a business need to know. Humana routinely treats these materials as confidential business information, marks many such materials as confidential or for internal use only, and produced the materials at issue in this litigation only pursuant to a protective order. Humana takes these measures because the information derives value from not being publicly known and could be used by competitors, providers, brokers, or other market participants if disclosed publicly.

## I. Plaintiffs' Class Certification Exhibits 28, 29, and 31

6. I understand that Plaintiffs filed under restricted access portions of the deposition testimony of Humana employee Paul Maxwell as Plaintiffs' Class Certification Exhibit 28, as well as two Humana documents identified as Plaintiffs' Class Certification Exhibits 29 and 31. *See* ECF No. 215 at 6–7; ECF No. 210 at 5.

### A. Exhibit 28

7. Exhibit 28 contains testimony discussing and interpreting a confidential Humana internal dashboard that was not publicly filed in this litigation. Although the dashboard itself is not attached to the class-certification record, the testimony reveals nonpublic information contained in that dashboard, including Humana's internal "allowed market share" metric, Humana's assessment of provider concentration, and Humana's identification of particular provider systems as strategically important to Humana's operations and growth.

8. Public disclosure of the testimony would reveal portions of the contents and conclusions of a confidential internal business-analysis document even though the document itself remains nonpublic. The testimony also discusses Humana's internal strategic planning regarding provider

3

partnerships and the alignment of commercial and Medicare contracting priorities. These topics reflect Humana's confidential assessment of provider importance, contracting objectives, and long-term business strategy.

9. Humana does not publicly disclose such analyses and maintains them as confidential internal business information. Disclosure would provide competitors, providers, brokers, and other market participants with insight into Humana's internal evaluation of provider leverage, provider concentration, and contracting priorities. Because the testimony effectively discloses confidential information drawn from a nonpublic Humana dashboard and reveals Humana's internal strategic assessments, Humana seeks continued restricted access to the limited portions of Exhibit 28 that disclose this information.

**B. Exhibits 29 and 31**

10. Exhibit 29 is a Humana document titled *North Central Region: Milwaukee, Supply Chain Risk Evaluation*. Exhibit 31 is a Humana document titled *North Central Region: Green Bay, Supply Chain Risk Evaluation*.

11. Exhibits 29 and 31 are internal Humana market blueprint documents concerning Humana's Individual Medicare Advantage Prescription Drug business in Wisconsin.

12. The documents disclose nonpublic compilations of Humana's internal market and network analyses. Among other things, the documents include Humana's internal assessment of market position, membership concentration, provider concentration, value-based-care participation, underwriting or margin information, product strategy, distribution strategy, broker-channel information, provider-specific membership concentration, provider reimbursement or risk-model information, network priorities, provider-specific disruption scenarios, risk ratings, mitigation or protection status, and directional estimates of covered lives at risk.

4

13. Humana does not publicly disclose these analyses. They are internal business materials used to evaluate market position, network strategy, supply-chain risk, provider concentration, and provider-specific contracting risk.

14. Humana continues to use the same or materially similar types of analyses in its current Medicare Advantage and Medicaid businesses. These analyses assist Humana in evaluating provider concentration, network adequacy, provider termination risk, provider leverage, covered lives at risk, mitigation tactics, and network strategy.

15. Public disclosure of Exhibits 29 and 31 would reveal Humana's internal assessment of the relative leverage and disruption risk associated with specific provider systems. Provider systems could use that information in negotiations with Humana by identifying Humana's perceived network vulnerabilities, evaluating the business impact Humana associates with a potential termination or nonrenewal, and demanding more favorable reimbursement, risk-sharing, or contract terms.

16. Competitors could also use the information to assess Humana's market position, network dependencies, provider concentration, product strategy, distribution strategy, and market vulnerabilities.

17. The competitive harm from disclosure would not be limited to historical commercial business. Exhibits 29 and 31 concern Humana's Individual MAPD business and disclose risk-assessment frameworks and provider-specific analyses that remain relevant to Humana's current Medicare Advantage and Medicaid operations.

## II.   Defendants' Johnson Palmer Declaration Exhibits 39, 40, and 58

22. I understand that Defendants filed under restricted access Johnson Palmer Declaration Exhibits 39, 40, and 58. *See* ECF No. 206 at 4.

**A. Exhibits 39 and 40**

23. Exhibit 39 is an unredacted 2020 Wisconsin small-group actuarial memorandum for Humana Wisconsin Health Organization Insurance Corporation. Exhibit 40 is an unredacted 2023 Wisconsin small-group actuarial memorandum for Humana Wisconsin Health Organization Insurance Corporation.

24. These actuarial memoranda contain nonpublic actuarial, pricing, claims, trend, risk-adjustment, paid-to-allowed, projected-index-rate, plan-adjusted-index-rate, administrative-expense, and profit/risk-margin information. They also describe internal Humana pricing methodologies, modeling inputs, actuarial assumptions, provider unit-cost considerations, and rate-development calculations.

25. The unredacted actuarial memoranda are not publicly available in the form filed under restricted access in this litigation.

26. For the 2020 filing, Humana submitted a confidentiality request to the Wisconsin Office of the Commissioner of Insurance. Humana requested confidential treatment because the filing contained proprietary and confidential financial and trade-secret information, including rate-development information derived from Humana's own experience and maintained as confidential. The public SERFF record reflects that the actuarial memorandum and supporting exhibits, company-specific rate manual, Unified Rate Review Template, and filing correspondence were withheld from public view based on Humana's assertion that the information was proprietary under Wis. Stat. § 134.90(1).

27. For the 2023 filing, the public SERFF materials include a redacted version of the actuarial memorandum. The public SERFF record reflects that the actuarial memorandum and supporting exhibits, company-specific rate manual, Unified Rate Review Template, and filing

6

correspondence were withheld from public view based on Humana's assertion that the information was proprietary under Wis. Stat. § 134.90(1). Exhibit 40 is the unredacted version of the 2023 actuarial memorandum.

28. Public disclosure of Exhibits 39 and 40 would reveal Humana's nonpublic rate-development methods, pricing assumptions, claims projections, trend assumptions, paid-to-allowed calculations, risk-adjustment methodology, administrative expense loads, profit/risk margins, and cost position.

29. Competitors and other market participants could use that information to reverse-engineer Humana's historical pricing strategy, actuarial assumptions, and rate-development methodology.

30. Humana has consistently treated these actuarial memoranda and their supporting materials as confidential. Humana sought confidential treatment in the regulatory filing process and produced the unredacted versions in this litigation only under a protective order.

**B. Exhibit 58**

31. Exhibit 58 is a declaration by Humana actuary Rob Michalski further discussing the confidential processes reflected in Exhibits 39 and 40.

32. The declaration explains the methodologies, assumptions, and analytical approaches Humana uses in preparing its actuarial rate-development materials and describes the nonpublic business information contained in those materials. In doing so, the declaration necessarily reveals aspects of Humana's proprietary actuarial practices and internal decision-making processes that Humana does not disclose publicly.

33. Public disclosure of this information would provide competitors with insight into Humana's confidential methods for developing rates, evaluating market conditions, assessing claims trends, and evaluating business performance. Because the declaration is directed

specifically to explaining and contextualizing the confidential actuarial memoranda submitted as Exhibits 39 and 40, disclosure of Exhibit 58 would effectively reveal the same categories of competitively sensitive information that warrant continued restricted access to those underlying documents.

34. In addition, public disclosure of Exhibit 58 would substantially undermine the protection afforded to Exhibits 39 and 40 because the declaration explains and interprets the very methodologies, assumptions, and analyses that Humana seeks to protect in those actuarial memoranda. Humana therefore seeks continued restricted access to Exhibit 58.

**III. Narrow Tailoring**

35. Humana's request is narrow. Humana seeks continued restricted access only for the materials described above and any portions of briefs, declarations, expert materials, or other filings that quote or disclose the protected information in those materials.

36. Humana does not seek continued restriction of information merely because it was designated confidential, because it was produced under subpoena, or because Humana would prefer that it not be publicly filed.

37. If the Court determines that public redacted versions of these materials should be filed, Humana requests an opportunity to propose targeted redactions that protect the trade-secret and competitively sensitive information described above while allowing public access to non-sensitive portions.

I declare under penalty of perjury that the foregoing is true and correct.

Date:   June 22, 2026

_____
Heather McArthur
Regional VP, Contracting Negotiations

8